# EXHIBIT C

**07 C 6883**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE ASHMAN**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILL BATTS, DAVID JOE DAVIS, MARCELINA MALDONADO, and ALL OTHERS SIMILARLY SITUATED, | ) ) ) |
| | ) Civil Action No. |
| *Plaintiffs,* | ) ) |
| v. | ) ) |
| KOPPERS, INC. F/K/A KOPPERS INDUSTRIES, INC., | ) ) ) |
| | ) JURY TRIAL DEMANDED |
| *Defendant.* | ) ) |

## CLASS ACTION COMPLAINT

### Introduction

1.      This action is a matter of national importance involving a very large company with extensive international operations engaged in conduct that is effectively killing the inhabitants of a small town in Burleson County, Texas, where unchecked pollution consisting of a core group of highly toxic chemicals and carcinogenic substances are unleashed on the unsuspecting denizens of Somerville, Texas causing scores of families unbearable grief over the premature loss of life caused by unbridled corporate greed.

2.      This Class Action lawsuit is brought on behalf of past and present residents of Somerville, Burleson County, Texas who have been unknowingly forced to endure exposure to some of the highest levels of recorded carcinogenic contaminants ever measured in this country. Dozens of Somerville residents have already lost their lives to several forms of digestive and intestinal cancers comprising what will prove to be the largest cancer cluster and other malignant

disorders ever seen.  As a result of being exposed to Defendant's highly toxic and contaminated pollution emanating from their wood treatment processing plant located at the northeast section of the town of Somerville, Texas, Plaintiffs have been exposed to an unreasonably dangerous concoction of toxic substances putting them at a significantly elevated risk for contracting stomach cancers, intestinal cancers, brain tumors, birth defects and other lethal diseases that require a regular Medical Monitoring Program to facilitate the early detection and treatment of a related cancer or disease.   -

3.    Through this lawsuit, Plaintiffs seek for themselves, including all past and present residents of Somerville, and for all Others similarly situated, injunctive relief in the form of a Medical Monitoring program and the costs associated with periodic screening and diagnostic testing to aid in the early detection of cancers, tumors, birth defects and other related malignant diseases.

4.    More than 60 families have already filed or intend to file lawsuits against this same Defendant for wrongful death, personal injury, loss of property values, loss of consortium and other causes of action related to their exposure to Defendant's toxic pollutants and carcinogenic chemicals and consequential injuries, including death as a direct result of Defendant's processing operations of railroad ties and other wood products with these carcinogenic chemicals at the Somerville facility.

5.    Dozens of past and present employees of Defendant's railroad tie and wood products processing facility at Somerville, Texas have also filed, or intend to file, claims related to their injuries sustained while working at this facility.  Several such employees have been diagnosed with stomach and intestinal cancers or brain tumors as a result of working with and handling Defendant's toxic chemicals used to process railroad ties and other wooden products.

Other employees struggled to wage an unsuccessful battle for their lives after contracting the cancers and other malignant diseases related to their work at Defendant's Somerville facility.

6.      Medical Monitoring consisting of specific diagnostic tests, including but not limited to, regular screening by CT Scan, Prostate and Ovarian Ultra Sound Scans, along with specialized blood and urine analyses for specific tumor markers or discrete cancer cells, or an alternative medical surveillance program ordered by the Court, is a reasonable approach to determining whether Plaintiffs or members of the Class have a cancer or other malignant disease known to be associated with exposure to the type of toxic chemicals and products processed by Defendant at its Somerville facility.

7.      Early detection of stomach or intestinal cancer, or other malignant diseases associated with exposure to Defendant's toxic chemicals is likely to increase survival, expand the treatment opportunities for these Plaintiffs, and generally favor a more successful outcome to the unfortunate victims who end up developing cancer or one of the other malignant diseases.

## PARTIES, JURISDICTION AND VENUE

8.      Jurisdiction and venue in this Court are proper by virtue of 28 U.S.C. 1332(a) and 28 U.S.C. 1391(a), respectively.  The matter in controversy exceeds $75,000.

9.      **DEFENDANT KOPPERS, INC.,** Formerly Known As, KOPPERS INDUSTRIES, INC., is incorporated in Pennsylvania, maintains its corporate headquarters in Pittsburgh, Pennsylvania, and is not a citizen of the same state as Plaintiffs.

10.     **PLAINTIFF BILL BATTS** is an adult citizen residing at 265 4th Street, Somerville, Texas 77879.  Mr. Batts has been a continuous resident of Somerville, Burleson County, Texas since 1990.

3

11.    **PLAINTIFF DAVID JOE DAVIS** is an adult citizen residing at Highway 36 (Entrance), Somerville, Texas 77879.  Mr. Davis has been a resident of Somerville, Burleson County for approximately 21 years.

12.    **PLAINTIFF MARCELINA MALDONADO** is an adult citizen residing at 309 Casa Mia, Somerville, Texas 77879.  Plaintiff Maldonado has resided in Somerville, Burleson County, Texas for approximately 71 years.

13.    **DEFENDANT KOPPERS INC.,** Formerly Known As **KOPPPERS INDUSTRIES, INC.,** (and hereinafter referred to as **"KOPPERS"**) is a leading global producer of chemicals, carbon compounds and treated wood products for the railroad and utility industries, along with the aluminum, steel, chemical, and plastics industries.  Koppers is the largest provider of railroad track crossties ("Ties") and is a leading producer of creosote treated wooden poles for the electric and communications industries.  The products and chemicals produced by Koppers include, but are not limited to, carbon pitch, carbon black, creosote, phthalic anhydride and refined tars.  Koppers' production and use of these chemicals in the processing of railroad ties and other wood products has exposed the entire population of Somerville, Texas to a toxic soup of carcinogens and harmful agents that significantly elevates the risk for developing cancer or other diseases, in violation of Texas law, more specifically set forth below.

14.    Since 1995, Defendant operated a Tie Plant in Somerville, Texas and produced creosote treated railroad track crossties.  Defendant's production of creosote and other chemicals used to process these wood products exposed the entire population of Somerville, Texas to a toxic soup of carcinogens and harmful agents, to serious risks of harm and injury, in violation of Texas law, more specifically set forth below.

4

15.     At all times relevant hereto, Defendants KOPPERS produced and continues to produce creosote-treated railroad track crossties at its railway tie processing plant facility located in Somerville, Texas.  As a result of its processing and production of creosote treated railroad track crossties, unsafe and highly toxic amounts of creosote, dioxins, pentachlorophenol chemicals and other carcinogenic chemical by-products were released into the air and atmosphere immediately covering the community of Somerville,  and fell or settled upon Plaintiffs' homes, land,  buildings, schools, and the community in general, including the water systems from which the inhabitants drew their drinking water, thereby exposing Somerville's unsuspecting population to an increased and unreasonably dangerous risk of harm and injury.

16.     The present population of Somerville amounts to approximately 1,500 people. The exact number of former residents who were exposed to Defendant's chemicals, but no longer reside in Somerville, will be determined when the parties engage in Discovery.  However, upon information and belief, the approximate number of former residents not presently suffering from one or more of the associated cancers or diseases, and not deceased, is believed to number approximately 6,000 people, making the total number of possible Class Members amount to 7,500 people.

### THE FACTUAL BASES FOR PLAINTIFFS' CLAIMS

17.     Plaintiffs, and all others similarly situated, are residents or former residents of Somerville, Burleson County, Texas.

18.     This Medical Monitoring Class Action lawsuit arises out of the operations and activities of the Defendant with regard to its use and lack of containment of toxic chemicals used at the Somerville facility, which has subjected Plaintiffs and all Others similarly situated, to an increased risk of contracting cancer and other malignant diseases or injuries as a result of their

exposure to toxic chemical contaminants originating from Defendant's railroad tie and other

wood products treatment facility located in Somerville, Burleson County.


A.    **The Wood Treatment Facility**

    19.    The Somerville wood treatment facility, which Defendant Koppers operates,

occupies a 200-acre tract of land approximately one mile northwest of the intersection of

Highway 36 and FM 1361, on the northeastern edge of the City of Somerville, in Burleson

County, Texas.  This wood treatment facility was originally constructed by Ayer and Lord in

1897 to chemically treat wooden railroad ties by making them impervious to the effects of

insects, inclement weather, or the elements in general, by contract for The Atchison, Topeka and

Santa Fe Railway Company ("AT&SF") under the name of "Texas Tie and Lumber Preserving

Company" ("TT&LPC").


B.    **Chemical Involvement**

    20.    From its inception in the late 1800's and continuing to the present, the  wood

treatment facility has, and does, manufacture railroad cross ties, bride timbers, poles, piling, and

other wood products, all of which are treated on site with one or more pesticides and wood

preservatives, including derivatives of coal tar creosote and chlorinated pesticide compounds,

including Pentachlorophenol ("PCP").  PCP is highly toxic to the environment and man, and

exposure to it causes damage to, among other organs and systems, the liver, kidneys, blood, and

nervous system, as it is a known human carcinogen.


6

21.    The Somerville site wood processing and manufacturing process consists of vapor drying the various shaped wooden objects followed by pressure treatment of these wooden objects with creosote/oil mixtures, as well as certain pesticide extenders and chlorinated pesticides, including the aforementioned chemical, PCP. The finished chemically treated wood products are used primarily in the railroad industry.

22.    Coal tars are by-products of the carbonization of coal to produce coke and/or natural gas. Coal tars are complex combinations of Polycyclic Aromatic Hydrocarbons ("PAH"s), phenols, heterocyclic oxygen, sulfur, and nitrogen compounds. Coal tar creosotes are distillation products of coal tar.

23.    Coal tar creosotes consist of aromatic hydrocarbons, anthracene, naphthalene, and phenanthrene derivatives. At least 75 per cent of a coal tar creosote mixture is made up of PAHs. PAHs are highly toxic to the environment and man and are known human carcinogens.

24.    The composition of the creosote mixture used in the treatment of wood products such as those processed by Defendant is dependent on the sources and preparation parameters of the coal tar, and as a result, the creosote components are rarely consistent in their type and concentration. An example of the composition variability among creosote samples was recently presented by Weyand *et. al.* (1991). In that study, the concentrations of several PAHs were analyzed in four coal tars. All of the PAHs identified exhibited a 2-fold to nearly 20-fold difference in concentration among the four samples.

25.    The coal tar creosote mixtures at issue here represent 100 years of different formulations used at the Somerville wood treatment facility. From time to time these formulations contained 199 identifiable PAHs, including benzo(a)pyrenes and dibenzofurans.

7

Coal tar creosote (creosote) is a soup of hundreds, if not thousands, of compounds, most of which are toxic to the environment and man.

26.     Oil and other extenders including, but not limited to, PCP are added to this creosote soup to create the mix of "creosote" utilized in the pressure treatment of wooden railroad ties at facilities like the Somerville wood treatment facility.

27.     PCP is a chlorinated compound used as a pesticide in the treatment of specialty wood products such as poles and railroad ties and other applications where wood comes into contact with soil, making it vulnerable to insect attack.  Often in the past, PCP was used in the creosote treatment of specialty products.  Upon information and belief, PCP compounds were used in the treatment of specialty wood products at the Somerville site at all times relevant to this action.

28.     During the manufacturing process of PCP, dioxins are formed as an unwanted by-product of production.  Further, given the chemical make-up of PCP, it is a likely generator of dioxins and furans when subjected to the same level of heat and pressure as that utilized in the pressure treatment of specialty wood products such as the railroad ties and other wooden objects processed at the Somerville facility.

29.     Because of the availability of benzene in coal tar creosote, a source of chlorine in an environment of heat and pressure, together with oxygen, presents the opportunity for a variety of dioxins and furans to form during the tie treatment process.

30.     Creosote and its constituent compounds, PCP, dioxins and furans, are toxic and harmful to the environment and man.  For purposes of this Petition, all of these toxic and

hazardous materials will often be referred to collectively as the "chemicals, solvents, and substances" and sometimes as the "products in question."

C.    **Plaintiffs' Chemical Exposure**

31.    During the operative time period, from 1995 to present, Defendant Koppers operated the Somerville wood treatment facility which utilized large metal cylinders to hold stacks of railroad ties and other wooden products during the chemical treatment process. Under pressure and heat, creosote and other pesticides would infuse the wood and displace water, thus impregnating the railroad ties and other products with the pesticides adverted to above.

32.    Currently, the Somerville plant utilizes four cylinders, which are 8 feet in diameter and 155 feet long.  Railroad ties and other wooden objects are stacked onto metal carts which are wheeled inside the cylinders where the pressure treatment process described hereinabove takes place.

33.    Because of the sheer magnitude of high pressure chemical treatment operations at Somerville, enormous quantities of creosote and other pesticides have been used for decades and continues to be used every day.

34.    Defendant Koppers has caused the release of tons of toxic and hazardous chemicals, solvents, and substances into the Somerville community's soil, groundwater, water, and air.

35.    At all times relevant hereto, Plaintiffs have been exposed and continue to be exposed to the toxic chemicals and carcinogenic pesticides from the Somerville wood treatment facility.  At some point in time unknown to Plaintiffs, exposure to these chemical contaminants

9

found in the air and in the drinking the water ingested by Plaintiffs, subjects these Plaintiffs and

all Others similarly situated, to an increased risk of developing cancers, brain tumors and other

malignant diseases.

36.    Due to the size of the operation, extensive stacks of treated railroad ties and other

treated products are, and at all relevant times in the past have been, placed on the ground for

purposes of "curing out." Volatilized molecules of the aforementioned toxic compounds are

released as gas from this process and are carried away by the prevailing winds over and into the

Somerville area. Creosote and other pesticides drip from the treated wood products left to cure

on the ground and leach into the surrounding soil causing contamination of the soil, surface

water and groundwater, including the aquifers underlying the Somerville area.

37.    Independent testing has verified the presence of toxic compounds including

dioxins/furans and PAHs inside the homes of Somerville residents. Other independent tests have

confirmed the presence of toxic compounds including dioxins/furans and PAHs in the residential

soil of the Somerville area inhabited by Plaintiffs and Others similarly situated. The nature and

composition of the aforesaid compounds unequivocally establish that the Somerville wood

treatment facility is the generator of these compounds.

38.    Moreover, Governmentally mandated testing of soil, sediment, surface and

groundwater on the Somerville site has verified the presence of the aforesaid toxic and dangerous

compounds.

39.    The Texas Natural Resource Conservation Commission ("TNRCC") has

documented the contamination of the aquifer underlying the Somerville area. In addition, The

10

TNRCC also documented and confirmed the soil contamination at the Somerville wood treatment facility.

40.    Surface water run-off from the Somerville site has carried contaminated sediment to the waters of Thompson Creek and other natural drainage features resulting in off-site contamination of the Somerville area.

41.    Natural wind patterns have dispersed toxic gasses throughout the air in Somerville created by the Somerville facility.

42.    Toxic contamination of the clothing worn by the Somerville facility workers caused harmful chemicals to contaminate the inside of their homes where family members and loved ones, including Plaintiffs and Others similarly situated, were secondarily exposed to the aforementioned chemical contaminants.

43.    Plaintiffs, and Others similarly situated, have experienced one or more of the following during the relevant time period:

   a.    Intermittent flooding of their property with surface water running from the contaminated Koppers railroad tie treatment facility.

   b.    Intermittent flooding of their property from Thompson Creek and other natural drains that receive contaminated surface water flowing from the Somerville railroad tie treatment facility.

   c.    Treated wood routinely provided to Plaintiffs by Defendants Koppers as firewood to be used in the homes of Plaintiffs and in some cases used as cooking fuel.

   d.    Treated wood ties from time to time would be placed on or near the property of one or more of the Plaintiffs for storage prior to their being sold or removed for some other purpose.

   e.    Groundwater lying under Plaintiffs' real estate has been, and remains, contaminated with the chemicals used by Defendant Koppers as a consequence of these chemicals being spilled onto or otherwise placed directly on the soil at the treatment facility and at times placed in leaking containment ponds causing

11

groundwater and aquifers underlying the Somerville area to become contaminated.

f.   One or more of these Plaintiffs has, in the past, experienced "oily tasting" water drawn from fresh water wells in the Somerville area.

g.   One or more of the Plaintiffs' houses and real estate have become contaminated with dioxins/furans, PAHs and other toxic molecules released from Defendant's wood treatment facility.

h.   One or more of these Plaintiffs has, in the past, experienced noxious odors emanating from the wood treating facility.

i.   Poisonous dust released from the wood treatment facility settle from the air onto the Plaintiffs' properties within the Somerville area.

44.   PCP-containing products were routinely stored outside the Somerville wood treatment facility without cover or protection, allowing toxic and harmful chemicals to disperse throughout the neighborhood, contaminating Plaintiffs' homes, properties, and persons.

45.   At all times relevant hereto, Defendant Koppers improperly disposed of unwanted chemicals used in the wood treatment process and contaminated dirt, by dumping the refuse outside of the facility, thereby contaminating Plaintiffs' homes, properties, and persons.

46.   As one consequence of the foregoing conduct and activity by Defendant, toxic substances including PAHs, dioxins/furans, arsenic and other dangerous and deadly toxins were, at all times relevant hereto, generated and released from the Somerville wood treatment facility.

47.   As a result of exposure to the toxic and hazardous chemicals, solvents, and substances, Plaintiffs, and all Others similarly situated, have been exposed to a significantly increased risk for developing a disease, including cancer, blood disease, malignant disease, or developmental abnormalities that may one day manifest in Plaintiffs' born and unborn children.

48.   To evaluate the toxic exposure to the Somerville community, chemical analysis of attic dust was conducted. Attic dust was analyzed for dioxin/furans (dioxin TEQs),

12

polychlorinated biphenols (PCBs), polycyclic aromatic hydrocarbons (PAHs), copper,
chromium, arsenic, and hexavalent chromium.

49.     The results from the chemical analysis revealed a dioxin total TEQ maximum,
upper confidence limit (UCL), mean, and minimum of 1229, 1178, 189, and 11 ng/kg,
respectively.  For benzo[a]pyrene TEQs, the maximum, UCL, mean, and minimum were 708,
658, 112, and 0.98 mg/kg, respectively.  For arsenic, the maximum, UCL, mean, and minimum
were 51, 22, 8.9, and 2.8 mg/kg, respectively.  The chromium maximum, UCL, mean, and
minimum were 145, 46, 31, and 8 mg/kg, respectively. The UCLs were calculated using ProUCL
software.

50.     The results of this field investigation demonstrate that the community was
exposed to elevated concentrations of contaminants from Defendant's wood treatment facility.

51.     As a result of the exposures to Defendant's chemicals, solvents, pesticides and
other toxic and carcinogenic substances, Plaintiffs and members of the proposed Medical
Monitoring Class, i.e., former and current residents of Somerville, Texas, are at a significantly
increased risk of developing cancers, blood diseases, and other malignant diseases cancer.

52.     As a result of the exposure to Defendant's chemicals, solvents, pesticides and/or
other toxic and carcinogenic substances, Plaintiffs and members of the Medical Monitoring
Class, i.e., former and current residents of the city of Somerville, Texas, will be required to
expend money and other resources to monitor their medical conditions.

53.     Although at present there is no known cure for the cancers that Plaintiffs and
Others similarly situated are at an increased risk of developing, there are treatments, including
chemotherapy, surgical resection and radiation, which may improve an individual's outcome and
extend or improve survival.

13

54.   One of the reasons that the cancers Plaintiffs and Others similarly situated are at an elevated risk of developing, are so deadly, is that typically once there are clinical signs and symptoms of a problem, such as seizure or neurological compromise, the cancer or disease is often already in an advanced stage or has become very aggressive.  Early detection of these signs and symptoms through regular medical monitoring can improve a Plaintiff's chances for successful treatment and survival.

## MEDICAL TESTS

55.   It is well known that specialized Urine and Blood Test screening for certain cancers and tumor markers, such as Carcinoembryonic Antigen, CA-125, Prostate Specific Antigen, and Urinary Cytology, as well as Prostate and Ovarian Ultra Sound Scans, will identify the presence of cancer cells or tumor growth.  Periodic CT Scanning technology is a proven diagnostic tool for the early detection of brain tumors. Detecting brain cancer in an individual even before clinical signs of the disease, such as seizures, may afford even greater survival, more treatment options, as well as the opportunity to participate in new clinical trials and medical therapies now or soon to become available.

56.   Defendant has a duty and an obligation to provide for the Plaintiffs and all Others similarly situated who have been exposed to their hazardous chemicals, pesticides and other chemicals that may cause devastating and fatal disease.

## CLASS ACTION ALLEGATIONS

57.   **CLASS DEFINITION:** Plaintiffs Batts, Davis, and Maldonado, as Class Representatives, bring this action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure

14

dealing with Class Actions on behalf of themselves, all Others similarly situated, and for all
members of the following Class:

(A)   All past and present residents of the city of Somerville, in Burleson County, Texas since the
commencement of wood treatment operations in Somerville, Burleson County, Texas by
Defendant Koppers.  The Class expressly does not include any person who has already been
diagnosed with stomach or intestinal cancers, blood disease, brain tumors, birth defects, or other
malignant diseases known to be associated with exposure to Defendant's chemicals;

NUMEROSITY: The members of the Class are so numerous that their individual joinder would
be impracticable.  As stated above, the total number comprising this Class of past and present
residents of Somerville, Burleson County, Texas comes to approximately 7,500 people.  It would
be highly impracticable for each individual to be required to bring a separate action seeking the
same relief.

Each of the putative class members seek recovery based on the same conduct by Defendant
Koppers.

COMMONALITY: Common questions of law and fact exist as to each Class Member,
including whether (1) Defendant Koppers is liable for Medical Monitoring expenses, (2) whether
there is an increased risk of stomach or intestinal cancers, blood disease, brain tumors, or other
malignant disease known to be associated with or attributable to exposure to Defendant's
chemicals; (3) and whether regularly scheduled Urine Tests, Blood Tests, CT Scans, and other
specialized tests, would be beneficial in detecting latent stomach, digestive or intestinal cancers,
blood disease, brain tumors, birth defects, or other malignant disease.

**TYPICALITY:** The claims of the Class Representatives who live in the city of Somerville, Texas are typical of all members of the Class. The total number of Class Members comprising the relevant population to consider is believed to be approximately 7,500 people.

**ADEQUACY OF CLASS REPRESENTATIVES:** The Class Representatives are adequate representatives in that the key determiner of class membership for purposes of this proposed class action is that the individual be a past or present resident of the city of Somerville, in Burleson County, Texas.

**PREDOMINANCE OF COMMON ISSUES AND EFFICIENCY OF CLASS TREATMENT:** The Common issues of fact and law here predominate over any individual factor or legal issue in this case which seeks only injunctive relief in the form of medical monitoring. A Class Action is a superior method of adjudicating these claims rather than thousands of individual claims draining the resources of this court when a more efficient method of resolving these issues is available. In addition, allowing this Class Action to go forward will diminish prejudice to the Defendant and substantially reduce costs for all parties involved.

## COUNT ONE:
## MEDICAL MONITORING

58.    Plaintiffs incorporate by reference each of the preceding paragraphs numbered 1 through 57, as though fully set forth here in its entirety.

59.    All Members of the Medical Monitoring Class have been exposed to various toxic and/or carcinogenic substances while living in the city of Somerville, Texas that emanates (or emanated) from Defendant's Wood Treatment Facility.

60.    As a proximate result of these exposures, Class Members are at a significantly

16

heightened risk for developing digestive, intestinal or other malignant cancers, brain tumors and birth defects.

61.    Plaintiffs' exposures are due to Defendant's negligence, including, but not limited to, Defendant's failure to operate and maintain a safe environment at its wood treatment facility; failure to provide employees with a properly safeguarded work environment considering the regular handling and presence of toxic and carcinogenic substances that represent an integral and key component to the wood treatment processing activities, the revenue from which constitutes (upon information and belief) a significant part of company profits; failure to provide proper training in the handling of toxic and deadly chemicals and other substances; failure to provide proper and adequate equipment and supplies for the handling of toxic and hazardous chemicals and other substances; failure to provide proper notice and information about the toxic health effects of the hazardous chemicals and substances routinely handled and present at the facility; failure to comply with state and federal workplace safety regulations and statutes; and failure to provide proper and adequate warnings concerning the toxic and hazardous effects of these chemicals and substances that are (were) routinely being handled throughout Defendant's wood treatment facility.

62.    Many of the chemicals and substances routinely handled by the employees at Defendant's wood treatment facility in Somerville, Texas are known and proven hazardous substances that can cause injury or disease in humans.

63.    The increased risk of disease makes periodic diagnostic medical examinations reasonably necessary.

64.    Monitoring and testing procedures exist that can assist in earlier detection of

stomach, digestive or intestinal cancers, blood disease, brain tumors, birth defects, or other

malignant diseases in this population, most notably CT Scanning technology, UltraSound

Scanning, and specific Urine and Blood analyses for tumor cells and cancers.

    65.    The monitoring required here on account of Defendant's conduct is not of a kind

that is normally recommended for individuals absent exposure to hazardous substances because

CT Scans and specialized Blood and Urine Tests are not part of general well-care for individuals.

    66.    The requested medical monitoring is reasonably necessary according to scientific

and medical principles.

    67.    Defendant Kopper's conduct and calloused indifference towards the health and

welfare of the citizens of Somerville by exposing them to known carcinogens and highly toxic

substances make it liable for the costs associated with a comprehensive Medical Monitoring

Program designed to determine whether these Class Members develop stomach, digestive or

intestinal cancers, blood disease, brain tumors, birth defects, or other malignant diseases through

no fault of their own.

    68.    This action seeks a Medical Monitoring program to include:

a. Notice to each Member of the Class;

b. Periodic screening with CT Scans, Colonoscopy Screening, Prostate and Ovary Ultra Sound Scans, Blood and Urine Screening for specific Tumor Markers and Cancer Cells; Urinary Cytology Test, CEA (Carcinoembryonic Antigen), CA-125, and other relevant diagnostic tests to be determined by expert opinion;

c. Periodic examinations as determined by the Court to be appropriate for determining the presence of tumor cells and cancers;

d. Disclosure of all information, data, findings and other pertinent information that Defendant has gathered with regard to its employees and the incidence of stomach, digestive or intestinal cancers, blood disease, brain tumors, birth defects, or other malignant diseases, which may be critically important to other employees, including family members of employees, and their physicians in making diagnostic and treatment decisions.

18

**WHEREFORE**, the Class Representatives, on behalf of themselves and all Others similarly situated, demand a trial by jury and pray for judgment against Defendants Koppers for damages and equitable relief as follows:

A. An Order certifying this case as a Class Action and appointing the Class Representatives and undersigned counsel to represent the Class;

B. An Order directing Defendant Koppers to establish a Medical Monitoring Program as set forth above, or alternatively, as directed by the Court;

C. An award of Attorneys' Fees and Costs; and

D. Such other relief as the Court may deem just and appropriate.

Dated: October 12, 2007

Respectfully Submitted,

BERGER & LAGNESE, LLC

By: _____
Joshua L. Berger, Esq.
310 Grant Street, Suite 720
Pittsburgh, PA  15219
Tel: (412) 471-4300
Fax: (412) 471-3116

WOODFILL & PRESSLER, LLP

Jared R. Woodfill V, Esq.
Texas State Bar No. 00788715
H. Paul Pressler III, Esq.
Texas State Bar No. 16265000
John P. Devine, Esq.
Texas State Bar No. 05788300
909 Fannin, Suite 1470
Houston, Texas  77010
Tel: (713) 751-3080
Fax: (713) 751-3058

**THE LAW OFFICES OF ROBERT H. WEISS, PLLC**

Robert H. Weiss, Esq.
Stephen David Murakami, Esq.
50 Jericho Turnpike, Suite 201
Jericho, New York 11753
Tel: (516) 876-4213
Fax: (516) 876-6906

**WOSKA & SWIM**

A. Daniel Woska, Esq.
Doug Swim, Esq,
Dan Holloway, Esq.
Mike Blaschke, Esq.
3037 N.W. 63rd, Suite 251
Oklahoma City, OK 73116
Tel: (405) 562-7771
Fax: (405) 285-9350

**ATTORNEYS FOR PLAINTIFFS**