# EXHIBIT D

**07 C 6883**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE ASHMAN**

No. 25,099

| | | |
|---|---|---|
| LEON BRINSTON, | § | IN THE DISTRICT COURT |
| MABEL MUNSON DAVIS, | § | |
| JAMES DOUGLAS, | § | OF BURLESON COUNTY |
| KARDERO JAMES HARRIS, | § | |
| MINNIE LEE MOORE, | § | |
| SANDRA MURRAY, | § | 335th JUDICIAL DISTRICT |
| MILDRED ROBERSON, | § | |
| ALFRED D. ROBERSON, JR., | § | |
| MABEL SMITH, | § | |
| GLORIA C. TOWNSEND, | § | |
| RUBY WILLIAMS, | § | |
| EDDIE B. WASHINGTON, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | |
| | § | |
| KOPPERS INDUSTRIES INC., | § | |
| A FOREIGN CORPORATION; | § | |
| THE BURLINGTON NORTHERN | § | |
| SANTA FE RAILWAY COMPANY, | § | |
| A FOREIGN CORPORATION; | § | |
| | § | |
| DEFENDANTS. | § | |

## CLASS ACTION COMPLAINT

### PRELIMINARY STATEMENT

1.  The named plaintiffs are residents or former residents of the Somerville, Burleson County, Texas, area (Somerville).

2.  The defendant, Koppers Industries, Inc. (Koppers) owns and operates a wood treatment facility in and near Somerville. At this facility, Koppers utilizes toxic chemicals to produce treated railroad ties and other chemically treated specialty wood

FILED 10:50AM
DATE 10/25/07
Joy Brymer
District Clerk, Burleson County
By _____

1

products for the railroad industry. From time to time Koppers and its predecessors have used a chemical known as pentachlorophenol in addition to coal tar creosote to treat the aforesaid wood products.

3. Koppers and Burlington Northern Santa Fe Railway Corporation (BNSF) and their predecessors are hereinafter referred to from time to time as the "wood treatment defendants".

4. The named plaintiffs, on behalf of themselves and others similarly situated as is more particularly stated below, here complain that the aforesaid toxic chemicals used to treat these wood products have in the past and currently are escaping from the aforesaid facility. As shown below, these toxic molecules have contaminated plaintiffs' homes and real estate, places of business and public schools in the area. Further, plaintiffs here complain that the aforesaid toxic chemicals have contaminated the air, ground, and water resources of the Somerville environment. As a consequence, plaintiffs complain that they have been placed at an unacceptably high risk for serious and life threatening diseases in the future.

5. Plaintiffs, therefore, state the following causes of action against the defendants named above to recover compensation for property damage caused by the aforesaid toxic contamination.

6. In addition to the recovery of monetary damages, plaintiffs further seek through this civil action equitable relief in the form of an injunction to compel the defendants to cease polluting and/or to temporarily relocate plaintiffs until permanent relocation can be effected for them by the defendant.

2

## DISCOVERY CONTROL PLAN

7.      Plaintiffs intend to conduct discovery under Level 2 of the Texas Rule of Civil Procedure 190.3 because it is imperative that a hearing be held as soon as is possible so that Plaintiffs may be relocated away from the lie-threatening contamination which blankets the entire City of Somerville at ultra hazardous toxic levels.

## IDENTIFICATION OF PARTIES

### PLAINTIFFS

8.  Mabel Munson Davis is a resident of Lyons, Burleson County, Texas, residing at 2209 FM RD 60 East, Lyons, Texas, 77863. She was born on December 28, 1934, and has been a resident of the Somerville area since 1984.

9.  Kardero James Harris is a resident of Somerville, Burleson County, Texas, residing at 305 Avenue East, Somerville, Texas, 77879, where he has lived since his birth on October 27, 1986.

10.     Minnie Lee Moore is a resident of Somerville, Burleson County, Texas. Mrs. Moore is married to Charlie Moore and they own their home and real estate in Somerville. They are long term residents of Somerville.

11.     Sandra Murray is a resident of Houston, Texas, residing at 14410 Alrover Street, Houston, Texas, 77045. Mrs. Murray was a resident of Somerville from the time of her birth on October 20, 1955, until 1995, when she moved to Houston.

12.     Alfred D. Roberson, Jr. is a resident of Somerville, Burleson, Texas, 77879, and owns the home and real estate located at CR-288-12027 Somerville, Texas, 77879.

13.     Mabel Smith is a resident of Portland, Oregon, residing at 6328 North East Rodney Street, Portland, Oregon, 97211. She was born in the Somerville, Texas, area on

March 20, 1931 and lived at 173 Flemming Road, Somerville Texas, from 1931 until 1979.

14. Gloria C. Townsend is a resident of Somerville, Burleson County, Texas, residing at 325 Flemming Road, Somerville, Texas, 77879 since 1936. Mrs. Townsend is married to James Townsend and they own the house and real estate located at 325 Flemming Road, Somerville, Texas.

15. Eddie B. Washington is a resident of the Somerville, Burleson County, Texas, area. She has lived at 3205 County Road 289 since 1912 and owns the real estate there located.

16. Each of the named plaintiffs has experienced one or more of the following during the time periods relevant hereto:

      a. Intermittent flooding of their property with surface water running from the contaminated Kopper's railroad tie treatment facility.

      b. Intermittent flooding of their property from Thompson Creek and other natural drains with receive contaminated surface water flowing from the aforesaid rail road tie treatment facility.

      c. Treated wood provided to the plaintiffs by the wood treatment defendants was routinely used as firewood in the homes of the plaintiffs and in some cases used as cooking fuel.

      d. Treated wood ties from time to time would be placed on or near the property of one or more of the plaintiffs for storage prior to their being sold or removed by the wood treatment defendants for some other purpose.

4

e. Subsurface water lying under the real estate of the plaintiffs has been and remains contaminated with the hazardous chemicals used by the wood treatment defendants as a consequence of the toxic chemicals being spilled and otherwise placed on the soil of the treatment facility and otherwise placed in leaking containment ponds such that the ground water and the drinking water aquifers underlying the Somerville area are now contaminated.

f. One or more of the plaintiffs has in the past experienced "oily tasting" water drawn from fresh water wells in the Somerville area.

g. One or more of the plaintiffs' houses and real estate have become contaminated with dioxins/furans, PAHs and other toxic molecules released from the aforesaid wood treatment facility.

h. The plaintiffs have and continue to experience noxious odors emanating from the aforesaid wood treatment facility.

i. The plaintiffs have and continue to experience poisonous dusts released from the aforesaid wood treatment facility settle from the air onto their respective properties in the Somerville area.

**DEFENDANTS**

**Koppers, Inc.**

17.    The defendant, Koppers Inc. (Koppers) is a Pennsylvania Business Corporation, Entity No. 1049518.  Koppers maintains its headquarters at Koppers, Inc., Corporate Headquarters, 436 Seventh Avenue, Pittsburgh, PA 15219-1800.  Koppers is an international company and a leading integrated producer of chemicals, carbon

5

compounds, and treated wood products for the aluminum, steel, chemical, plastics, railroad and utility industries. In connection with its Railroad Products and Services business, it has owned and operated a railroad tie treating plant in and near Somerville, Texas, since March 21, 1995. The street address of the plant is Highway 36 North & County Road 423, Somerville, TX 77879. **Service of process may be had by serving its registered agent for service of process, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, TX 78701, by certified mail, return receipt requested.**

**Burlington Northern and Santa Fe Railway Corporation**

18.    The defendant Burlington Northern and Santa Fe Railway Corporation (BNSF) was incorporated in the State of Delaware on December 16, 1994.    On December 31, 1996, The Atchison, Topeka and Santa Fe Railway Company (ATSF) merged with and into Burlington Northern Railroad Company (BNRR, and BNRR changed its name to The Burlington Northern and Santa Fe Railway Company (BNSF Railway). The rail operations of BNSF Railway, BNSF's principal operating subsidiary, comprise one of the largest railroad systems in North America. From 1905 until 1995, the former Atchison, Topeka and Santa Fe Railway Company (ATSF) operated the Somerville tie treating plant. **Service of process may be had by serving its registered agent for service of process, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.**

## SPECIFIC RULE 42 CLASS ACTION ALLEGATIONS

19. As is shown below, the plaintiffs seek to have themselves recognized as class representatives in order to prosecute the within civil action as a class action pursuant to Rule 42 of the Texas Rules of Civil Procedure and other pertinent provisions thereof.

A. Rule 42(a) Allegations.

1. Numerosity.

20. The putative class, as alleged above in paragraph 4, numbering in excess of 2500 current and former residents and property owners of the class affected area, is so numerous that joinder of all members is impracticable.

2. Commonality.

21. Rule 42(a)(2) of the Texas Rules of Civil Procedure provides that "commonality" is satisfied upon a showing that there are questions of law or fact common to the class.

22. The claims of the putative class as well as the class representatives, as shown above, all arise from the same set of conditions created by the wood treatment defendants from 1905 to the present at the Somerville plant site located near Somerville, Burleson County, TX. The mechanism of exposure and contamination is common to all persons and their property in the class affected area.

23. Each member of the putative class was, and is being, exposed to the same toxins.

24. The wood treatment defendants were under a legal duty to use their Somerville property in such a way as to not unreasonably interfere with the rights of the plaintiffs and the putative class members to enjoy their property. Beginning in 1905 and continuing until the present, the defendants breached this duty to the plaintiffs and caused

abnormally dangerous substances to escape the wood treatment defendants' Somerville property. As more particularly plead below, the class members and their property were all injured and damaged as a consequence of the same breach of duty the defendants owed to each class member as a matter of law.

### 3. Typicality.

25. As shown above, plaintiffs here allege questions of law or fact common to the class and the claims of the representative parties. Further, the claims of the plaintiffs are typical of the claims of the putative class. Contamination of the real estate owned by the putative class members was all contaminated in the same way, during the same time period, and presents the same type of property damage as to each potential class member. Further, the risk of serious harm, injury, and disease to each of the class members was created in the same way, by the same defendants during the same time period and the risk is typical of each class member. Further, the same type of toxic molecules threatens each of the putative class members and subjects each to the enhanced risk of the same injuries and disease processes.

26. A representative party's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. These claims are not required to be identical.

### 4. Adequacy of representation.

27. The representative parties and their properties are, and in the past have been located, within the plume of contamination emanating from the aforesaid wood treatment plant site, and therefore share the same risk as the putative class members. The

8

representative plaintiffs must necessarily protect the interests of the class as they seek to protect themselves; the plaintiffs, because of their shared interests with the putative class, are adequate to represent the interests of the class and any sub-classes.

28.   The law firms seeking to represent the putative class possess the financial resources and possess the requisite experience to vigorously represent the class and any subclass in this litigation.

**B. Rule 42(b)(1)(A) Allegations.**

29.   The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the defendants opposing the class.

30.   As shown above, the sheer number of putative class members, should their claims be litigated separately, will with certainty result, over time, in inconsistent judgments.

31.   Inasmuch as this lawsuit addresses over 100 years of misconduct by the defendants, it is important that the litigation result in clear standards of conduct for other corporations who are or would seek to conduct business within the jurisdiction of Burleson County, TX.

**C. Rule 42(b)(2) Allegations.**

32.   The representative plaintiffs, on behalf of the putative class members, seek equitable relief from the defendants in order to stop future contamination of plaintiffs' property with coal tar creosote, PAHs, dioxins, furans and other toxins migrating from

the defendants' Somerville plant site. The injunctive relief sought is permanent and final in nature as more fully appears below.

33. As clearly set forth above, the defendants have engaged in a course of conduct since 1905 which essentially guarantees continued contamination of plaintiffs' property, as well as the property of the putative class members with dioxin and other related toxins due to wind erosion and surface water run-off from the Somerville plant site.

**D. Rule 42(b)(3) Allegations.**

34. While none but a theoretical "class action" is populated with members of clone-like similarity, the instant case, because of the sheer numbers of putative class members experiencing the same contamination and because the same defendants are responsible for the contamination of the affected communities, issues of fact and law common to the class members predominate over the individual issues attendant to each class member. No individual class member, given the complexity and expense of proving the necessary elements of this civil action, can express a credible argument in favor of individual prosecution over the device of Rule 42. Currently, there is no litigation pending regarding the deposition of wind and water borne contaminated dust and sediment on the buildings, property and person of the residents of the Somerville toxic ellipse. Because the same defendants acting jointly, severely and in concert during the operative time period are responsible for the environmental mess and human health tragedy that now is the profile of the affected communities, justice requires that the litigation be concentrated in this civil action to allow for the marshalling of money and manpower necessary to effectively litigate the case on behalf of the affected population.

By concentrating the many common issues of scientific and technical proof, the common issues of fact regarding the defendants' conduct in causing substantial portions of the aforesaid communities to be contaminated, and the many common issues of fact regarding the toxicity of the molecules in question, in a single Rule 42 action, the court will be afforded an efficient and cost effective strategy to manage the numerous class members being represented in this civil action.

35. Given today's style of corporate defense, the court can expect a tiresome and obstructionist litigation strategy by the defendants, underscored by collateral attacks on the reputations of the experts employed by the plaintiffs, stonewalling discovery tactics and a strategy of using the rules to effect delay all for the ulterior purpose of breaking the financial back of any individual plaintiff with the temerity to pursue a civil action such as this. Such a defense strategy is premised on the tactic of winning the litigation by attrition rather than defending on the merits of plaintiffs' claims. In the face of a well financed corporate litigation team employing such tactics, litigation of individual claims may be difficult. Rule 42 provides the only effective and efficient tool for the court to provide a fair forum for the litigation of plaintiffs' claims.

36. The defendants, over the course of approximately 100 years, indiscriminately contaminated the plaintiffs' and putative class members' property, making no allowances for individual differences among the class members in this toxic undertaking. The defendants injured and contaminated the plaintiffs and their property as a group. In this conduct, the defendants' only criteria were that the individual putative class member be located under the aforesaid plume of toxins. Defendants' misconduct was broad, and it was carried out in a manner heedless of any peculiarities of the individual residents of the

affected areas. Plaintiffs now, having been injured as a group, should be permitted, in consideration of simple justice and fair play, to, as a group, through class representatives, prosecute the defendants in this single Rule 42 action. The Plaintiffs, therefore, bring this case on behalf of themselves and others similarly situated.

**E.  Class Definition.**

37.  The class is made up of all persons who own property or lease property within 1 mile of the plant.have had their person and/or property contaminated with the aforesaid toxins released from the Somerville plant..

38.  The putative class of all such persons is described as follows: The Property Owners Class which is made up of current real property owners, including leasehold interests.

39.  The Class Affected Area is the area within a range of a one mile radius from the location of the Somerville plant.

40.  Excluded from this class are: (1) the defendants and their respective officers, directors, and managerial employees, if any; (2) all attorneys and their staffs involved in this litigation; (3) the presiding judicial officer and the presiding judicial officer's staff.

## GENERAL FACTUAL ALLEGATIONS

41.  The Somerville facility occupies a 200-acre tract of land approximately one mile northwest of the intersection of Highway 36 and FM 1361on the northeastern edge of the city of Somerville in Burleson County, Texas.

42.  The Somerville plant was constructed by Ayer and Lord in 1897 and treated railroad ties by contract for AT &SF under the name of Texas Tie and Lumber Preserving Company (TT & LPC).

43. In January 1905, the plant was purchased by AT & SF. TT & LPC operated the original Somerville plant until 1905. It was then dismantled in favor of a new facility built nearby, which is the present site of the plant as aforesaid.

44. The new plant began production in February 1906, and on December 2, 1912, the plant's name was changed to Santa Fe Tie and Lumber Preserving Company. On June 2, 1950, this subsidiary was absorbed by the Santa Fe Railway (AT & SF).

45. On March 28, 1995, AT & SF sold the Somerville plant to the defendant Koppers. As shown above, AT & SF merged with and into the defendant BNSF on December 31, 1996.

46. BNSF has represented to the Texas Natural Resource Conservation Commission that it assumes responsibility for the historic contamination of the Somerville site. However, since 1996 Koppers, Inc. the new and current owner and operator of the Somerville plant continues with impunity to proliferate the unbridled, ultra hazardous contamination throughout the Somerville area.

47. From its inception in the late 1800's and continuing today, the plant has and does today manufacture railroad cross ties, bridge timbers, poles, piling, and other wood products all of which are treated on site with one or more pesticides and wood preservatives including derivatives of coal tar creosote and chlorinated pesticide compounds including pentachlorophenol.

48. The manufacturing process consists of vapor drying the various shaped wood pieces followed by pressure treating the wood with creosote/oil mixtures as well as certain pesticidal extenders and chlorinated pesticides including the aforesaid pentachlorophenol. The resulting treated wood products are used in the railroad industry.

13

49. Coal tars are by-products of the carbonization of coal to produce coke and/or natural gas. Coal tars are complex combinations of polycyclic aromatic hydrocarbons, phenols, heterocyclic oxygen, sulfur, and nitrogen compounds. Coal tar creosotes are distillation products of coal tar.

50. Coal tar creosotes consist of aromatic hydrocarbons, anthracene, naphthalene, and phenanthrene derivatives. At least 75 per cent of coal tar creosote mixture is made up of polycyclic aromatic hydrocarbons (PAHs).

51. The composition of the creosote mixture is dependent on the sources and preparation parameters of the coal tar, and as a result the creosote components are rarely consistent in their type and concentration. An example of the composition variability among creosote samples was recently presented by Weyand et al. (1991). In that study, the concentrations of several PAHs were analyzed in four coal tars. All of the PAHs identified exhibited 2-fold to nearly 20-fold differences in concentration among the four samples.

52. The coal tar creosote mixtures at issue here represent 100 years of different formulations used at the Somerville site. These formulations contained from time to time 199 identifiable PAHs including benzo(a)pyrenes and dibenzofurans. Coal tar creosote (creosote) is a soup of hundreds, if not thousands, of compounds most of which are toxic to the environment and man.

53. To this creosote soup, oil and other extenders, including but not limited to, pentachlorophenol are added to create the "creosote" utilized in the pressure treatment of wood at facilities like Somerville. Moreover, based upon information and or belief, the

14

aforementioned extenders were obtained from confirmed extremely dangerous and ultra-hazardous Super Fund sites including the infamous Brio site in Harris County, Texas.

54.    The aforementioned compound, pentachlorophenol, is a chlorinated compound used as a pesticide in the treatment of specialty wood products such as poles and railroad ties and other applications where wood comes into contact with soil making it vulnerable to insect attack.   Often pentachlorophenol, in the past, was used in the creosote treatment of specialty products.   On information and belief pentachlorophenolic compounds were used in the treatment of specialty wood products at the Somerville site at relevant times.

55.   During the manufacturing process of pentachlorophenol dioxins are formed as an unwanted by-product of production.   Further, given the chemical make-up of pentachlorophenol, it is a likely generator of dioxins and furans when subjected to heat and pressure of the sort utilized in the pressure treatment of specialty wood products at the Somerville facility.

56.    Because of the availability of benzene in coal tar creosote, a source of chlorine in an environment of heat and pressure together with oxygen presents the opportunity for a variety of dioxins and furans to form during the tie treating process.

57.    Creosote and its constituent compounds, pentachlorophenol, dioxins and furans are toxic and harmful to man and the environment.

58.    During the operative time period from 1905 to the present, BNSF and Koppers operated a pressure treating facility at Somerville which encompassed the use of large metal cylinders into which shaped wood products would be placed.   Under pressure

and heat creosote and other pesticides would infuse the wood and displace water thus impregnating the railroad ties and other products with the aforesaid pesticides.

59. Currently, the Somerville plant utilizes four 8 feet in diameter, 155 feet long cylinders into which specialty wood is placed for pressure treatment.

60. Because of the magnitude of the treatment operation at Somerville, enormous quantities of creosote and other pesticides have in the past and currently are being utilized on a daily basis.

61. Due to the size of the operation, extensive stacks of treated railroad ties and other treated products are, and at all relevant times in the past have been, placed on the ground for purposes of "curing out". Volatilized molecules of the aforesaid toxic compounds off gas from this process and are carried by the prevailing winds over the Somerville area. Creosote and other pesticides drip from the curing treated wood products and leech into the soil causing contamination of the soil, surface water and sub-surface water including the aquifers underlying the Somerville area.

62. Independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs inside the homes of Somerville residents. Likewise, independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs in the residential soil of the Somerville area. The nature and make-up of the aforesaid compounds establish that the Somerville site is the generator of these compounds.

63. Governmental mandated testing of soil, sediment, surface and sub-surface water on the Somerville site has verified the presence of the afore- said toxic and dangerous compounds.

16

64. The Texas Natural Resource Conservation Commission (TNRCC) has documented the contamination of the aquifer underlying the Somerville area.

65. The TNRCC has documented soil contamination at the Somerville site.

66. Surface water run-off from the Somerville site has carried contaminated sediment to the waters of Thompson Creek and other natural drainage features resulting in off site contamination of the Somerville area.

67. As a consequence of the foregoing, but not limited to the foregoing, activities of the wood treatment defendants toxic substances including PAHs, dioxins/furans, arsenic and other dangerous and deadly toxins were at all relevant times generated and released from the aforesaid Somerville site.

## COUNT I

## PRIVATE NUISANCE

68. Plaintiffs repeat, reassert and real ledge all previous allegations set forth herein.

69. The acts and omissions complained of above and elsewhere in this complaint caused contamination of groundwater below plaintiffs' property, the soil on and adjacent to plaintiffs' property and the air on plaintiffs' property and further caused the insides of plaintiffs' homes to be contaminated with the afore described toxins and as such these acts and omissions constitute a private nuisance.

70. The contamination described in the preceding paragraph was and is harmful to the health of the plaintiff property owners, was and is offensive to their senses and has and will in the future obstruct the free and unrestricted use and enjoyment of their property.

17

71. Alternatively, the wood treatment Defendants' conduct in producing the aforesaid toxins and causing them to contaminate the property of the Propertied Plaintiffs and the property of the Class Representative members of the putative class was and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

72. Defendants conduct in invading the property interests of the Class Representatives Plaintiffs with the aforesaid toxins was negligent and reckless and as such constituted an actionable nuisance, subjecting defendants to liability for any harm proximately caused by defendants' unlawful invasion of plaintiffs' property and the property of the putative class members the property owning and leasing Plaintiffs represent.

73. Additionally, and in the alternative to plaintiffs' allegations that defendants' were negligent and reckless, plaintiffs allege the aforesaid toxins are an abnormally dangerous instrumentality and the production of and release of the aforesaid toxins is an abnormally dangerous activity.

74. Plaintiffs further allege that the aforesaid contamination of the Somerville plant site is an abnormally dangerous condition.

75. The defendants for their own purposes and economic profit chose to create, handle and maintain the aforesaid toxins on their Somerville plant site premises. In so doing, the defendants released into the air "poisonous dust" fumes and particulates and caused surface water and subsurface water to become contaminated which, as a matter of law, constitutes an abnormally dangerous activity.

18

76.  Because the defendants created an abnormally dangerous condition and because the defendants engaged in an abnormally dangerous activity, the defendants are strictly liable to the Class representatives for any harm and injury proximately caused by the abnormally dangerous toxins.

77.  As a direct and proximate consequence of the defendants and each of them maintaining and creating an abnormally dangerous condition and instrumentality on the aforesaid plant site, the property owning and leasing Class representatives and the members of the putative class they represent have been injured and damaged, suffering diminution in value and irreparable loss of property.

## COUNT II

### TRESPASS

78.  Plaintiffs repeat, reassert and real ledge all previous allegations set forth herein.

79.  In furtherance of their business interests, the wood treatment defendants caused the aforesaid toxins to be produced and released during the conduct of their business at the Somerville plant.

80.  The defendants at relevant times recklessly or negligently, or as a result of the abnormally dangerous activity of producing and releasing toxins at the Somerville plant site, caused the property of the property owning and leasing Plaintiffs to be invaded by aforesaid the aforesaid toxins, causing great and substantial harms to persons, land and chattels of the property owning and leasing Plaintiffs and the members of the putative class they represent.

19

81. As a direct and proximate result of the defendants' trespass, as aforesaid, the plaintiffs and the members of the putative class have been harmed and injured as aforesaid in their person and property.

## COUNT III

## NEGLIGENCE

82. Plaintiffs repeat, reassert and re-allege all previous allegations set forth herein.

83. Defendants owe plaintiffs and class members a duty of reasonable care in operating the Somerville railroad tie treatment facility.

84. Defendants knew or should have known that the Somerville facility released hazardous wood treatment waste and toxins, as aforesaid, into the area where the plaintiffs and class members lived, owned property and worked. Defendants also knew or should have known that the aforesaid releases of toxins would injure the health and property of plaintiffs and class members. Defendants have breached their duty by failing to use reasonable care at all times relevant to avoid the aforesaid contamination of plaintiffs and class members' person and property.

85. As a direct and proximate result of defendants' breach of duty, plaintiffs and class members suffered injuries and permanent irreparable damage to their property.

## COUNT IV

### NEGLIGENCE PER SE

86. Plaintiffs repeat, reassert, and re-allege all previous allegations set forth herein.

87. The historic, unexcused, repeated, flagrant, and continuous violations of the laws of the State of Texas by the Defendants including: the air quality regulations promulgated under the Texas Clean Air Act; the Texas Solid Waste Disposal Act; and the Texas Water Code has created a long sorted profile by the Defendants of having knowingly violated state law by: discharging hazardous waste into Thompson Creek; the surrounding air and engaging in the offsite disposal of hazardous waste in areas of the adjacent community.

88. Class Plaintiffs and putative Class members are among the class of persons intended to be protected by the environmental laws of the State of Texas.

89. The aforementioned flagrant, historic, and continuous violations by the Defendants of the state environmental laws and regulations has been and is presently the proximate cause of the contamination of the Plaintiffs property and of the pervasive spread of deadly diseases and life threatening conditions including cancers experienced by the plaintiff community members, and as a result of these unprecedented actions of the defendants has resulted in a breach of duty to Plaintiffs to abide by the laws of the State of Texas in carrying out the operation of their creosote manufacturing plant.

90. As a direct and proximate result of Defendants' breach of duty, plaintiffs and class members suffered injuries and permanent, irreparable damage to their property all of which constitutes negligence per se.

## COUNT V

### GROSS NEGLIGENCE

91. Plaintiffs repeat, reassert and real ledge all previous allegations set forth herein.

92. The unexcused, repeated and continuous violation of the air quality regulations under the Texas Clean Air Act; the Texas Solid Waster Disposal Act; and the Texas Water Code Disposal Act; creating a long sorted history of having flaunted the law by discharging hazardous waste into Thompson Creek, offsite disposal of hazardous waste.

93. Class plaintiffs and putative class members are among the class of persons intended to be protected by the environmental laws of the State of Texas

94. The flagrant, historic and continuous violations by the defendants of the state environmental laws of the State of Texas is the proximate cause of the contaminating of the plaintiffs' property and of diseases.

95. Defendants' release of hazardous toxins as aforesaid into the Somerville area was willful, wanton and violated the duty of care owed to the plaintiffs and class members. Defendants exhibited a reckless disregard for the lives, health, and property of plaintiffs and class members.

22

96. As a direct and proximate result of defendants' breach of duty by defendants' willful and wanton acts, plaintiffs and class members suffered injury and damages. Defendants' gross negligence, willful and wanton acts entitle plaintiffs and class members to punitive damages in an amount sufficient to deter future bad conduct as aforesaid by these defendants and others who would choose in the future to engage in similar bad conduct.

## DEMAND FOR JUDGEMENT

97. The representative plaintiffs, on behalf of the putative classes demand as follows:

a. For the Class representatives and the putative class members making up the class of property owners and renters, an amount adequate to compensate for loss of value of real estate and any improvements thereon, including the loss of use, any clean up costs and in the event of a total loss, the loss of the intrinsic value of a home. And the class of property owning and renting Plaintiffs further demand an amount sufficient to relocate their homes, buildings, and other property to a new location outside of the contaminated area.

b. For the entire class of persons, an order directing that the defendants be permanently enjoined from further releases of toxins from the Somerville plant site.

c. Inasmuch as the conduct of the defendants has been characterized by deliberate and willful conduct in causing the contamination and because the defendants

23

have over the years engaged in fraudulent cover-ups of the risks of dioxins/furans this case is appropriate for an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief as follows as to all counts:

98. That this action be certified as a class action on behalf of the class described herein; and,

99. That the named plaintiffs be designated as representatives of the class and any subclasses and that the named counsel be designated class counsel; and,

100. That the plaintiffs and class members receive all compensatory damages to which they are entitled including but not limited to the cost of purchasing new furniture, clothing and the cost of moving their belongings both temporarily and permanently; and,

101. That the defendants be required to relocate the class representatives and putative class members both temporarily, into available temporary housing away from the contaminated area, until a permanent home and or residence of comparable worth can be found in an area that is uncontaminated to which the class members may be relocated; and,

102. That the defendants be enjoined from further contamination of the Somerville area as above described; and,

103. That punitive damages be awarded in an amount to deter future bad conduct on the part of these defendants; and,

104. That the defendants be required to pay the costs of developing a notice plan and the costs of implementing a notice plan that satisfies due process concerns for the purpose of notifying those members of the putative class of the existence of this action and of their claims; and,

105. That an award of attorneys' fees, expenses and costs of this action and all other relief to which the plaintiffs are entitled be made in favor of plaintiffs and the class.

**PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL COUNTS.**

Respectfully submitted,

Grover G. Hankins
Texas Bar No. 00795895
The Hankins Law Firm, PLLC
440 Louisiana Street, Suite 725
Houston, Texas 77002
281-316-9551
281-316-9552 facsimile

Dwight E. Jefferson
Texas Bar No. 10605600
Twelve Greenway Plaza #1100
Houston, Texas 77046
713-993-0399
713-993-0669 facsimile

Larry Wright
The Watts Law Firm
111 Congress Avenue, Suite 1010
Austin, Texas 78701