**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VIRDA BELL BULLARD, JOHN G. ALEXANDER, CLARENCE EDWARD BATTS, SR., ELNORA BELL, PAULLETTE BLAYLOCK, CHARLES H. BOOKER, JAMES ROY BOOKER, JOHN R. BORGAS, DONNA FAYE BREE, LISA MICHELLE BREEDLOVE, KERWIN BROOKS, COPPIN ARDELL BROWN, FLORENE J. BROWN, CHENITHA LASHONE BURLESON, JAMES EARL BURNETT, JAMES ROY BUMS, CHARLES BYNAUM, EARNEST CARRATHUS, CLEMMIE LEE CARTER, DORLISHA CHILDS, BRENDA CLIFTON, DENNIE FAYE COOPER, LETETIA CREAR, INA SHERI CROSS, DON RAY DARDEN, BOBBIE B. DAVIS, JOHN DAVIS, JR., LEONARD EDWARD DAVIS, WALSH DAVIS, MARCELINA GONZALES DELEON, BILLIE JEAN DENSON, CHARLES RAY DEVAULT, TOM DEVAULT, JASPER DOTSON, NATHAN EWING, JR., FRANK LEE EWING, SR., TED ALEXANDER FLEMINGS, ALTER MAE FLETCHER, ORA NELL RAY FORD, LEE GEORGE, JR., ANTOINETTE DENISE GRANT, CARRIE LEE GRAY, C.D. GREEN, THOMAS HANK, JR., JIMMIE HEARD, JR., LUCY HENDERSON, WESELY EARL HENDERSON, CAROLYN JOYCE HENRY, DOCK HESTER, CANTREAS LASHA HOGUES, JESSE LOYD HOGUES, SR., LUMAN W. HOLLOWAY, SHARON SUE HOLLOWAY, LILLY M. HOLMES, CHARLES JACKSON, AUSTIN EARL JACKSON, JR., KESHA LASHA JACKSON, MINNIE OLA JACKSON, THOMAS JACKSON, JUNE MARIE JOHNSON, RUBY JEWEL JOHNSON, COLQUITT KENNERSON, | Case No.  07 C 6883<br><br>Judge Kennelly<br>Magistrate Judge Ashman |

1

PAMELA DENISE LANKSTER, JESSIE          )
RAY LAVAN, PATRICIA A. LAVAN,           )
EARLENE LISTER, ELMER JOAN              )
LISTER, FELIPE PONCE LOPEZ, JR.,        )
BOBBIE JEAN LOVINGS-MCCARTNEY,          )
DONACIANO E.MARTINEZ,                   )
SHAUNDRA NECHELL MARTINEZ,              )
STEPHANIE NICOLE MATHIS, BRISCOE        )
TYRONE, ANEATHIA LOUISE MATHIS,         )
MARIE MATHIS, RUBY LEE MATHIS,          )
JAMES W. MCCOY, JANE G.                 )
MCCULLOUGH, CHARLES LOUIS               )
MCNEIL, GILBERT MCNEIL, SR., JAMES      )
E. MELTON, JR., CLINT MOLETT,           )
BEVERLY ROSE MOORE, SHARLA              )
MOORE, SHIRLEY ANN MOORE,               )
STEPHANIE ELAINE MOORE, MELANIE         )
CHANTEL MOSES, BELINDA W.               )
NICHOLS, WALTER EARL NIX, JR.,          )
LAWRENCE CLARENCE NIX, WALTER           )
EARL NIX, SR., GEORGE ALBERT            )
PENNIE, LUELLA RAY, MECHERNETTE         )
REDIC, CLIFTON ARNOLD ROBERTS,          )
BOBBIE JEAN ROBINSON, RHONDA            )
ROGERS, LEROY ROSS, HELEN D.            )
SAMS, ELIZABETH SAUAGE, HENRY           )
LEON SCARLETT, WANDA FAYE               )
SCARLETT-BASS, JESSIE SCHULTZ,          )
IOLA ELIZABETH SCOTT, EVERLENE          )
SWEED, ANGELINA TAPLIN, EVA             )
CLYDE TAYLOR, RUSSELL-CHARLES           )
TAYLOR, SR., JANE THOMAS, MANUEL        )
JAMES THOMAS, PATRICIA A.               )
TOLBERT, FLOYD TOWSEND, SR.,            )
BEATRICE TOWNSEND-HURD,                 )
DONELL TRAVIS, MARY HELEN               )
VASQUEZ, RITA Y. VASQUEZ, MAE           )
RUTH WATSON, JEROME WHEELER,            )
EDWARD JAMES WILLIAMS, LEE              )
CHARLES WILLIAMS, LLOYD CURTIS          )
WILLIAMS, CLEMON J. WILSON,             )
SHELIA WILSON, MARTIN WISE, JR.,        )
CLARA WOODFORD, ROBERT K.               )
WYATT, JIMMY LEE BLACKWELL              )

DAVID CORONA, JOHN LEE DARDEN,    )
EDDIE L. EVERLINE, SR., MELVIN    )
FISHER, CHARLES LEE NORRIS KING,    )
WILLIE LAVAN, SR., LUPE P. LOPEZ,    )
JAMES EARL MELTON, SR., ROBBIE    )
SMITH AS SPECIAL ADMINISTRATOR    )
OF THE ESTATE OF ANDREW JAMES    )
SMITH, DECEASED, SHARON JAMES    )
AS SPECIAL ADMINISTRATOR OF THE    )
ESTATE OF JOYCE MARIE HOUSTON,    )
DECEASED, MAGGIE DAWSON AS    )
SPECIAL ADMINISTRATOR OF THE    )
ESTATE OF VERSIE BEE LISTER,    )
DECEASED, WARREN SUMMER, JR. AS    )
SPECIAL ADMINISTRATOR OF THE    )
ESTATE OF WARREN J. SUMMERS,    )
SR., DECEASED, DEANYA RANDLE AS    )
SPECIAL ADMINISTRATOR OF THE    )
ESTATE OF JAMES WILLIAMS, SR.,    )
DECEASED, AND CHARLESETTA    )
MAYBERRY AS SPECIAL    )
ADMINISTRATOR OF THE ESTATE OF    )
ROBERT WILCOX, JR., DECEASED,    )
    )
                Plaintiffs,    )
vs.    )
    )
BURLINGTON NORTHERN SANTA FE    )
RAILWAY COMPANY, KOPPERS    )
INDUSTRIES, INC., MONSANTO    )
COMPANY, DOW CHEMICAL    )
COMPANY, AND VULCAN MATERIALS    )
COMPANY,    )
    )
                Defendants.    )

## ANSWER TO COMPLAINT AT LAW

NOW COMES BNSF RAILWAY COMPANY ("BNSF"), (incorrectly sued as) Burlington Northern Santa Fe Railway Company), one of the Defendants, by and through its counsel, Daniel Mohan and Daley & Mohan, and Douglas W. Poole and McLeod, Alexander,

Powel & Apffel, and for its Answer to the Complaint at Law, states as follows:

## PARTIES

1.1 Plaintiffs are residents or former residents of Somerville, Burleson County, Texas, and are citizens of Illinois, California, Arizona, Louisiana and Texas. Plaintiffs sue individually and as Representatives of the Estates of the respective Decedents as described in Attachment "A". Each of the Plaintiffs, or each of the Decedents or minor children upon whose behalf the Plaintiffs appear, occupied, owned, or has been assigned rights to any cause of action that could be asserted by previous owners of property in the Somerville area at the time during which the injury alleged herein occurred.

**ANSWER:  BNSF lacks information sufficient to form a belief about the truth of this allegation.**

1.2 Defendant Burlington Northern and Santa Fe Railway Corporation ("BNSF") is a Delaware corporation formed by the merger of the Burlington Northern and the Atchison, Topeka and Santa Fe Railway Company ("ATSF") railroads. At the time of the incidents made the basis of this suit the ATSF railroad was a Delaware corporation with its principal place of business in Chicago, Cook County, Illinois. BNSF may be served through its registered agent, CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

**ANSWER:     BNSF denies that ATSF's principal place of business was in Illinois and admits the other allegations contained in Paragraph 1.2.**

1.3 Defendant Koppers Industries, Inc. ("Koppers") is a Pennsylvania corporation that conducts business in Cook County from which it derives substantial profits. Koppers may be

served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, IL 62703.

> **ANSWER:  BNSF admits that Koppers is a Pennsylvania corporation, but states that it is without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 1.3.**

1.4 Defendant Monsanto Company (Monsanto) is a Delaware corporation with its principal place of business in St. Louis, Missouri. Defendant Monsanto does significant business in Cook County, Illinois. Monsanto may be served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, IL 62703.

> **ANSWER:        BNSF lacks information sufficient to form a belief about the truth of this allegation.**

1.5 Defendant The Dow Chemical Company (Dow) is a Delaware corporation with its principal place of business in Midland, Michigan. Defendant Dow does significant business in Cook County, Illinois. Dow may be served through its registered agent, CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

> **ANSWER:    BNSF admits that Dow is a Delaware corporation with its principal place of business in Michigan, but states that it is without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 1.5.**

1.6 Defendant Vulcan Materials Company (Vulcan) is a New Jersey corporation with its principal place of business in Birmingham, Alabama. Defendant Vulcan does significant business in Cook County, Illinois. Vulcan may be served through its registered agent, Prentice

Hall Corporation, 33 North LaSalle Street, Chicago, IL 60602.

> **ANSWER:  BNSF admits that Vulcan is a Delaware corporation with its principal place of business in Alabama, but states that it is without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 1.6.**

## II.
## JURISDICTION AND VENUE

2.1 Jurisdiction is appropriate in this Court because this is a lawsuit seeking damages in excess of the minimum jurisdictional limits of the Circuit Court of Cook County, Illinois.

> **ANSWER:  BNSF states that jurisdiction is proper in a United States District Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d), but further states that this litigation is centered exclusively in the Western District of Texas, which is the appropriate forum for it being heard, and denies any remaining allegations of paragraph 2.1.**

2.2 The Court has personal jurisdiction over these Defendants because they have the requisite contacts with Illinois, both specific and general, for the exercise of jurisdiction and such exercise of jurisdiction does not offend the traditional notions of fair play and substantial justice.

> **ANSWER:  BNSF states that jurisdiction is proper in a United States District Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d), but further states that this litigation is centered exclusively in the Western District of Texas, which is the appropriate forum for it being heard, and denies any remaining allegations of paragraph 2.2.**

2.3 Plaintiffs are not asserting any claims or causes of action based on federal laws, treaties, or the United States Constitution, and there is not complete diversity of citizenship between all Plaintiffs and all Defendants so that even though many of the claims being asserted herein have a value in excess of $75,000, a federal court does not have jurisdiction over this. action, and removal would be improper.

**ANSWER:   BNSF denies the allegations of paragraph 2.3.**

2.4  Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 because a substantial part of the events or omissions giving cause to the claims occurred in Cook County, Illinois. Plaintiffs' Complaint does not assert an action for recovery of damages to real property.

**ANSWER:    BNSF states that jurisdiction is proper in a United States District Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d), but further states that this litigation is centered exclusively in the Western District of Texas, which is the appropriate forum for it being heard, and denies any remaining allegations of paragraph 2.4.**

### FACTUAL BASIS OF PLAINTIFFS' CLAIMS

3.1. Plaintiffs are residents or former residents of Somerville, Burleson County, Texas. Plaintiffs are victims of cancer and other bodily injuries, as well as other damage, arising out of exposure to toxic chemicals from a wood treatment facility located in Burleson County. This suit arises out of the operations and activities of the Defendants with regard to the use and lack of containment of toxic chemicals used at the facility, which have caused them injuries and damages. Upon information and belief, many if not all of the chemicals used in the plant were

manufactured, mixed and/or consolidated at the Koppers Creosote facility in Cook County, Illinois.

**ANSWER:    BNSF denies that it is liable to any of the Plaintiffs and denies that it has caused injury to any of the Plaintiffs, and lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 3.1.**

## The Koppers Cicero, Illinois Facility

3.2 The Koppers, Inc., Stickney Plant, 3900 S. Laramie Avenue, Cicero, Illinois was engineered and constructed in 1920-1921. The plant was constructed for the manufacture of creosote and other chemicals to be used in railroad products. The creosote was manufactured and sold to the railroad defendants, and shipped from Cook County to plants in various locations such as the Somerville Texas Plant described below.

**ANSWER:    BNSF lacks information sufficient to from a belief as to the truth of the allegations of paragraph 3.2.**

## The Wood Treatment Facility

3.3 The Somerville facility, at which the Railroad Defendants operated and Koppers now operates a wood treatment plant, occupies a 200-acre tract of land on the northeastern edge of the city of Somerville in Burleson County, Texas. The plant began production in its present location in February 1906 and was owned by a subsidiary of the AT&SF Railroad. On December 2, 1912, the plant's name was changed to Santa Fe Tie and Lumber Preserving Company. .On June 2, 1950, the Santa Fe Railway (AT & SF) absorbed this subsidiary. On March 28, 1995, AT & SF sold the Somerville wood treatment facility to Koppers. AT & SF merged with and into the Defendant BNSF on December 31, 1996.

**ANSWER:     BNSF admits the allegations of paragraph 3.3**

3.4 BNSF has represented to the Texas Natural Resource Conservation Commission ("TNRCC") that it assumes responsibility for the historic contamination of the Somerville site.

**ANSWER:     BNSF denies the allegations of paragraph 3.4.**

**Chemical Involvement.**

3.5 From its inception in the late 1800's and continuing today, the wood treatment facility has and does today manufacture railroad cross ties, bride timbers, poles, piling, and other wood products all of which are treated on site with one or more pesticides and wood preservatives including derivatives of coal tar creosote and chlorinated pesticide compounds including pentachlorophenol (PCP). PCP is toxic to the environment and man, and exposure to it causes damage to the liver, kidneys, blood, and nervous system, and it is a human carcinogen.

**ANSWER:     BNSF denies the allegations of paragraph 3.5.**

3.6 The Somerville site wood manufacturing process consists of vapor drying the various shaped wood pieces followed by pressure treating the wood with creosote/oil mixtures as well as certain pesticidal extenders and chlorinated pesticides including the aforesaid PCP. The resulting treated wood products are used in the railroad industry.

**ANSWER:     BNSF denies the allegations of paragraph 3.6.**

3.7 Coal tars are by-products. of the carbonization of coal to produce coke and/or natural gas. Coal tars are complex combinations of polycyclic aromatic hydrocarbons (PAHs), phenols, heterocyclic oxygen, sulfur, and nitrogen compounds. Coal tar creosotes are distillation products of coal tar.

**ANSWER:   BNSF lacks information sufficient to from a belief as to the truth of the allegations of paragraph 3.7.**

3.8 Coal tar creosotes consist of aromatic hydrocarbons, anthracene, naphthalene, and phenanthrene derivatives. At least 75 per cent of coal tar creosote mixture is made up of PAHs. PAHs are toxic to the environment and man and are human carcinogens.

**ANSWER:  BNSF lacks information sufficient to from a belief as to the truth of the allegations of paragraph 3.8.**

3.9  The composition of the creosote mixture is dependent on the sources and preparation parameters of the coal tar, and as a result, the creosote components are rarely consistent in their type and concentration. An example of the composition variability among creosote samples was recently presented by *Weyand et al.* (1991). In that study, the concentrations of several PAHs were analyzed in four coal tars. All of the PAHs identified exhibited 2-fold to nearly 20-fold differences in concentration among the four samples.

**ANSWER:   BNSF lacks information sufficient to from a belief as to the truth of the allegations of paragraph 3.9.**

3.10 The coal tar creosote mixtures at issue here represent 100 years of different formulations manufactured in Cicero, Illinois and sent to the Somerville site. These formulations contained from time to time 199 identifiable PAHs including benzo(a)pyrenes and dibenzofurans. Coal tar creosote (creosote) is a soup of hundreds, if not thousands, of compounds most of which are toxic to the environment and man.

**ANSWER:     BNSF denies the allegations of paragraph 3.10.**

3.11 To this creosote soup, extenders including, but not limited to, PCP are added to create the "creosote" utilized in the pressure treatment of wood at facilities like Somerville.

**ANSWER:     BNSF denies the allegations of paragraph 3.11.**

3.12 PCP is a chlorinated compound used as a pesticide in the treatment of specialty wood products such as poles and railroad ties and other applications where wood comes into contact with soil making it vulnerable to insect attack. Often in the past PCP was used in the creosote treatment of specialty products. On information and belief PCP compounds were used in the treatment of specialty wood products at the Somerville site at relevant times.

**ANSWER:     BNSF denies the allegations of paragraph 3.12.**

3.13 During the manufacturing process of PCP, dioxins are formed as an unwanted by-product of production. Dioxins are one of the most carcinogenic substances known to man. Further, given the chemical make-up of PCP, it is a likely generator of dioxins and furans when subjected to heat and pressure of the sort utilized in the pressure treatment of specialty wood products at the Somerville facility.

**ANSWER:     BNSF denies the allegations of paragraph 3.13.**

3.14 Because of the availability of benzene in coal tar creosote, a source of chlorine in an environment of heat and pressure together with oxygen presents the opportunity for a variety of dioxins and furans to form during the tie treating process.

**ANSWER:     BNSF denies the allegations of paragraph 3.14.**

3.15 Creosote and its constituent compounds, PCP, dioxins and furans, are toxic and harmful to the environment and man. For purposes of this Complaint, all of these toxic and hazardous materials will often be referred to collectively as the "chemicals, solvents, and

substances" and sometimes as the "products in question."

> **ANSWER:    BNSF denies the allegations of paragraph 3.15, and states that Plaintiff's allegation that certain substances will be referred to collectively as chemicals, solvents and substances and sometimes as the products in question requires no answer.**

**<u>Supplier Defendants</u>**

3.16 Defendants Monsanto, Dow and Vulcan provided chemicals to both the Cicero Koppers facility in Cook County, Illinois and the Somerville facility. Some, if not all, of the chemicals provided were unreasonably dangerous, toxic, and/or contaminated with unknown and unanticipated adulterating constituents. The supplier defendants failed to warn of these contaminants and the unreasonably dangerous nature of their products, and/or failed to give proper instructions for their safe handling and use. Furthermore, these defendants negligently manufactured these chemicals in a way that allowed the formation or contamination of the products with the contaminants.

> **ANSWER:    BNSF lacks information sufficient to form a belief as to the truth of the allegations of paragraph 3.16.**

**<u>Plaintiffs' Chemical Exposure</u>**

3.17 During the operative time period from 1905 to present, BNSF and Koppers operated the wood treatment facility at Somerville. That process encompassed the use of large metal cylinders into which shaped wood products would be placed. Under pressure and heat, creosote and other pesticides would infuse the wood and displace water thus impregnating the railroad ties and other products with the aforesaid pesticides.

**ANSWER:      BNSF denies the allegations of paragraph 3.17.**

3.18 Currently, the Somerville plant utilizes four cylinders, which are 8 feet in diameter and 155 feet long, into which specialty wood is placed for pressure treatment.

**ANSWER:      BNSF lacks information sufficient to form a belief as to the truth of the allegations of paragraph 3.18.**

3.19 Because of the magnitude of the treatment operation at Somerville, enormous quantities of creosote and other pesticides have in the past and currently are being utilized on a daily basis. BNSF and Koppers have caused the release of these toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around the wood treatment facility.

**ANSWER:      BNSF denies the allegations of paragraph 3.19.**

3.20 Plaintiffs have been exposed and continue to be exposed to the toxic chemicals from the Somerville facility used to treat the wood products. At some point in time unknown to Plaintiffs, these chemicals began to contaminate their bodies, property and homes.

**ANSWER:      BNSF denies the allegations of paragraph 3.20.**

3.21 Due to the size of the operation, extensive stacks of treated railroad ties and other treated products are, and at all relevant times in the past have been, placed on the ground for the purpose of "curing out." Volatilized molecules of the aforesaid toxic compounds are released as gas from this process and are carried by the prevailing winds over the Somerville area.

**ANSWER:      BNSF denies the allegations of paragraph 3.21.**

3.22 Creosote and other pesticides drip from the curing treated wood products and leech into the soil causing contamination of the soil, surface water and groundwater including the aquifers underlying the Somerville area.

**ANSWER:    BNSF denies the allegations of paragraph 3.22.**

3.23 Independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs inside the homes of Somerville residents. Likewise, independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs in the residential soil of the Somerville area. The nature and make-up of the aforesaid compounds establish that the Somerville site is the generator of these compounds.

**ANSWER:    BNSF denies the allegations of paragraph 3.23.**

3.24 Governmental mandated testing of soil, sediment, surface and groundwater on the Somerville site has verified the presence of the aforesaid toxic and dangerous compounds.

**ANSWER:    BNSF denies the allegations of paragraph 3.24.**

3.25 Governmental entities have documented the contamination of the aquifer underlying the Somerville area. Governmental entities have also documented soil contamination at the Somerville site.

**ANSWER:    BNSF denies the allegations of paragraph 3.25.**

3..26 Surface water run-off from the Somerville site has carried contaminated sediment to the waters of Thompson Creek and other natural drainage features resulting in off site contamination of the Somerville area.

**ANSWER:    BNSF denies the allegations of paragraph 3.26.**

3.27 Natural wind patterns have dispersed throughout the air in Somerville toxic gasses created by the Somerville site.

**ANSWER:    BNSF denies the allegations of paragraph 3.27.**

3.28 Toxic contamination of the clothing of plant workers has caused harmful chemicals to contaminate the inside of their homes where family members and loved ones have been

secondarily exposed to such contaminants.

**ANSWER:     BNSF denies the allegations of paragraph  3.27.**

3.29   Plaintiffs have experienced one or more of the following during the relevant time periods:

> a.   Intermittent flooding of their property with surface water running. from the contaminated Koppers' railroad tie treatment facility.
>
> b.   Intermittent flooding of their property from Thompson Creek and other natural drains that receive contaminated surface water flowing from the Somerville railroad tie treatment facility.
>
> c.   Treated wood routinely provided to Plaintiffs by BNSF and Koppers as firewood in the homes of the Plaintiffs and in some cases used as cooking fuel.
>
> d.   Treated wood ties from time to time would be placed on or near the property of one or more of the Plaintiffs for storage prior to their being sold or removed by BNSF and Koppers for some other purpose.
>
> e.   Groundwater lying under the real estate of Plaintiffs has been and remains contaminated with the chemicals used by BNSF and Koppers as a consequence of the chemicals being spilled and otherwise placed on the soil of the treatment facility and otherwise placed in leaking containment ponds such that the groundwater and the aquifers underlying the Somerville area are now contaminated.
>
> f.   One or more of the Plaintiffs has in the past experienced "oily tasting" water drawn from fresh water wells in the Somerville area.

g. One or more of the Plaintiffs' houses and real estate have become contaminated with dioxins/furans, PAHs and other toxic molecules released from the wood treatment facility.

h. Noxious odors emanating from the wood treating facility.

i. Poisonous dusts released from the wood treatment facility that settle from the air onto their respective properties in the Somerville area.

**ANSWER:    BNSF denies the allegations of paragraph 3.29 including the allegations of subparagraphs a through i.**

3.30 PCP-containing products were routinely stored outside at the facility without cover or protection, allowing the chemicals to disperse throughout the neighborhood, contaminating Plaintiffs' homes, properties, and persons.

**ANSWER:    BNSF denies the allegations of paragraph 3.30.**

3.31 During the relevant time in question, BNSF and Koppers improperly disposed of unwanted chemicals and contaminated dirt by dumping the refuse outside at the facility, contaminating Plaintiffs' homes, properties, and persons.

**ANSWER:    BNSF denies the allegations of paragraph 3.31.**

3.32 As a consequence of the foregoing activities of the Defendants, but not limited to ' such, toxic substances including PAHs, dioxins/furans, arsenic and other dangerous and deadly toxins were at all relevant times generated and released from the Somerville site.

**ANSWER:    BNSF denies the allegations of paragraph 3.32.**

3.33 As a result of exposure to the toxic and hazardous chemicals, solvents, and substances, Plaintiffs have sustained bodily injuries, including cancer.

**ANSWER:    BNSF denies the allegations of paragraph 3.33.**

## CAUSES OF ACTION

### IV.
### NEGLIGENCE

4.1  Each of the statements and allegations made in Sections 3.1 to 3.33 above are specifically adopted and incorporated by reference herein as if set forth in full.

**ANSWER:    For its answer to paragraph 4.1, BNSF restates and incorporates herein its answers to paragraphs 3.1 to paragraphs 3.33.**

4.2 Defendants Monsanto Company, Dow Chemical Company, and Vulcan Materials Company were in the business of designing, manufacturing, selling and/or distributing the chemicals and placed said chemicals in the stream of commerce. The chemicals were mixed with the creosote and shipped via rail to the Cicero Koppers facility in Cook County, Illinois and the Somerville, Texas facility.

**ANSWER:    BNSF lacks information sufficient to form a belief as to the truth of the allegations of paragraph 4.2.**

4.3 At the time the chemicals left the control of Monsanto, Dow and Vulcan, the chemicals were in a defective condition which rendered the chemicals unreasonably dangerous.

**ANSWER:    BNSF denies the allegations of paragraph 4.3.**

4.4  This unreasonably dangerous, defective, and unsafe condition of the chemicals continued up to and including the time of the exposure.

**ANSWER:    BNSF denies the allegations of paragraph 4.4.**

4.5 At all times relevant herein, it was the duty of the Defendants, Monsanto, Dow, and Vulcan, and each of them, to use reasonable care in designing, manufacturing, selling, and/or distributing the chemicals.

**ANSWER:     BNSF lacks information sufficient to form a belief as to the truth of the allegations of paragraph 4.5.**

4.6 At all times relevant herein, it was the duty of the Defendants, Koppers and BNSF, and each of them, to use reasonable care in handling, releasing, and disposing of the chemicals.

**ANSWER:     BNSF denies that paragraph 4.6 properly alleges the duty of care, and denies any remaining allegations of paragraph 4.6.**

4.7 Each and every defendant committed various acts of omission and commission that constitute negligence and were a proximate cause of the injuries and damages of Plaintiffs.

**ANSWER:     BNSF denies the allegations of paragraph 4.7.**

4.8  At all times relevant herein, in violation of their above-specified duty, and in breach thereof, the Defendants, Koppers, BNSF, Monsanto, Dow, and Vulcan, and each of them, were guilty of one or more of the careless and negligent acts or omissions set forth more fully herein.

**ANSWER:     BNSF denies the allegations of paragraph 4.8.**

4.9  Koppers and BNSF were negligent in allowing and failing to prevent the release of toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:     BNSF denies the allegations of paragraph 4.9.**

4.10 Koppers and BNSF were negligent in failing to monitor their procedures and receipts of toxic and hazardous chemicals, solvents, and substances so that they were released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:     BNSF denies the allegations of paragraph 4.10.**

4.11 Koppers and BNSF were negligent in failing to monitor the types and amounts of

toxic and hazardous chemicals, solvents, and substances that were being released and that escaped into the soil, groundwater, water, and air in and around *the* wood treatment facility they operated and/or owned. Alternatively, Koppers and BNSF were negligent in the manner in which they undertook to monitor the types and amounts of toxic and hazardous chemicals, solvents, and substances that were being released and that escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned, and such conduct increased the risk of harm and/or caused harm because it was relied upon by others to be performed with the appropriate standard of care.

**ANSWER:     BNSF denies the allegations of paragraph 4.11.**

4.12   Koppers and BNSF were negligent in improperly disposing of and failing to properly dispose of toxic and hazardous chemicals, solvents, substances, waste materials, byproducts and effluents of the wood treatment process so that they were released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:     BNSF denies the allegations of paragraph 4.12.**

4.13   Koppers and BNSF were negligent in failing to warn the Plaintiffs and others in the general public of the toxic and hazardous chemicals, solvents, and substances that they knew, or in the exercise of reasonable ordinary care should have known, were being released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:     BNSF denies the allegations of paragraph 4.13.**

4.14   Koppers and BNSF were negligent in failing to warn Plaintiffs and others in the general public of the dangers and potential bodily harm that could be caused by the toxic and

hazardous chemicals, solvents, and substances that they knew, or in the exercise of reasonable ordinary care should have known, could result from exposure to the toxic and hazardous chemicals, solvents, and substances that were being released and escaping into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:    BNSF denies the allegations of paragraph 4.14.**

4.15   Koppers and BNSF were negligent in creating an unreasonable risk of harm by exposing Plaintiffs to the toxic and hazardous chemicals, solvents, and substances that they were causing to be released into the soil, groundwater, water, and air.

**ANSWER:    BNSF denies the allegations of paragraph 4.15.**

4.16 Koppers and BNSF were negligent in failing to intervene in a timely manner to prevent, contain, monitor, or control the toxic and hazardous chemicals, solvents, and substances that were being released into the soil, groundwater, water, and air, which could have minimized or eliminated Plaintiffs' exposure to the toxic and hazardous chemicals, solvents, and substances.

**ANSWER:    BNSF denies the allegations of paragraph 4.16.**

4.17   Koppers and BNSF were negligent in failing to implement and enforce procedures with regard to industrial hygiene that resulted in increased exposure to the toxic and hazardous chemicals, solvents, and substances that were being used at the wood treatment facility they operated and/or owned.

**ANSWER:    BNSF denies the allegations of paragraph 4.17.**

4.18 The Supplier Defendants, Monsanto, Dow and Vulcan, were negligent in failing to adequately warn and in failing to properly manufacture unadulterated chemicals, and in failing to properly test for contamination.

**ANSWER:     BNSF denies the allegations of paragraph 4.18.**

4.19  As a proximate result of one or more of the above-stated careless and negligent acts or omissions by the Defendants, Koppers, BNSF, Monsanto, Dow, and Vulcan, and each of them, the Plaintiffs and Decedents were injured and sustained damages, resulting in the death of Decedents.

**ANSWER:     BNSF denies the allegations of paragraph 4.19.**

4.20  The above-referenced negligent acts and omissions were a proximate cause of the deaths of Decedents and Plaintiffs' injuries and damages.

**ANSWER:     BNSF denies the allegations of paragraph 4.20.**

**V.**
**TRESPASS**

5.1 Each of the statements and allegations made in Sections 3.1 to 3.33 above are specifically adopted and incorporated by reference herein as if set forth in full.

**ANSWER:     For its answer to paragraph 5.1, BNSF restates and incorporates herein its answers to paragraphs 3.1 to paragraphs 3.33.**

5.2  Koppers and BNSF released toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air that encroached upon and entered into and onto the real property of Plaintiffs, in a way that was physical, intentional and voluntary by Koppers and BNSF.

**ANSWER:     BNSF denies the allegations of paragraph 5.2.**

5.3  Koppers and BNSF intentionally released said toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around Plaintiffs' personal and real property, including their clothing, land, and homes, while knowing to a

substantial degree of certainty that said release would result in an intrusion of said toxic and hazardous chemicals, solvents, and substances on Plaintiffs' persons, personal property, land, and real estate.

**ANSWER:    BNSF denies the allegations of paragraph 5.3.**

5.4 Koppers and BNSF's release of said toxic and hazardous chemicals, solvents, and substances has been a continuing course of conduct on their part through the present.

**ANSWER:    BNSF denies the allegations of paragraph 5.4.**

5.5 Koppers and BNSF wrongfully caused said toxic and hazardous chemicals, solvents, and substances to enter, invade, and intrude upon Plaintiffs' property without the permission or consent of the Plaintiffs.

**ANSWER:    BNSF denies the allegations of paragraph 5.5.**

5.6 Koppers and BNSF's abnormally dangerous activity in releasing said toxic and hazardous chemicals, solvents, and substances has wrongfully interfered, and continues through the present wrongfully to interfere, with Plaintiffs' possessory rights in their property and, specifically, has directly interfered, and continues through the present to interfere directly, with Plaintiffs' ability to use and enjoy their property free of harm to their health and persons.

**ANSWER:    BNSF denies the allegations of paragraph 5.6.**

5.7 As a proximate result of said trespass by Defendants upon Plaintiffs' property and persons, the Plaintiffs and Decedents have sustained personal injury and damages, including mental anguish and physical injury.

**ANSWER:    BNSF denies the allegations of paragraph 5.7.**

5.8 These releases and trespasses, whether the result of negligence, recklessness, or intentional conduct involving abnormally dangerous activity, caused injury to Plaintiffs' right of

possession, resulting in personal injury and damage to Plaintiffs and Decedents, including mental anguish and physical injury.

**ANSWER:  BNSF denies the allegations of paragraph 5.8.**


# VI.
## WILLFUL AND WANTON CONDUCT

6.1 Each of the statements and allegations made in Sections 3.1 to 3.33 above are specifically adopted and incorporated by reference herein as if set forth *in* full.

**ANSWER: For its answer to paragraph 6.1, BNSF restates and incorporates herein its answers to paragraphs 3.1 to paragraphs 3.33.**

6.2 At all times relevant herein, it was the duty of the Defendants, Koppers and BNSF, and each of them, to refrain from willful and wanton conduct which would endanger the safety of others, including the Plaintiffs and Decedents.

**ANSWER:  BNSF denies that paragraph 6.2 properly alleges the duty of care, and denies any remaining allegations of paragraph 6.2.**

6.3 At all times relevant herein, in violation of their above-specified duty, and in breach thereof, the Defendants, Koppers and BNSF, and each of them, intentionally and/or with an utter indifference to or conscious disregard for the safety of others, including the Plaintiffs and Decedents, willfully and wantonly committed one or more of the following acts and/or omissions set forth more fully herein.

**ANSWER:     BNSF denies the allegations of paragraph 6.3.**

6.4  Koppers and BNSF knew that the chemicals, solvents, and substances that they were causing to be released into the soil, groundwater, water, and air in and around their wood

treatment facility were toxic and hazardous. They knew that these chemicals, solvents, and substances would cause grave, sometimes fatal, injuries to the people in and around the facility. Despite their knowledge, Koppers and BNSF consciously disregarded the rights, safety, and welfare of the general public, including Plaintiffs and Decedents, in proceeding to cause and allow these toxic and hazardous chemicals, solvents, and substances to escape from the facility and cause significant and pervasive bodily injuries and deaths to Decedents, Plaintiffs and others.

**ANSWER:    BNSF denies the allegations of paragraph 6.4.**

6.5 This conduct was known and directed by managers and officers of Koppers and BNSF and was a proximate cause of Plaintiffs' injuries and damages and Decedents' deaths.

**ANSWER:    BNSF denies the allegations of paragraph 6.5.**

6.6  As a proximate result of one or more of the above-stated willful and wanton acts and/or omissions of the Defendants, Koppers and BNSF, and each of them, the Plaintiffs and Decedents were injured and sustained damages, resulting in the death of Decedents.

**ANSWER:    BNSF denies the allegations of paragraph 6.6.**

## VII
## STRICT LIABILITY

**The allegations of Count VII are not directed at BNSF, and BNSF therefore makes no answer to paragraph VII.  To the extent any answer to Count VII is required of BNSF, BNSF denies the allegations of Count VII.**

## VIII.
## GENERAL AGENCY ALLEGATIONS

8.1 Whenever in this Complaint it is alleged that a corporate Defendant did any act or omission it is meant that Defendants' officers, agents, servants, employees, joint venturers, partners, joint enterprisers and/or representatives did such act or omission, and that at the time

such act or omission was done, it was done with the full authorization and/or ratification of that Defendant, and was done in the normal and routine course and scope of the employment of Defendants' officers, agents, servants, employees, joint venturers, partners, joint enterprisers or representatives.

> **ANSWER:    The allegations of paragraph 8.1 are a legal conclusion of Plaintiff to which no response is required.  To the extent any answer to paragraph 8.1 is required of BNSF, BNSF denies the allegations of paragraph 8.1.**

## IX.

## FRAUDULENT CONCEALMENT, DISCOVERY RULE, ESTOPPEL, AND TOLLING OF LIMITATIONS

9.1 The accrual of Plaintiffs' causes of action, and the running of any applicable statute of limitations, has been deferred by Defendants' acts of fraudulent concealment. These include, but are not limited to, failing to disclose, and in fact suppressing, information concerning: (a) the injurious nature of their activities; (b) the fact that the toxic and hazardous chemicals, solvents, and substances were being released into the soil, groundwater, water, and air in and around the wood treatment facility; and (c) the harmful effects associated with continued exposure to the toxic and hazardous chemicals, solvents, and substances to the Plaintiffs and others residing near the wood treatment facility. Defendants concealed the results of their health monitoring of certain employees. Defendants also concealed from federal and state governmental agencies their conduct involving the toxic and hazardous chemicals, solvents, and substances. Defendants had actual knowledge of these wrongs, but concealed the wrongs by making misrepresentations and/or by remaining silent when they had a duty to speak. Further, Defendants had a fixed purpose to conceal the wrongs. Plaintiffs and Decedents reasonably relied on Defendants' misrepresentations and/or silence. Plaintiffs brought their claims promptly when they reasonably

knew or should have known based upon a reasonably diligent inquiry that their injuries and damages were caused by the wrongful acts of Defendants.

**ANSWER:    BNSF denies the allegations of paragraph 9.1.**

9.2 Further and alternatively, the accrual of Plaintiffs' causes of action have been deferred because many or all of Plaintiffs' injuries were inherently undiscoverable and not objectively verifiable. Further, Plaintiffs' action is brought under State law for personal injuries, which are caused or contributed to by exposure to a hazardous substance, pollutant, or contaminant released into the environment from a facility.

**ANSWER:    BNSF denies the allegations of paragraph 9.2.**

9.3 Further and alternatively,. with regard to any allegations Defendants may make as to statute of limitations, Plaintiffs plead equitable estoppel. Defendants, with actual or constructive knowledge, have materially misrepresented or concealed facts by contending that their activities were not harmful and injurious. Defendants are now estopped from contending that Plaintiffs knew or should have known that the Defendants' activities were in fact harmful or injurious.

**ANSWER:    BNSF denies the allegations of paragraph 9.3.**

<u>**DAMAGES**</u>

## X.
## PERSONAL INJURY DAMAGES

10.1 Plaintiffs seek compensatory damages arising from their injuries suffered as a result of the wrongful conduct of Defendants. Plaintiffs seek monetary damages from Defendants to compensate them for the following elements of damages:

- past and future medical expenses;

- past and future loss of earning capacity;

- past and future pain and suffering;

 • past and future disability and/or loss of a normal life;

 • past and future mental anguish;

 • past and future physical impairment; and

 • past and future disfigurement.

  **ANSWER:** **BNSF denies that it is liable to Plaintiffs for any damages.**

## XI.
## WRONGFUL DEATH DAMAGES

11.1 On October 31, 2007, various Plaintiffs herein were appointed Special Administrator of the Estate of their Decedents in the Circuit Court of Cook County, Law Division, for the purpose of bringing this lawsuit. (Exhibit 1).

  **ANSWER: BNSF lacks information sufficient to form a belief as to the truth of the allegations of paragraph 11.1.**

11.2  This cause of action arises. under the Illinois Wrongful Death Act, codified at 740 ILCS 180/1, et. seq.

  **ANSWER:** **BNSF denies the allegations of paragraph 11.2.**

11.3 As a result of the deaths of Decedents, Plaintiffs seek monetary damages to compensate them for the following damages. all of which Plaintiffs have suffered and are reasonably certain *to suffer in the* future:

  • pecuniary and personal loss, including the loss of money, benefits, goods, services, and society, including love, affection, care, attention, companionship, comfort, guidance and protection of the decedent. Additionally, the lawful wedded spouses of Decedents have suffered a loss

of consortium as a result of the death of their spouses.

**ANSWER:    BNSF denies that it is liable to Plaintiffs or any other individual for any damages.**

## XII.
## SURVIVAL ACTION BY THE ESTATES OF DECEDENTS

12.1 This cause of action arises under the Survival Act, codified at 755 ILCS 5/27-6, and is brought by the Plaintiffs as the duly appointed Special Administrators of *the* Estate of their Decedents.

**ANSWER:    BNSF denies the allegations of paragraph 12.1.**

12.2 As a result of the deaths of Decedents, their estates seek monetary damages to compensate for the following elements of damages:

• conscious pain and suffering,

• medical expenses of Decedents;

• loss of earnings;

• caretaking expenses of Decedents;

• disfigurement; and

• loss of enjoyment of life and mental anguish.

**ANSWER:    BNSF denies that it is liable to Plaintiffs for any damages.**

## XIII.
## PUNITIVE DAMAGES

13.1  Because Defendants are guilty of willful and wanton conduct, they should have punitive damages assessed against them in an amount deemed appropriate by the jury.

**ANSWER:    BNSF denies the allegations of paragraph 13.1 and further denies that**

**Plaintiffs have provided sufficient evidentiary support for leave to plead punitive damages.**

## XIV.

### POST-JUDGMENT INTEREST

14.1  Plaintiffs seek recovery of post judgment interest as permitted by law.

**ANSWER:    BNSF denies that it is liable to Plaintiffs for any damages.**


## XV.

### RESERVATION OF RIGHTS

15.1 Plaintiffs reserve the right to prove the amount of damages at trial and to amend their Complaint to add additional claims upon further discovery and as their investigation continues.

**ANSWER:    BNSF states that paragraph 15.1 requires no answer, but to the extent any answer is required, BNSF denies the allegations of paragraph 15.1.**


## XVI.
### REQUEST FOR JURY TRIAL

16.1 Pursuant to 735 ILCS 512-1105 of the ILLINOIS CODE OF CIVIL PROCEDURE, Plaintiffs request a trial by jury.

**ANSWER:    BNSF states that paragraph 16.1 requires no answer.**


AFFIRMATIVE DEFENSES

A.    Further answering Plaintiff's Complaint, and as a separate and affirmative defense, BNSF states that there was a failure on the part of Plaintiffs and/or Plaintiffs' decedent to exercise that degree of care which would have been exercised by an ordinarily prudent person

under the same or similar circumstances, and such failure was a proximate cause and/or sole proximate cause and/or a producing cause and/or sole producing cause and/or a cause in whole or in part of the incidents made the basis of this suit and the resulting injuries and damages allegedly sustained by Plaintiffs and/or Plaintiffs' decedent.

B.      Further answering Plaintiffs' Complaint, and as a separate and affirmative defense, BNSF states that Plaintiffs' and/or Plaintiffs' decedent's alleged injury, loss or damage, if any, was not the result of any negligence or carelessness on the part of BNSF, but was due to carelessness and negligence on the part of the Plaintiffs and/or Plaintiffs' decedent, and such carelessness and negligence on Plaintiffs' and/or Plaintiffs' decedent's part was the cause, in whole or in part, of any and all alleged injury, loss or damage for which the Plaintiffs complain.

C.      Further answering Plaintiffs' Complaint, and as a separate and affirmative defense, BNSF states that Plaintiffs' and/or Plaintiffs' decedent's alleged injury, loss or damage, if any, was caused solely by the actions of the Plaintiffs and/or Plaintiffs' decedent, such that Plaintiffs' cause of action should be dismissed.

D.      Further answering Plaintiffs' Complaint, and as a separate and affirmative defense, BNSF states that Plaintiffs' claims are barred by applicable Statutes of Limitations.

E.      Further answering Plaintiffs', and as a separate and affirmative defense, BNSF states that Plaintiffs' Complaint fails to state a claim or claims or any facts upon which relief can be granted and should therefore be dismissed.

F.      Further answering Plaintiffs' Complaint, and as a separate and affirmative defense, BNSF states that if Plaintiffs and/or Plaintiffs' decedent  sustained injuries as alleged, which BNSF specifically denies, then such injuries and damages were caused or contributed to by the carelessness, negligence or fault of third parties not under the control of BNSF.

G.      Further answering Plaintiffs' Complaint, and as a separate and affirmative

defense, BNSF states that Plaintiffs and/or Plaintiff's decedent has failed to act reasonably to

mitigate his alleged damages and injuries.

H.      Plaintiffs fail to meet the standards required in its pleadings to properly plead a

request for punitive damages.

I.      BNSF hereby reserves the right to rely on any further affirmative defenses which

may become available or apparent during the course of discovery and reserves the right to amend

its Answer to assert any such defense.

Wherefore, having fully answered said Complaint, Defendant, BNSF RAILWAY

COMPANY, demands judgment in its favor against Plaintiffs, and that it be awarded its costs

herein and for such other just and equitable relief as the Court deems appropriate.

                                                BNSF RAILWAY COMPANY

                                                By: /s/ Daniel J. Mohan
                                                      One of Its Attorneys


                                                Daniel J. Mohan (Attorney # 55753)
                                                Sean Sullivan
                                                Daley & Mohan, PC
                                                150 N. Wacker Drive
                                                Chicago, Illinois 60606
                                                Telephone: (312) 422-9999
                                                Facsimile: (312) 201-9368

OF COUNSEL:

Douglas W. Poole
McLeod, Alexander, Powel & Apffel
A Professional Corporation
802 Rosenberg; P.O. Box 629
Galveston, Texas 77553
Telephone: (409) 763-2481
Facsimile: (409) 762-1155