**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VIRDA BELL BULLARD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6883 |
| | ) | |
| BURLINGTON NORTHERN SANTA | ) | Judge Matthew F. Kennelly |
| FE RAILWAY COMPANY, et al., | ) | |
| | ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) | |

**DEFENDANT KOPPERS INC.'S ANSWER AND AFFIRMATIVE DEFENSES**

Defendant, Koppers Inc. ("Koppers"), by its attorneys, Wildman, Harrold, Allen & Dixon

LLP, for its Answer and Affirmative Defenses to Plaintiffs' Complaint at Law, states as follows:

**PARTIES**

1.1     Plaintiffs are residents or former residents of Somerville, Burleson County, Texas, and are citizens of Illinois, California, Arizona, Louisiana and Texas.  Plaintiffs sue individually and as Representatives of the Estates of the respective Decedents as described in Attachment "A".  Each of the Plaintiffs, or each of the Decedents or minor children upon whose behalf the Plaintiffs appear, occupied, owned, or has been assigned rights to any cause of action that could be asserted by previous owners of property in the Somerville area at the time during which the injury alleged herein occurred.

**ANSWER:**     Koppers lacks sufficient information to admit or deny the allegations set forth in

this Paragraph.

1.2     Defendant Burlington Northern and Santa Fe Railway Corporation ("BNSF") is a Delaware corporation formed by the merger of the Burlington Northern and the Atchison, Topeka and Santa Fe Railway Company ("ATSF") railroads.  At the time of the incidents made the basis of this suit the ATSF railroad was a Delaware corporation with its principal place of business in Chicago, Cook County, Illinois.  BNSF may be served through its registered agent, CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

**ANSWER:**     Koppers lacks sufficient information to admit or deny the allegations set forth in

this Paragraph.

1.3     Defendant Koppers Industries, Inc. ("Koppers") is a Pennsylvania corporation that conducts business in Cook County from which it derives substantial profits. Koppers may be served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, IL 62703.

**ANSWER:**     Koppers admits that it is a Pennsylvania corporation with a registered agent, Illinois Corporation Service, located in Illinois. Koppers further admits that it owns and operates a facility located in Cook County. Koppers denies the remaining allegations set forth in this Paragraph.

1.4     Defendant Monsanto Company (Monsanto) is a Delaware corporation with its principal place of business in St. Louis, Missouri. Defendant Monsanto does significant business in Cook County, Illinois. Monsanto may be served through its registered agent, Illinois corporation Service, 801 Adlai Stevenson Drive, Springfield, IL 62703.

**ANSWER:**     Koppers lacks sufficient information to admit or deny the allegations set forth in this Paragraph.

1.5     Defendant The Dow Chemical Company (Dow) is a Delaware corporation with its principal place of business in Midland, Michigan. Defendant Dow does significant business in Cook County, Illinois. Dow may be served through its registered agent, CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

**ANSWER:**     Koppers lacks sufficient information to admit or deny the allegations set forth in this Paragraph.

1.6     Defendant Vulcan Materials Company (Vulcan) is a New Jersey corporation with its principal place of business in Birmingham, Alabama. Defendant Vulcan does significant business in Cook County, Illinois. Vulcan may be served through its registered agent, Prentice Hall Corporation, 33 North LaSalle Street, Chicago, IL 60602.

**ANSWER:**     Koppers lacks sufficient information to admit or deny the allegations set forth in this Paragraph.

### JURISDICTION AND VENUE

2.1     Jurisdiction is appropriate in this Court because this is a lawsuit seeking damages in excess of the minimum jurisdictional limits of the Circuit Court of Cook County, Illinois.

**ANSWER:**    The allegations set forth in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Koppers denies that jurisdiction is appropriate in the Circuit Court of Cook County, Illinois.

2.2    The Court has personal jurisdiction over these Defendants because they have the requisite contacts with Illinois, both specific and general, for the exercise of jurisdiction and such exercise of jurisdiction does not offend the traditional notions of fair play and substantial justice.

**ANSWER:**    The allegations set forth in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Koppers denies the allegations set forth in this Paragraph.

2.3    Plaintiffs are not asserting any claims or causes of action based on federal laws, treaties, or the United States Constitution, and there is not complete diversity of citizenship between all Plaintiffs and all Defendants so that even though many of the claims being asserted herein have a value in excess of $75,000, a federal court does not have jurisdiction over this action, and removal would be improper.

**ANSWER:**    Koppers admits that Plaintiffs do not purport to assert any claims directly premised upon federal law.  The remaining allegations set forth in this Paragraph constitute legal conclusions to which no response is required.  To the extent a response is required, Koppers denies those allegations, including Plaintiffs' contention that a federal court does not have jurisdiction over this action.

2.4    Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 because a substantial part of the events or omissions giving cause to the claims occurred in Cook County, Illinois.  Plaintiffs' Complaint does not assert an action for recovery of damages to real property.

**ANSWER:**    Koppers admits that Plaintiffs do not purport to assert any claims for damage to real property.  The remaining allegations set forth in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Koppers denies those allegations.

**FACTUAL BASIS OF PLAINTIFFS' CLAIMS**

3.1    Plaintiffs are residents or former residents of Somerville, Burleson County, Texas. Plaintiffs are victims of cancer and other bodily injuries, as well as other damage, arising out of exposure to toxic chemicals from a wood treatment facility located in Burleson County. This suit arises out of the operations and activities of the Defendants with regard to the use and lack of containment of toxic chemicals used at the facility, which have caused them injuries and damages. Upon information and belief, many if not all of the chemicals used in the plant were manufactured, mixed and/or consolidated at the Koppers Creosote facility in Cook County, Illinois.

**ANSWER:**    Koppers lacks sufficient information to admit or deny the allegations set forth in

the first sentence of this Paragraph. Koppers admits that it has used at the Somerville facility

creosote preservatives which were delivered from a separate facility located in Cook County.

Koppers denies the remaining allegations set forth in this Paragraph.

3.2    The Koppers, Inc., Stickney Plant, 3900 S. Laramie Avenue, Cicero, Illinois was engineered and constructed in 1920-1921. The plant was constructed for the manufacture of creosote and other chemicals to be used in railroad products. The creosote was manufactured and sold to the railroad defendants, and shipped from Cook County to plants in various locations such as the Somerville Texas Plant described below.

**ANSWER:**    Koppers admits that it currently owns and operates a facility located in Stickney,

Illinois, where it manufactures creosote. Koppers further admits that it has delivered creosote

from the Stickney facility to the Somerville facility. Koppers denies the remaining allegations

set forth in this Paragraph.

3.3    The Somerville facility, at which the Railroad Defendants operated and Koppers now operates a wood treatment plant, occupies a 200-acre tract of land on the northeastern edge of the city of Somerville in Burleson County, Texas. The plant began production in its present location in February 1906 and was owned by a subsidiary of the AT&SF Railroad. On December 2, 1912, the plant's name was changed to Santa Fe Tie and Lumber Preserving Company. On June 2, 1950, the Santa Fe Railway (AT & SF) absorbed this subsidiary. On March 28, 1995, AT & SF sold the Somerville wood treatment facility to Koppers. AT & SF merged with and into the Defendant BNSF on December 31, 1996.

**ANSWER:**    Koppers admits that it currently owns and operates a wood treatment facility in

Somerville, Texas, but Koppers denies that said facility occupies a 200-acre tract of land.

Koppers further admits that it purchased the Somerville facility on or about March 21, 1995, but denies that it conducted any wood treatment operations at the Somerville facility prior said date. Koppers lacks sufficient information to admit or deny the remaining allegations set forth in this Paragraph.

3.4     BNSF has represented to the Texas Natural Resource Conservation Commission ("TNRCC") that it assumes responsibility for the historic contamination of the Somerville site.

**ANSWER:**     Koppers lacks sufficient information to admit or deny the allegations set forth in this Paragraph.

3.5     From its inception in the late 1800's and continuing today, the wood treatment facility has and does today manufacture railroad cross ties, bridge timbers, poles, piling, and other wood products all of which are treated on site with one or more pesticides and wood preservatives including derivatives of coal tar creosote and chlorinated pesticide compounds including pentachlorophenol (PCP).  PCP is toxic to the environment and man, and exposure to it causes damage to the liver, kidneys, blood, and nervous system, and it is a human carcinogen.

**ANSWER:**     Koppers admits that it has used creosote for the purpose of treating wood products at the Somerville facility since its purchase of said facility on or about March 21, 1995. However, Koppers denies that it ever used pentachlorophenol at the Somerville facility.  Koppers denies the allegations set forth in the last sentence of this Paragraph.  Koppers lacks sufficient information to admit or deny the remaining allegations set forth in this Paragraph.

3.6     The Somerville site wood manufacturing process consists of vapor drying the various shaped wood pieces followed by pressure treating the wood with creosote/oil mixtures as well as certain pesticidal extenders and chlorinated pesticides including the aforesaid PCP.  The resulting treated wood products are used in the railroad industry.

**ANSWER:**     Denied.

3.7     Coal tars are by-products of the carbonization of coal to produce coke and/or natural gas.  Coal tars are complex combinations of polycyclic aromatic hydrocarbons (PAHs), phenols, heterocyclic oxygen, sulfur, and nitrogen compounds.  Coal tar creosotes are distillation products of coal tar.

**ANSWER:**      Koppers admits the allegations set forth in this Paragraph, but denies that is uses coal tar as part of its wood treatment operations at the Somerville facility.

3.8      Coal tar creosotes consist of aromatic hydrocarbons, anthracene, naphthalene, and phenanthrene derivatives.  At least 75 per cent of coal tar creosote mixture is made up of PAHs. PAHs are toxic to the environment and man and are human carcinogens.

**ANSWER:**      Koppers admits the allegations set forth in the first two sentences of this Paragraph, but denies that creosote is a "mixture."  Koppers denies the remaining allegations set forth in this Paragraph.

3.9      The composition of the creosote mixture is dependent on the sources and preparation parameters of the coal tar, and as a result, the creosote components are rarely consistent in their type and concentration.  An example of the composition variability among creosote samples was recently presented by *Weyand et al.* (1991).  In that study, the concentrations of several PAHs were analyzed in four coal tars.  All of the PAHs identified exhibited a 2-fold to nearly 20-fold differences in concentration among the four samples.

**ANSWER:**      Koppers lacks sufficient information to admit or deny the allegations regarding the Weyand article because an incomplete citation was given and a copy of the article was not provided.  Koppers denies the remaining allegations set forth in this Paragraph.

3.10      The coal tar creosote mixtures at issue here represent 100 years of different formulations manufactured in Chicago, Illinois and sent to the Somerville site.  These formulations contained from time to time 199 identifiable PAHs including benzo(a)pyrenes and dibenzofurans.  Coal tar creosote (creosote) is a soup of hundreds, if not thousands, of compounds most of which are toxic to the environment and man.

**ANSWER:**      Denied.

3.11      To this creosote soup, extenders including, but not limited to, PCP are added to create the "creosote" utilized in the pressure treatment of wood at facilities like Somerville.

**ANSWER:**      Denied.

3.12      PCP is a chlorinated compound used as a pesticide in the treatment of specialty wood products such as poles and railroad ties and other applications where wood comes into contact with soil making it vulnerable to insect attack.  Often in the past PCP was used in the creosote treatment of specialty products.  On information and belief PCP compounds were used in the treatment of specialty wood products at the Somerville site at relevant times.

**ANSWER:**     Denied.

3.13     During the manufacturing process of PCP, dioxins are formed as an unwanted by-product of production.  Dioxins are one of the most carcinogenic substances known to man. Further, given the chemical make-up of PCP, it is a likely generator of dioxins and furans when subjected to heat and pressure of the sort utilized in the pressure treatment of specialty wood products at the Somerville facility.

**ANSWER:**     Denied.

3.14     Because of the availability of benzene in coal tar creosote, a source of chlorine in an environment of heat and pressure together with oxygen present the opportunity for a variety of dioxins and furans to form during the tie treating process.

**ANSWER:**     Denied.

3.15     Creosote and its constituent compounds, PCP, dioxins and furans, are toxic and harmful to the environment and man.  For purposes of this Complaint, all of these toxic and hazardous materials will often be referred to collectively as the "chemicals, solvents, and substances" and sometimes as the "products in question."

**ANSWER:**     Denied.

3.16     Defendants Monsanto, Dow and Vulcan provided chemicals to both the Cicero Koppers facility in Cook County, Illinois and the Somerville facility.  Some, if not all, of the chemicals provided were unreasonably dangerous, toxic, and/or contaminated with unknown and unanticipated adulterating constituents.  The supplier defendants failed to warn of these contaminants and the unreasonably dangerous nature of their products, and/or failed to give proper instructions for their safe handling and use.  Furthermore, these defendants negligently manufactured these chemicals in a way that allowed the formation or contamination of the products with the contaminants.

**ANSWER:**     Denied.

3.17     During the operative time period from 1905 to present, BNSF and Koppers operated the wood treatment facility at Somerville.  That process encompassed the use of large metal cylinders into which shaped wood products would be placed.  Under pressure and heat, creosote and other pesticides would infuse the wood and displace water thus impregnating the railroad ties and other products with the aforesaid pesticides.

**ANSWER:**     Koppers admits that it has conducted wood treatment operations at the Somerville

facility since on or about March 21, 1995.  Koppers further admits that those operations have

included the use of creosote, but denies that it has used "other pesticides" for wood treatment.

To the extent that the allegations set forth in this Paragraph relate to operations at the Somerville facility prior to March 21, 1995, Koppers lacks sufficient information to admit or deny those allegations.

3.18    Currently, the Somerville plant utilizes four cylinders, which are 8 feet in diameter and 155 feet long, into which specialty wood is placed for pressure treatment.

**ANSWER:**    Admitted.

3.19    Because of the magnitude of the treatment operation at Somerville, enormous quantities of creosote and other pesticides have in the past and currently are being utilized on a daily basis.  BNSF and Koppers have caused the release of these toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around the wood treatment facility.

**ANSWER:**    Denied.

3.20    Plaintiffs have been exposed and continue to be exposed to the toxic chemicals from the Somerville facility used to treat the wood products.  At some point in time unknown to Plaintiffs, these chemicals began to contaminate their bodies, property and homes.

**ANSWER:**    Denied.

3.21    Due to the size of the operation, extensive stacks of treated railroad ties and other treated products are, and at all relevant times in the past have been, placed on the ground for the purpose of "curing out."  Volatilized molecules of the aforesaid toxic compounds are released as gas from this process and are carried by the prevailing winds over the Somerville area.

**ANSWER:**    Denied.

3.22    Creosote and other pesticides drip from the curing treated wood products and leech into the soil causing contamination of the soil, surface water and groundwater including the aquifers underlying the Somerville area.

**ANSWER:**    Denied.

3.23    Independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs inside the homes of Somerville residents.  Likewise, independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs in the residential soil of the Somerville area.  The nature and make-up of the aforesaid compounds establish that the Somerville site is the generator of these compounds.

**ANSWER:**     Koppers asserts that PAHs, dioxins and furans are ubiquitous.  Koppers is aware of certain testing that has been undertaken in homes of Somerville residents and residential soil. Koppers denies that the PAHs, dioxins and furans detected were caused by plant operations, and it further denies that the PAHs, dioxins and furans were found at concentrations capable of causing injury.  Koppers denies the remaining allegations set forth in this Paragraph.

3.24    Governmental mandated testing of soil, sediment, surface and groundwater on the Somerville site has verified the presence of the aforesaid toxic and dangerous compounds.

**ANSWER:**     Koppers admits that testing reported to the government disclosed the presence of certain chemicals at and immediately below the Somerville facility.  Koppers denies that Plaintiffs were exposed to said chemicals and denies the remaining allegations set forth in this Paragraph.

3.25    Governmental entities have documented the contamination of the aquifer underlying the Somerville area.  Governmental entities have also documented soil contamination at the Somerville site.

**ANSWER:**     Koppers admits that the Texas Commission on Environmental Quality ("TCEQ"), formerly known as the Texas Natural Resource Conservation Commission ("TNRCC"), has in the past documented the presence of certain chemicals within some soil and groundwater at the Somerville facility in accordance with the on-going RCRA Facility Investigation.  Koppers denies that Plaintiffs were exposed to said chemicals.  Koppers denies the remaining allegations set forth in this Paragraph.

3.26    Surface water run-off from the Somerville site has carried contaminated sediment to the waters of Thompson Creek and other natural drainage features resulting in off site contamination of the Somerville area.

**ANSWER:**     Denied.

3.27    Natural wind patterns have dispersed throughout the air in Somerville toxic gasses created by the Somerville site.

**ANSWER:**    Denied.

     3.28    Toxic contamination of the clothing of plant workers has caused harmful chemicals to contaminate the inside of their homes where family members and loved ones have been secondarily exposed to such contaminants.

**ANSWER:**    Denied.

     3.29    Plaintiffs have experienced one or more of the following during the relevant time periods:

     a.    Intermittent flooding of their property with surface water running from the contaminated Koppers' railroad tie treatment facility.

     b.    Intermittent flooding of their property from Thompson Creek and other natural drains that receive contaminated surface water flowing from the Somerville railroad tie treatment facility.

     c.    Treated wood routinely provided to Plaintiffs by BNSF and Koppers as firewood in the homes of the Plaintiffs and in some cases used as cooking fuel.

     d.    Treated wood ties from time to time would be placed on or near the property of one or more of the Plaintiffs for storage prior to their being sold or removed by BNSF and Koppers for some other purpose.

     e.    Groundwater lying under the real estate of Plaintiffs has been and remains contaminated with the chemicals used by BNSF and Koppers as a consequence of the chemicals being spilled and otherwise placed on the soil of the treatment facility and otherwise placed in leaking containment ponds such that the groundwater and the aquifers underlying the Somerville area are now contaminated.

     f.    One or more of the Plaintiffs has in the past experienced "oily tasting" water drawn from fresh water wells in the Somerville area.

     g.    One or more of the Plaintiffs' houses and real estate have become contaminated with dioxins/furans, PAHs and other toxic molecules released from the wood treatment facility.

     h.    Noxious odors emanating from the wood treating facility.

     i.    Poisonous dusts released from the wood treatment facility that settle from the air onto their respective properties in the Somerville area.

**ANSWER:**    Koppers denies the allegations set forth in this Paragraph, including those

allegations set forth in sub-parts (a) through (i).

3.30    PCP-containing products were routinely stored outside at the facility without cover or protection, allowing the chemicals to disperse throughout the neighborhood, contaminating Plaintiffs' homes, properties, and persons.

**ANSWER:**    Denied.

3.31    During the relevant time in question, BNSF and Koppers improperly disposed of unwanted chemicals and contaminated dirt by dumping the refuse outside at the facility, contaminating Plaintiffs' homes, properties, and persons.

**ANSWER:**    Denied.

3.32    As a consequence of the foregoing activities of the Defendants, but not limited to such, toxic substances including PAHs, dioxins/furans, arsenic and other dangerous and deadly toxins were at all relevant times generated and released from the Somerville site.

**ANSWER:**    Denied.

3.33    As a result of exposure to the toxic and hazardous chemicals, solvents, and substances, Plaintiffs have sustained bodily injuries, including cancer.

**ANSWER:**    Denied.

## CAUSES OF ACTION

### NEGLIGENCE

4.1    Each of the statements and allegations made in Sections 3.1 to 3.33 above are specifically adopted and incorporated by reference herein as if set forth in full.

**ANSWER:**    Koppers repeats and realleges its Answers to Paragraphs 3.1 through 3.33 as its

Answer to this Paragraph as though fully set forth herein.

4.2    Defendants Monsanto Company, Dow Chemical Company, and Vulcan Materials Company were in the business of designing, manufacturing, selling and/or distributing the chemicals and placed said chemicals in the stream of commerce.  The chemicals were mixed with the creosote and shipped via rail to the Cicero Koppers facility in Cook County, Illinois and the Somerville, Texas facility.

**ANSWER:**    Koppers lacks sufficient information to admit or deny the allegations set forth in the first sentence of this Paragraph.  Koppers denies the allegations set forth in the second sentence of this Paragraph.

4.3    At the time the chemicals left the control of Monsanto, Dow and Vulcan, the chemicals were in a defective condition which rendered the chemicals unreasonably dangerous.

**ANSWER:**    Denied.

4.4    This unreasonably dangerous, defective, and unsafe condition of the chemicals continued up to and including the time of the exposure.

**ANSWER:**    Denied.

4.5    At all times relevant herein, it was the duty of the Defendants, Monsanto, Dow, and Vulcan, and each of them, to use reasonable care in designing, manufacturing, selling, and/or distributing the chemicals.

**ANSWER:**    The allegations set forth in this Paragraph are directed to parties other than Koppers and constitute a legal conclusion to which no response is required.  Answering further, Koppers states that neither Monsanto, Dow nor Vulcan have sold or otherwise distributed any chemicals to the Somerville facility since Koppers purchased said facility on or about March 21, 1995.

4.6    At all times relevant herein, it was the duty of the Defendants, Koppers and BNSF, and each of them, to use reasonable care in handling, releasing, and disposing of the chemicals.

**ANSWER:**    The allegations set forth in this Paragraph constitute a legal conclusion to which no response is required.  To the extent a response is required, Koppers admits all duties imposed by law, but denies that it breached any such duties.

4.7    Each and every defendant committed various acts of omission and commission that constitute negligence and were a proximate cause of the injuries and damages of Plaintiffs.

**ANSWER:**    Denied.

4.8    At all times relevant herein, in violation of their above-specified duty, and in breach thereof, the Defendants, Koppers, BNSF, Monsanto, Dow, and Vulcan, and each of them, were guilty of one or more of the careless and negligent acts or omissions set forth more fully herein.

**ANSWER:**    Denied.

4.9    Koppers and BNSF were negligent in allowing and failing to prevent the release of toxic and hazardous chemicals, solvent, and substances into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:**    Denied.

4.10    Koppers and BNSF were negligent in failing to monitor their procedures and receipts of toxic and hazardous chemicals, solvents, and substances so that they were released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:**    Denied.

4.11    Koppers and BNSF were negligent in failing to monitor the types and amounts of toxic and hazardous chemicals, solvents, and substances that were being released and that escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.  Alternatively, Koppers and BNSF were negligent in the manner in which they undertook to monitor the types and amounts of toxic and hazardous chemicals, solvents, and substances that were being released and that escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned, and such conduct increased the risk of harm and/or caused harm because it was relied upon by others to be performed with the appropriate standard of care.

**ANSWER:**    Denied.

4.12    Koppers and BNSF were negligent in improperly disposing of and failing to properly dispose of toxic and hazardous chemicals, solvents, substances, waste materials, byproducts and effluents of the wood treatment process so that they were released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:**    Denied.

4.13    Koppers and BNSF were negligent in failing to warn the Plaintiffs and others in the general public of the toxic and hazardous chemicals, solvents, and substances that they knew, or in the exercise of reasonable ordinary care should have known, were being released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:**    Denied.

    4.14    Koppers and BNSF were negligent in failing to warn Plaintiffs and others in the general public of the dangers and potential bodily harm that could be caused by the toxic and hazardous chemicals, solvents, and substances that they knew, or in the exercise of reasonable ordinary care should have known, could result from exposure to the toxic and hazardous chemicals, solvents, and substances that were being released and escaping into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

**ANSWER:**    Denied.

    4.15    Koppers and BNSF were negligent in creating an unreasonable risk of harm by exposing Plaintiffs to the toxic and hazardous chemicals, solvents, and substances that they were causing to be released into the soil, groundwater, water, and air.

**ANSWER:**    Denied.

    4.16    Koppers and BNSF were negligent in failing to intervene in a timely manner to prevent, contain, monitor, or control the toxic and hazardous chemicals, solvents, and substances that were being released into the soil, groundwater, water, and air, which could have minimized or eliminated Plaintiffs' exposure to the toxic and hazardous chemicals, solvents, and substances.

**ANSWER:**    Denied.

    4.17    Koppers and BNSF were negligent in failing to implement and enforce procedures with regard to industrial hygiene that resulted in increased exposure to the toxic and hazardous chemicals, solvents, and substances that were being used at the wood treatment facility they operated and/or owned.

**ANSWER:**    Denied.

    4.18    The Supplier Defendants, Monsanto, Dow and Vulcan, were negligent in failing to adequately warn and in failing to properly manufacture unadulterated chemicals, and in failing to properly test for contamination.

**ANSWER:**    The allegations set forth in this Paragraph are not directed at Koppers, and therefore, it makes no response thereto.  Answering further, Koppers states that neither Monsanto, Dow nor Vulcan have sold or otherwise distributed any chemicals to the Somerville facility since Koppers purchased said facility on or about March 21, 1995.

    4.19    As a proximate result of one or more of the above-stated careless and negligent acts or omissions by the Defendants, Koppers, BNSF, Monsanto, Dow, and Vulcan, and each of

them, the Plaintiffs and Decedents were injured and sustained damages, resulting in the death of Decedents.

**ANSWER:**    Denied.

4.20    The above-referenced negligent acts and omissions were a proximate cause of the deaths of Decedents and Plaintiffs' injuries and damages.

**ANSWER:**    Denied.

TRESPASS

5.1    Each of the statements and allegations made in Sections 3.1 to 3.33 above are specifically adopted and incorporated by reference herein as if set forth in full.

**ANSWER:**    Koppers repeats and realleges its Answers to Paragraphs 3.1 through 3.33 as its

Answer to this Paragraph as though fully set forth herein.

5.2    Koppers and BNSF released toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, and air that encroached upon and entered into and onto the real property of Plaintiffs, in a way that was physical, intentional and voluntary by Koppers and BNSF.

**ANSWER:**    Denied.

5.3    Koppers and BNSF intentionally released said toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around Plaintiffs' personal and real property, including their clothing, land, and homes, while knowing to a substantial degree of certainty that said release would result in an intrusion of said toxic and hazardous chemicals, solvents, and substances on Plaintiffs' persons, personal property, land, and real estate.

**ANSWER:**    Denied.

5.4    Koppers and BNSF's release of said toxic and hazardous chemicals, solvents, and substances has been a continuing course of conduct on their part through the present.

**ANSWER:**    Denied.

5.5    Koppers and BNSF wrongfully caused said toxic and hazardous chemicals, solvents, and substances to enter, invade, and intrude upon Plaintiffs' property without the permission or consent of the Plaintiffs.

**ANSWER:**    Denied.

5.6     Koppers and BNSF's abnormally dangerous activity in releasing said toxic and hazardous chemicals, solvents, and substances has wrongfully interfered, and continues through the present wrongfully to interfere, with Plaintiffs' possessory rights in their property and, specifically, has directly interfered, and continues through the present to interfere directly, with Plaintiffs' ability to use and enjoy their property free of harm to their health and persons.

**ANSWER:**     Denied.

5.7     As a proximate result of said trespass by Defendants upon Plaintiffs' property and persons, the Plaintiffs and Decedents have sustained personal injury and damages, including mental anguish and physical injury.

**ANSWER:**     Denied.

5.8     These releases and trespasses, whether the result of negligence, recklessness, or intentional conduct involving abnormally dangerous activity, caused injury to Plaintiffs' right of possession, resulting in personal injury and damage to Plaintiffs and Decedents, including mental anguish and physical injury.

**ANSWER:**     Denied.

### WILLFUL AND WANTON CONDUCT

6.1     Each of the statements and allegations made in Sections 3.1 to 3.33 above are specifically adopted and incorporated by reference herein as if set forth in full.

**ANSWER:**     Koppers repeats and realleges its Answers to Paragraphs 3.1 through 3.33 as its

Answer to this Paragraph as though fully set forth herein.

6.2     At all times relevant herein, it was the duty of the Defendants, Koppers and BNSF, and each of them, to refrain from willful and wanton conduct which would endanger the safety of others, including the Plaintiffs and Decedents.

**ANSWER:**     The allegations set forth in this Paragraph constitute a legal conclusion to which

no response is required.  To the extent a response is required, Koppers admits all duties imposed

by law, but denies that it breached any such duties.

6.3     At all times relevant herein, in violation of their above-specified duty, and in breach thereof, the Defendants, Koppers and BNSF, and each of them, intentionally and/or with an utter indifference to or conscious disregard for the safety of others, including the Plaintiffs and Decedents, willfully and wantonly committed one or more of the following acts and/or omissions set forth more fully herein.

**ANSWER**:     Denied.

6.4     Koppers and BNSF knew that the chemicals, solvents, and substances that they were causing to be released into the soil, groundwater, water, and air in and around their wood treatment facility were toxic and hazardous.  They knew that these chemicals, solvents, and substances would cause grave, sometimes fatal, injuries to the people in and around the facility. Despite their knowledge, Koppers and BNSF consciously disregarded the rights, safety, and welfare of the general public, including Plaintiffs and Decedents, in proceeding to cause and allow these toxic and hazardous chemicals, solvents, and substances to escape from the facility and cause significant and pervasive bodily injuries and deaths to decedents, Plaintiffs and others.

**ANSWER**:     Denied.

6.5     This conduct was known and directed by managers and officers of Koppers and BNSF and was a proximate cause of Plaintiffs' injuries and damages and Decedents' deaths.

**ANSWER**:     Denied.

6.6     As a proximate result of one or more of the above-stated willfull and wanton acts and/or omissions of the Defendants, Koppers and BNSF, and each of them, the Plaintiffs and Decedents were injured and sustained damages, resulting in the death of Decedents.

**ANSWER**:     Denied.

**STRICT LIABILITY**

7.1     Each of the statements and allegations made in Sections 3.1 to Section 3.33 are specifically adopted and incorporated by reference herein as if set forth in full.

**ANSWER**:     Koppers repeats and realleges its Answers to Paragraphs 3.1 through 3.33 as its

Answer to this Paragraph as though fully set forth herein.

7.2     Defendants Monsanto Company, Dow Chemical Company, and Vulcan Materials Company were in the business of designing, manufacturing, selling and/or distributing the chemicals and placed said chemicals in the stream of commerce.  The chemicals were mixed with the creosote and shipped via rail to the Cicero Koppers facility in Cook County, Illinois and the Somerville, Texas facility.

**ANSWER**:     The allegations set forth in this Paragraph are not directed at Koppers, and

therefore, it makes no response thereto.  Answering further, Koppers states that neither

Monsanto, Dow nor Vulcan have sold or otherwise distributed any chemicals to the Somerville

facility since Koppers purchased said facility on or about March 21, 1995.

7.3    At the time the chemicals left the control of Monsanto, Dow and Vulcan, the chemicals were in a defective condition which rendered the chemicals unreasonably dangerous in one or more of the following ways:

(a)    Long term exposure to the chemicals posed a danger to humans and the environment;

(b)    The chemicals contained hazardous propensities and characteristics that, when exposed to long term, caused cancer and other health problems.

**ANSWER:**    The allegations set forth in this Paragraph are not directed at Koppers, and therefore, it makes no response thereto.    Answering further, Koppers states that neither Monsanto, Dow nor Vulcan have sold or otherwise distributed any chemicals to the Somerville facility since Koppers purchased said facility on or about March 21, 1995.

7.4    Plaintiffs and Decedents have been exposed and Plaintiffs continue to be exposed to the toxic chemicals from the Somerville facility.    At some point in time unknown to Plaintiffs, these chemicals began to contaminate their bodies, property and homes.

**ANSWER:**    Denied.

7.5    Due to the size of the operation, extensive stacks of treated railroad ties and other treated products were and at relevant times in the past have been, placed on the ground for the purpose of "curing out".    Volatized molecules of the aforesaid toxic compounds are released as gas from this process and are carried by the prevailing winds over the Somerville area.

**ANSWER:**    Denied.

7.6    Creosote and other pesticides drip from the curing treated wood products and leech into the soil causing contamination of the soil, surface and groundwater including the aquifers underlying the Somerville area.

**ANSWER:**    Denied.

7.7    The unreasonably dangerous, defective, and unsafe usage of the chemicals continued up to and including the time of the exposure.

**ANSWER:**    Denied.

7.8    As a proximate result of the exposure, unreasonably dangerous, defective, and unsafe condition of the chemicals, Plaintiffs and Decedents were injured and suffered damages, resulting in the death of Decedents.

**ANSWER**:     Denied.

7.9     Defendants Monsanto, Dow and Vulcan knew or reasonably should have known that the chemicals they sold and shipped to the Koppers Cicero Illinois facility and Somerville, Texas facility were unreasonably dangerous and failed to warn of their dangerous propensity.

**ANSWER**:     The allegations set forth in this Paragraph are not directed at Koppers, and

therefore, it makes no response thereto.    Answering further, Koppers states that neither

Monsanto, Dow nor Vulcan have sold or otherwise distributed any chemicals to the Somerville

facility since Koppers purchased said facility on or about March 21, 1995.

GENERAL AGENCY ALLEGATIONS

8.1     Whenever in this Complaint it is alleged that a corporate Defendant did any act or omission it is meant that Defendants' officers, agents, servants, employees, joint venturers, partners, joint enterprisers and/or representatives did such act or omission, and that at the time such act or omission was done, it was done with the full authorization and/or ratification of that Defendant, and was done in the normal and routine course and scope of the employment of Defendants' officers, agents, servants, employees, joint venturers, partners, joint enterprisers or representatives.

**ANSWER**:     Denied.

FRAUDULENT CONCEALMENT, DISCOVERY RULE,<br>ESTOPPEL, AND TOLLING OF LIMITATIONS

9.1     The accrual of Plaintiffs' causes of action, and the running of any applicable statute of limitations, has been deferred by Defendants' acts of fraudulent concealment.  These include, but are not limited to, failing to disclose, and in fact suppressing, information concerning: (a) the injurious nature of their activities; (b) the fact that the toxic and hazardous chemicals, solvents, and substances were being released into the soil, groundwater, water, and air in and around the wood treatment facility; and (c) the harmful effects associated with continued exposure to the toxic and hazardous chemicals, solvents, and substances to the Plaintiffs and others residing near the wood treatment facility.  Defendants concealed the results of their health monitoring of certain employees.    Defendants also concealed from federal and state governmental agencies their conduct involving the toxic and hazardous chemicals, solvents, and substances.  Defendants had actual knowledge of these wrongs, but concealed the wrongs by making misrepresentations and/or by remaining silent when they had a duty to speak.  Further, Defendants had a fixed purpose to conceal the wrongs.  Plaintiffs and Decedents reasonably relied on Defendants' misrepresentations and/or silence.  Plaintiffs brought their claims promptly when they reasonably knew or should have known based upon a reasonably diligent inquiry that their injuries and damages were caused by the wrongful acts of Defendants.

**ANSWER**:     Denied.

9.2     Further and alternatively, the accrual of Plaintiffs' causes of action have been deferred because many or all of Plaintiffs' injuries were inherently undiscoverable and not objectively verifiable.  Further, Plaintiffs' action is brought under State law for personal injuries, which are caused or contributed to by exposure to a hazardous substance, pollutant, or contaminant released into the environment from a facility.

**ANSWER**:     Denied.

9.3     Further and alternatively, with regard to any allegations Defendants may make as to statute of limitations, Plaintiffs plead equitable estoppel.  Defendants, with actual or constructive knowledge, have materially misrepresented or concealed facts by contending that their activities were not harmful and injurious.  Defendants are now estopped from contending that Plaintiffs knew or should have known that the Defendants' activities were in fact harmful or injurious.

**ANSWER**:     Denied.

## DAMAGES

### PERSONAL INJURY DAMAGES

10.1     Plaintiffs seek compensatory damages arising from their injuries suffered as a result of the wrongful conduct of Defendants.  Plaintiffs seek monetary damages from Defendants to compensate them for the following elements of damages:

- past and future medical expenses;
- past and future loss of earning capacity;
- past and future pain and suffering;
- past and future disability and/or loss of a normal life;
- past and future mental anguish;
- past and future physical impairment; and
- past and future disfigurement.

**ANSWER**:     Koppers admits that Plaintiffs seek monetary damages in this action, but Koppers denies that Plaintiffs are entitled to any relief whatsoever.  Koppers denies any remaining allegations set forth in this Paragraph.

### WRONGFUL DEATH DAMAGES

11.1     On October 31, 2007, various Plaintiffs herein were appointed Special Administrator of the Estate of their Decedents in the Circuit Court of Cook County, Law Division, for the purpose of bringing this lawsuit.  (Exhibit 1).

**ANSWER:**     Koppers lacks sufficient information to admit or deny the allegations set forth in

this Paragraph.

11.2     This cause of action arises under the Illinois Wrongful Death Act, codified at 740
ILCS 180/1, <u>et</u>. <u>seq</u>.

**ANSWER:**     Denied.

11.3     As a result of the deaths of Decedents, Plaintiffs seek monetary damages to
compensate them for the following damages all of which Plaintiffs have suffered and are
reasonably certain to suffer in the future:

> • pecuniary and personal loss, including the loss of money, benefits, goods,
> services, and society, including love, affection, care, attention,
> companionship, comfort, guidance and protection of the decedent.
> Additionally, the lawful wedded spouses of Decedents have suffered a loss
> of consortium as a result of the death of their spouses.

**ANSWER:**     Koppers admits that Plaintiffs seek monetary damages in this action, but Koppers

denies that Plaintiffs are entitled to any relief whatsoever.    Koppers denies any remaining

allegations set forth in this Paragraph.

### SURVIVAL ACTION BY THE ESTATES OF DECEDENTS

12.1     This cause of action arises under the Survival Act, codified at 755 ILCS 5/27-6,
and is brought by the Plaintiffs as the duly appointed Special Administrators of the Estate of their
Decedents.

**ANSWER:**     Denied.

12.2     As a result of the deaths of Decedents, their estates seek monetary damages to
compensate for the following elements of damages:

> • conscious pain and suffering,
> • medical expenses of Decedents;
> • loss of earnings;
> • caretaking expenses of Decedents;
> • disfigurement; and
> • loss of enjoyment of life and mental anguish.

**ANSWER:**    Koppers admits that Plaintiffs seek monetary damages in this action, but Koppers denies that Plaintiffs are entitled to any relief whatsoever.  Koppers denies any remaining allegations set forth in this Paragraph.

### PUNITIVE DAMAGES

13.1    Because Defendants are guilty of willful and wanton conduct, they should have punitive damages assessed against them in an amount deemed appropriate by they jury.

**ANSWER:**    Denied.

### POST-JUDGMENT INTEREST

14.1    Plaintiffs seek recovery of post-judgment interest as permitted by law.

**ANSWER:**    Koppers admits that Plaintiffs seek monetary damages in this action, but Koppers denies that Plaintiffs are entitled to any relief whatsoever.  Koppers denies any remaining allegations set forth in this Paragraph.

### RESERVATION OF RIGHTS

15.1    Plaintiffs reserve the right to prove the amount of damages at trial and to amend their Complaint to add additional claims upon further discovery and as their investigation continues.

**ANSWER:**    Denied.

### REQUEST FOR JURY TRIAL

16.1    Pursuant to 735 ILCS 5/2-1105 of the ILLINOIS CODE OF CIVIL PROCEDURE, Plaintiffs request a trial by jury.

**ANSWER:**    The allegations set forth in this Paragraph are not directed at Koppers, and therefore, it makes no response thereto.

WHEREFORE, Defendant, Koppers Inc., prays for judgment that Plaintiffs' take nothing by reason of this suit and that Koppers recover its costs and all other appropriate relief to which it may be justly entitled.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs lack standing to pursue one or more of the alleged claims.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims for fear of disease are not recognized under Texas law.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for strict liability are not recognized under Texas law.

### FIFTH AFFIRMATIVE DEFENSE

The operation of a wood treatment facility is not, as a matter of law or otherwise, an abnormally dangerous, inherently dangerous, or ultrahazardous activity.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to allege conduct warranting imposition of punitive damages under Texas law.  Further, an award of punitive damages in this action would be unconstitutional.

### SEVENTH AFFIRMATIVE DEFENSE

The standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, and are inadequate to ensure that such awards do not include amounts intended as exemplary damages, which are impermissible in a compensatory damages award.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for non-pecuniary damages are unconstitutionally vague and/or overbroad, and are in contravention of Koppers' rights under each of the following constitutional provisions:

(a)     the Due Process Clause of the Fifth and Fourteenth Amendments of the United

States Constitution;

(b)     the Takings Clause of the Fifth Amendment of the United States Constitution;

(c)     the Excessive Fines Clause of the Eighth Amendment of the United States

Constitution;

(d)     the Equal Protection Clause of the Fourteenth Amendment; and

(e)     various provisions of the Texas Constitution, including but not limited to art. I,

Secs. 3, 13, 14, 16 and 19.

## NINTH AFFIRMATIVE DEFENSE

As set forth in *BMW of North America v. Gore*, 116 S. Ct. 1489 (1996) and *State Farm Mutual Automobile Ins. Co. v. Campbell*, 123 S. Ct. 1513 (2003), the Due Process Clause of the United States Constitution protects Koppers from any award of damages that:

(a)     is based, in whole or in part, on conduct which did not harm Plaintiffs;

(b)     is based, in whole or in part, on conduct and/or harm that occurred wholly outside

Texas;

(c)     is based, in whole or in part, on conduct that is the exclusive province of federal

law;

(d)     is based, in whole or in part, on comparisons of the relative wealth of Koppers

and Plaintiffs; or

(e)     is grossly disproportionate to the harm suffered by Plaintiffs.

Because the standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, they are inadequate to ensure that such awards are not based on

impermissible considerations. Any award of non-pecuniary damages in this case would therefore be in contravention of the Due Process standards set forth in *BMW of North America v. Gore*, 116 S. Ct. 1489 (1996) and *State Farm Mutual Automobile Ins. Co. v. Campbell*, 123 S. Ct. 1513 (2003).

<u>**TENTH AFFIRMATIVE DEFENSE**</u>

Plaintiffs' claims for punitive damages are in contravention of Koppers' rights under each of the following constitutional provisions:

(a)     the Commerce Clause of Article I, Section 8 of the United States Constitution;

(b)     the Contracts Clause of Article I, Section 10 of the United States Constitution;

(c)     the prohibition against ex post facto laws embodied in Article I, Section 10 of the United States Constitution;

(d)     the Supremacy Clause of Article VI of the United States Constitution;

(e)     the Free Speech Clause of the First Amendment of the United States Constitution;

(f)     the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

(g)     the Takings Clause of the Fifth Amendment of the United States Constitution;

(h)     the Right to Counsel of the Sixth Amendment of the United States Constitution;

(i)     the Excessive Fines Clause of Eighth Amendment of the United States Constitution;

(j)     the Right to Trial by Jury contained in the Seventh Amendment of the United States Constitution;

(k)     the Equal Protection Clause of the Fourteenth Amendment; and

(l)     various provisions of the Texas Constitution, including but not limited to Art. I.

§§ 3, 13, 14, 16, and 19.

## ELEVENTH AFFIRMATIVE DEFENSE

No act or omission of Koppers was malicious, willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.

## TWELFTH AFFIRMATIVE DEFENSE

With respect to Plaintiffs' demand for punitive damages, Koppers specifically incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996) and *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

## THIRTEENTH AFFIRMATIVE DEFENSE

Unless Koppers' liability for punitive damages and the appropriate amount of punitive damages are each required to be established by clear and convincing evidence, Plaintiffs' claims for punitive damages violate Koppers' due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Section 19 of Article I of the Texas Constitution.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for punitive damages cannot be sustained because an award of punitive damages which is subject to no predetermined limit on the amount of punitive damages that a jury may impose, such as a maximum multiple of compensatory damages or a maximum dollar amount, violates the excessive fines clause of the United States Constitution and Koppers' due

process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Section 19 of Article I of the Texas Constitution.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for punitive damages cannot be sustained because an award of punitive damages by a jury that (1) is not provided any standard of sufficient clarity for determining the appropriateness or the appropriate size of any punitive damage award, (2) is not instructed on the limits of punitive damages proposed by the applicable principles of deterrence, (3) is not expressly prohibited from awarding punitive damages or determining the amount of an award of punitive damages, in whole or in part, on the basis of individual discriminatory damages, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, and (5) is not subject to judicial review on the basis of objective standards violates Koppers' due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Section 19 of Article I of the Texas Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for punitive damages cannot be sustained because an award of punitive damages without proof of every requisite element beyond a reasonable doubt violates Koppers' constitutional rights under Amendments IV, V, VI and XXIV of the United States Constitution and Sections 9, 10, 14 and 19 of Article I of the Texas Constitution.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are preempted, in whole or in part, by federal law and/or the primary jurisdiction doctrine.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of comparative fault, contributory fault and/or assumption of risk.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' alleged damages are the result of the conduct of third parties over which Koppers had no control.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of sole proximate cause.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of laches, waiver and/or estoppel.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

If Koppers is held liable for any damages, which alleged liability Koppers specifically denies, a basis exists for apportioning the harm alleged, thereby precluding the imposition of joint and several liability.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

If Koppers is held liable for any damages, which alleged liability Koppers specifically denies, Koppers' alleged liability should be limited solely to the proportionate share by which its conduct caused or contributed to the alleged release or threat of release of hazardous substances at the site allegedly involved in this case, taking into account the contribution of other responsible parties.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Any damages arising from Plaintiffs' allegations or any alleged releases or threatened releases of hazardous substances were caused solely by an act or omission of a third party other than an employee or agent of Koppers or other than a person whose act or omission occurred in connection with a contractual relationship existing directly or indirectly with Koppers.  Koppers exercised due care with respect to any alleged use, handling, storage or disposal of hazardous substances in light of all relevant facts and circumstances and took reasonable precautions against foreseeable acts or omissions of third parties and the consequences that could foreseeably result from such acts or omissions.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

If Koppers is held liable for any damages, which alleged liability Koppers specifically denies, Koppers' alleged liability should be limited solely to the proportionate share by which its conduct caused or contributed to the alleged improper handling of hazardous materials at the site allegedly involved in this case, taking into account the contribution of other responsible parties.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of repose.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or unclean hands.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' causes of action are barred by Texas Civil Practice & Remedies Code § 82.008.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each claimant, defendant, and responsible third-party that may be joined in the suit.

## THIRTIETH AFFIRMATIVE DEFENSE

If any Plaintiff settles with any other person or entity, then Koppers reserves the right to make a written election of credit for settlements under § 33.014 of the Texas Civil Practice & Remedies Code.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' recovery, if any, from Koppers should be reduced by the comparative negligence, fault, responsibility, or causation, if any, attributable to other Defendants.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' alleged damages were the result of pre-existing conditions that were unrelated to any conduct of, or product manufactured or placed in the stream of commerce by, Koppers.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

The damages, if any, recoverable by Plaintiffs must be reduced by any amount of damages legally caused by Plaintiffs' failure to mitigate such damages in whole or in part.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by intervening and/or superseding acts.

Koppers hereby gives notice that it intends to rely upon any other defense that may become available or appear during discovery in this case, and reserves its right to amend these Affirmative Defenses to assert any such defense.

WHEREFORE, having fully answered, Koppers prays for judgment that Plaintiffs' take nothing by reason of this suit and that Koppers recover its costs and all other appropriate relief to which it may be justly entitled.

Respectfully submitted,

KOPPERS INC.

By:     /s/ Paul K. Freeborn
One of its Attorneys

Robert L. Shuftan
Brent R. Austin
Leonard S. Kurfirst
Paul K. Freeborn
Matthew J. Caccamo
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Drive, Suite 2800
Chicago, IL 60606
(312) 201-2000 (Telephone)
(312) 201-2500 (Facsimile)

## <u>CERTIFICATE OF SERVICE</u>

      I, Paul K. Freeborn, hereby certify that, on December 13, 2007, I filed the foregoing Defendant Koppers Inc.'s Answer and Affirmative Defenses through the Court's ECF system, which sent notification of such filing to the following counsel of record:

Daniel J. Mohan
Raymond H. Groble
William J. McFadden
Sean M. Sullivan
Daley & Mohan, PC
150 N. Wacker Drive
Suite 1550
Chicago, IL 60606

Lise T. Spacapan
Gabrielle Sigel
Jill M. Hutchinson
Jenner & Block LLP
330 N. Wabash Ave.
Chicago, IL 60611

Larry J. Chilton
Rebecca A. Fozo
Chilton Yambert Porter & Young LLP
150 S. Wacker Drive
Suite 2400
Chicago, IL 60606

Marla R. Shade
Schiff Hardin LLP
6600 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606

      I further certify that I have served a copy of the foregoing Koppers Inc.'s Answer and Affirmative Defenses upon the following counsel by depositing a copy of same in the United States Mail at 225 West Wacker Drive, Chicago, Illinois 60606, properly addressed with the proper prepaid postage affixed thereto on this 13th day of December, 2007:

James L. Wright
Watts Law Firm, LLP
111 Congress Avenue
Suite 1000
Austin, TX 78701

Grover G. Hankins
The Hankins Law Firm
440 Louisiana Street
Suite 725
Houston, TX 77002

Dwight E. Jefferson
Dwight E. Jefferson, P.L.L.C.
405 Main Street
Suite 950
Houston, TX 77002

David S. Jasmer
David S. Jasmer, LLC
111 W. Washington Street
Suite 1150
Chicago, IL 60602

Douglas W. Poole
McLeod, Alexander, Powel & Apffel
802 Rosenberg
P.O. Box 629
Galveston, TX 77553

Kenneth R. Heineman
Joe Kilpatrick
Charles Ron Hobbs, II
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

Stephen C. Dillard
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Husch & Eppenberger, LLC
Houston, TX 77010


                              _____/s/ Paul K. Freeborn_____