## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

VIRDA BELL BULLARD, JOHN G.
ALEXANDER, CLARENCE EDWARD
BATTS, SR., ELNORA BELL,
PAULLETTE BLAYLOCK, CHARLES H.
BOOKER, JAMES ROY BOOKER, JOHN
R. BORGAS, DONNA FAYE BREE, LISA
MICHELLE BREEDLOVE, KERWIN
BROOKS, COPPIN ARDELL BROWN,
FLORENE J. BROWN, CHENITHA
LASHONE BURLESON, JAMES EARL
BURNETT, JAMES ROY BUMS,
CHARLES BYNAUM, EARNEST
CARRATHUS, CLEMMIE LEE CARTER,
DORLISHA CHILDS, BRENDA CLIFTON,
DENNIE FAYE COOPER, LETETIA
CREAR, INA SHERI CROSS, DON RAY
DARDEN, BOBBIE B. DAVIS, JOHN
DAVIS, JR., LEONARD EDWARD
DAVIS, WALSH DAVIS, MARCELINA
GONZALES DELEON, BILLIE JEAN
DENSON, CHARLES RAY DEVAULT,
TOM DEVAULT, JASPER DOTSON,
NATHAN EWING, JR., FRANK LEE
EWING, SR., TED ALEXANDER
FLEMINGS, ALTER MAE FLETCHER,
ORA NELL RAY FORD, LEE GEORGE,
JR., ANTOINETTE DENISE GRANT,
CARRIE LEE GRAY, C.D. GREEN,
THOMAS HANK, JR., JIMMIE HEARD,
JR., LUCY HENDERSON, WESELY EARL
HENDERSON, CAROLYN JOYCE
HENRY, DOCK HESTER, CANTREAS
LASHA HOGUES, JESSE LOYD
HOGUES, SR., LUMAN W. HOLLOWAY,
SHARON SUE HOLLOWAY, LILLY M.
HOLMES, CHARLES JACKSON, AUSTIN
EARL JACKSON, JR., KESHA LASHA
JACKSON, MINNIE OLA JACKSON,
THOMAS JACKSON, JUNE MARIE
JOHNSON, RUBY JEWEL JOHNSON,
COLQUITT KENNERSON,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 07 C 6883**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE ASHMAN**

PAMELA DENISE LANKSTER, JESSIE    )
RAY LAVAN, PATRICIA A. LAVAN,    )
EARLENE LISTER, ELMER JOAN    )
LISTER, FELIPE PONCE LOPEZ, JR.,    )
BOBBIE JEAN LOVINGS-MCCARTNEY,    )
DONACIANO E. MARTINEZ,    )
SHAUNDRA NECHELL MARTINEZ,    )
STEPHANIE NICOLE MATHIS, BRISCOE    )
TYRONE, ANEATHIA LOUISE MATHIS,    )
MARIE MATHIS, RUBY LEE MATHIS,    )
JAMES W. MCCOY, JANE G.    )
MCCULLOUGH, CHARLES LOUIS    )
MCNEIL, GILBERT MCNEIL, SR., JAMES    )
E. MELTON, JR., CLINT MOLETT,    )
BEVERLY ROSE MOORE, SHARLA    )
MOORE, SHIRLEY ANN MOORE,    )
STEPHANIE ELAINE MOORE, MELANIE    )
CHANTEL MOSES, BELINDA W.    )
NICHOLS, WALTER EARL NIX, JR.,    )
LAWRENCE CLARENCE NIX, WALTER    )
EARL NIX, SR., GEORGE ALBERT    )
PENNIE, LUELLA RAY, MECHERNETTE    )
REDIC, CLIFTON ARNOLD ROBERTS,    )
BOBBIE JEAN ROBINSON, RHONDA    )
ROGERS, LEROY ROSS, HELEN D.    )
SAMS, ELIZABETH SAUAGE, HENRY    )
LEON SCARLETT, WANDA FAYE    )
SCARLETT-BASS, JESSIE SCHULTZ,    )
IOLA ELIZABETH SCOTT, EVERLENE    )
SWEED, ANGELINA TAPLIN, EVA    )
CLYDE TAYLOR, RUSSELL-CHARLES    )
TAYLOR, SR., JANE THOMAS, MANUEL    )
JAMES THOMAS, PATRICIA A.    )
TOLBERT, FLOYD TOWSEND, SR.,    )
BEATRICE TOWNSEND-HURD,    )
DONELL TRAVIS, MARY HELEN    )
VASQUEZ, RITA Y. VASQUEZ, MAE    )
RUTH WATSON, JEROME WHEELER,    )
EDWARD JAMES WILLIAMS, LEE    )
CHARLES WILLIAMS, LLOYD CURTIS    )
WILLIAMS, CLEMON J. WILSON,    )
SHELIA WILSON, MARTIN WISE, JR.,    )
CLARA WOODFORD, ROBERT K.    )
WYATT, JIMMY LEE BLACKWELL    )
DAVID CORONA, JOHN LEE DARDEN,    )
EDDIE L. EVERLINE, SR., MELVIN    )

FISHER, CHARLES LEE NORRIS KING,    )
WILLIE LAVAN, SR., LUPE P. LOPEZ,    )
JAMES EARL MELTON, SR., ROBBIE    )
SMITH AS SPECIAL ADMINISTRATOR    )
OF THE ESTATE OF ANDREW JAMES    )
SMITH, DECEASED, SHARON JAMES    )
AS SPECIAL ADMINISTRATOR OF THE    )
ESTATE OF JOYCE MARIE HOUSTON,    )
DECEASED, MAGGIE DAWSON AS    )
SPECIAL ADMINISTRATOR OF THE    )
ESTATE OF VERSIE BEE LISTER,    )
DECEASED, WARREN SUMMER, JR. AS    )
SPECIAL ADMINISTRATOR OF THE    )
ESTATE OF WARREN J. SUMMERS, SR.,    )
DECEASED, DEANYA RANDLE AS    )
SPECIAL ADMINISTRATOR OF THE    )
ESTATE OF JAMES WILLIAMS, SR.,    )
DECEASED, AND CHARLESETTA    )
MAYBERRY AS SPECIAL    )
ADMINISTRATOR OF THE ESTATE OF    )
ROBERT WILCOX, JR., DECEASED,    )
                                         )
                    Plaintiffs,    )
                                         )
vs.                                 )
                                         )
BURLINGTON NORTHERN SANTA FE    )
RAILWAY COMPANY, KOPPERS    )
INDUSTRIES, INC., MONSANTO    )
COMPANY, DOW CHEMICAL    )
COMPANY, AND VULCAN MATERIALS    )
COMPANY,                            )
                                         )
                    Defendants.    )

## ANSWER TO PLAINTIFFS' COMPLAINT AT LAW

Defendant, The Dow Chemical Company ("Dow"), for its Answer to the Complaint of

Virda Bell Bullard et al. ("Plaintiffs"), states as follows:

### I.

PARTIES

1.1    Plaintiffs are residents or former residents of Somerville, Burleson County, Texas,
and are citizens of Illinois, California, Arizona, Louisiana and Texas.  Plaintiffs sue individually

and as Representatives of the Estates of the respective Decedents as described in Attachment "A". Each of the Plaintiffs, or each of the Decedents or minor children upon whose behalf the Plaintiffs appear, occupied, owned, or has been assigned rights to any cause of action that could be asserted by previous owners of property in the Somerville area at the time during which the injury alleged herein occurred.

ANSWER: Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.1.

1.2     Defendant Burlington Northern and Santa Fe Railway Corporation ("BNSF") is a Delaware corporation formed by the merger of the Burlington Northern and the Atchison, Topeka and Santa Fe Railway Company ("ATSF") railroads. At the time of the incidents made the basis of this suit the ATSF railroad was a Delaware corporation with its principal place of business in Chicago, Cook County, Illinois. BNSF may be served through its registered agent, CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago IL 60604.

ANSWER: Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.2.

1.3     Defendant Koppers Industries, Inc. ("Koppers") is a Pennsylvania corporation that conducts business in Cook County from which it derives substantial profits. Koppers may be served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, IL 62703.

ANSWER: Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.3.

1.4     Defendant Monsanto Company (Monsanto) is a Delaware corporation with its principal place of business in St. Louis, Missouri. Defendant Monsanto does significant business in Cook County, Illinois. Monsanto may be served through its registered agent, Illinois corporation Service, 801 Adlai Stevenson Drive, Springfield, Il 62703.

ANSWER: Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.4.

1.5     Defendant The Dow Chemical Company (Dow) is a Delaware corporation with its principle place of business in Midland, Michigan. Defendant Dow does significant business in Cook County, Illinois. Dow may be served through its registered agent, CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

ANSWER:  Dow denies that it does "significant business" in Cook County, Illinois, but admits that it does do business within Cook County, Illinois.  To the extent not specifically denied, Dow admits the remaining allegations in paragraph 1.5.

1.6     Defendant Vulcan Materials Company (Vulcan) is a New Jersey corporation with its principal place of business in Birmingham, Alabama.  Defendant Vulcan does significant business in Cook County, Illinois.  Vulcan may be served through its registered agent, Prentice Hall Corporation, 33 North La Salle Street, Chicago, Il 60602.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.6.

## II.
### JURISDICTION AND VENUE

2.1     Jurisdiction is appropriate in this Court because this is a lawsuit seeking damages in excess of the minimum jurisdictional limits of the Circuit Court of Cook County, Illinois.

ANSWER:  The allegations in paragraph 2.1 contain legal conclusions to which no response is required; therefore, Dow denies the allegations.  To the extent the allegations are directed against other defendants, Dow is without knowledge or information.

2.2     The Court has personal jurisdiction over these Defendants because they have the requisite contacts with Illinois, both specific and general, for the exercise of jurisdiction and such exercise of jurisdiction does not offend the traditional notions of fair play and substantial justice.

ANSWER:  The allegations in paragraph 2.2 contain legal conclusions to which no response is required; therefore, Dow denies the allegations.  To the extent the allegations are directed against other defendants, Dow is without knowledge or information.

2.3     Plaintiffs are not asserting any claims or causes of action based on federal laws, treaties, or the United States constitution, and there is not complete diversity of citizenship between all Plaintiffs and all Defendants so that even through many of the claims being asserted herein have a value in excess of $75,000, a federal court does not have jurisdiction over this action, and removal would be improper.

<u>ANSWER</u>:  The allegations in paragraph 2.3 contain legal conclusions to which no response is required; therefore, Dow denies the allegations.  To the extent the allegations are directed against other defendants, Dow is without knowledge or information.

    2.4    Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 because a substantial part of the events or omissions giving cause to the claims occurred in Cook County, Illinois.  Plaintiffs' Complaint does not assert an action for recovery of damages to real property.

<u>ANSWER</u>:  To the extent that the allegations in paragraph 2.4 are directed against Dow, Dow denies that any part of the events or omissions occurred in Cook County, Illinois.  Further, the allegations in paragraph 2.4 contain legal conclusions to which no response is required; therefore, Dow denies the allegations.  To the extent the allegations are directed against other defendants, Dow is without knowledge or information.

### III.
### FACTUAL BASIS OF PLAINTIFFS' CLAIMS

    3.1    Plaintiffs are residents or former residents of Somerville, Burleson County, Texas.  Plaintiffs are victims of cancer and other bodily injuries, as well as other damage, arising out of exposure to toxic chemicals from a wood treatment facility located in Burleson County.  This suit arises out of the operations and activities of the Defendants with regard to the use and lack of containment of toxic chemicals used at the facility, which have caused them injuries and damages.  Upon information and belief, many if not all of the chemicals used in the plant were manufactured, mixed and/or consolidated at the Koppers Creosote facility in Cook County, Illinois.

    <u>ANSWER</u>:  Dow denies the allegations and legal conclusions contained in paragraph 3.1 to the extent they are directed against Dow.  To the extent the allegations are directed against other defendants, Dow is without knowledge or information.

**The Koppers Cicero, Illinois Facility**

    3.2    The Koppers, Inc., Stickney Plant, 3900 S. Laramie Avenue, Cicero, Illinois was engineered and constructed in 1920-1921.  The plant was constructed for the manufacture of creosote and other chemicals to be used in railroad products.  The creosote was manufactured

and sold to the railroad defendants, and shipped from Cook County to plants in various locations such as the Somerville Texas Plant described below.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.2.

**The Wood Treatment Facility**

3.3     The Somerville facility, at which the Railroad Defendants operated and Koppers now operates a wood treatment plant, occupies a 200-acre tract of land on the northeastern edge of the city of Somerville in Burleson County, Texas.  The plant began production in its present location in February 1906 and was owned by a subsidiary of the AT&SF Railroad.  On December 2, 1912, the plant's name was changed to Santa Fe Tie and Lumber Preserving Company.  On June 2, 1950, the Santa Fe Railway (AT & SF) absorbed this subsidiary.  On March 28, 1995, AT & SF sold the Somerville wood treatment facility to Koppers.  AT & SF merged with and into the Defendant BNSF on December 31, 1996.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.3.

3.4     BNSF has represented to the Texas Natural Resource Conservation Commission ("TNRCC") that it assumes responsibility for the historic contamination of the Somerville site.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.4.

**Chemical Involvement**

3.5     From its inception in the late 1800's and continuing today, the wood treatment facility has and does today manufacture railroad cross ties, bride timbers, poles, piling, and other wood products all of which are treated on site with one or more pesticides and wood preservatives including derivatives of coal tar creosote and chlorinated pesticide compounds including pentachlorophenol (PCP).  PCP is toxic to the environment and man, and exposure to it causes damage to the liver, kidneys, blood, and nervous system, and it is a human carcinogen.

ANSWER:  If properly used and disposed of, the PCP manufactured by Dow posed no

risk of unreasonable adverse effects to man or the environment.  Dow denies that PCP is a

human carcinogen.  Dow is without knowledge or sufficient information to form a belief as to

the truth of the remaining allegations in paragraph 3.5.  Further, to the extent the allegations are

directed against other defendants, Dow is without knowledge or information.

      3.6     The Somerville site wood manufacturing process consists of vapor drying the various shaped wood pieces followed by pressure treating the wood with creosote/oil mixtures as well as certain pesticidal extenders and chlorinated pesticides including the aforesaid PCP.  The resulting treated wood products are used in the railroad industry.

      <u>ANSWER</u>:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.6.

      3.7     Coal tars are by-products of the carbonization of coal to produce coke and/or natural gas.  Coal tars are complex combinations of polycyclic aromatic hydrocarbons (PAHs), phenols, heterocyclic oxygen, sulfur, and nitrogen compounds.  Coal tar creosotes are distillation products of coal tar.

      <u>ANSWER</u>:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.7.

      3.8     Coal tar creosotes consist of aromatic hydrocarbons, anthracene, naphthalene, and phenanthrene derivatives.  At least 75 percent of coal tar creosote mixture is made up of PAHs.  PAHs are toxic to the environment and man and are human carcinogens.

      <u>ANSWER</u>:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.8.

      3.9     The composition of the creosote mixture is dependent on the sources and preparation parameters of the coal tar, and as a result, the creosote components are rarely consistent in their type and concentration.  An example of the composition variability among creosote samples was recently presented by *Weyand et al.* (1991).  In that study, the concentrations of several PAHs were analyzed in four coal tars.  All of the PAHs identified exhibited 2-fold to nearly 20-fold differences in concentration among the four samples.

      <u>ANSWER</u>:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.9.

      3.10    The coal tar creosote mixtures at issue here represent 100 years of different formulations manufactured in Cicero, Illinois and sent to the Somerville site.  These formulations

contained from time to time 199 identifiable PAHs including benzo(a)pyrenes and dibenzofurans. Coal tar creosote (creosote) is a soup of hundreds, if not thousands, of compounds most of which are toxic to the environment and man.

ANSWER: Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.10.

3.11    To this creosote soup, extenders including, but not limited to, PCP are added to create the "creosote" utilized in the pressure treatment of wood at facilities like Somerville.

ANSWER: Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.11.

3.12    PCP is a chlorinated compound used as a pesticide in the treatment of specialty wood products such as poles and railroad ties and other applications where wood comes into contact with soil making it vulnerable to insect attack. Often in the past PCP was used in the creosote treatment of specialty products. On information and belief PCP compounds were used in the treatment of specialty wood products at the Somerville site at relevant times.

ANSWER: Dow admits that PCP (pentachlorophenol) is a chlorinated compound that was used as a pesticide in the treatment for certain wood products. Dow is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3.12.

3.13    During the manufacturing process of PCP, dioxins are formed as an unwanted by-product of production. Dioxins are one of the most carcinogenic substances known to man. Further, given the chemical make-up of PCP, it is a likely generator of dioxins and furans when subjected to heat and pressure of the sort utilized in the pressure treatment of specialty wood products at the Somerville facility.

ANSWER: Dow admits that during the manufacturing process of PCP certain types of dioxins may be formed. Dow denies the remaining allegations in paragraph 3.13.

3.14    Because of the availability of benzene in coal tar creosote, a source of chlorine in an environment of heat and pressure together with oxygen presents the opportunity for a variety of dioxins and furans to form during the tie treating process.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.14.


3.15    Creosote and its constituent compounds, PCP, dioxins and furans, are toxic and harmful to the environment and man.  For purposes of this Complaint, all of these toxic and hazardous materials will often be referred to collectively as the "chemicals, solvents, and substances" and sometimes as the "products in question."

ANSWER:  PCP is a finished product, not a constituent of creosote.  If properly used and

disposed of, the PCP manufactured by Dow posed no risk of unreasonable adverse effects to man

or the environment.  Dow is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 3.15.

## Supplier Defendants

3.16    Defendants Monsanto, Dow and Vulcan provided chemicals to both the Cicero Koppers facility in Cook County, Illinois and Somerville facility.  Some, if not all, of the chemicals provided were unreasonably dangerous, toxic, and/or contaminated with unknown and unanticipated adulterating constituents.  The supplier defendants failed to warn of these contaminants and the unreasonably dangerous nature of their products, and/or failed to give proper instructions for their safe handling and use.  Furthermore, these defendants negligently manufactured these chemicals in a way that allowed the formation or contamination of the products with the contaminants.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 30

to the extent they are directed against Dow.  To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

## Plaintiffs' Chemical Exposure

3.17    During the operative time period from 1905 to present, BNSF and Koppers operated the wood treatment facility at Somerville.  That process encompassed the use of large metal cylinders into which shaped wood products would be placed.  Under pressure and heat, creosote and other pesticides would infuse the wood and displace water thus impregnating the railroad ties and other products with the foresaid pesticides.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.17.

3.18    Currently, the Somerville plant utilizes four cylinders, which are 8 feet in diameter and 155 feet long, into which specialty wood is placed for pressure treatment.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.18.


3.19    Because of the magnitude of the treatment operation at Somerville, enormous quantities of creosote and other pesticides have in the past and currently are being utilized on a daily basis.  BNSF and Koppers have caused the release of these toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around the wood treatment facility.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.19.


3.20    Plaintiffs have been exposed and continue to be exposed to toxic chemicals from the Somerville facility used to treat the wood products.  At some point in time unknown to Plaintiffs, these chemicals began to contaminate their bodies, property and homes.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.20.


3.21    Due to the size of the operation, extensive stacks of treated railroad ties and other treated products are, and at all relevant times in the past have been, placed on the ground for the purpose of "curing out."  Volatilized molecules of the aforesaid toxic compounds are released as gas from this process and are carried by the prevailing winds over the Somerville area.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.21.


3.22    Creosote and other pesticides drip from the curing treated wood products and leech into the soil causing contamination of the soil, surface water and groundwater including the aquifers underlying the Somerville area.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3.22.

3.23    Independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs inside the homes of Somerville residents. Likewise, independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs in the residential soil of the Somerville area. The nature and make-up of the aforesaid compounds establish that the Somerville site is the generator of these compounds.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.23.

3.24    Governmental mandated testing of soil, sediment, surface and groundwater on the Somerville site has verified the presence of the aforesaid toxic and dangerous compounds.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.24.

3.25    Governmental entities have documented the contamination of the aquifer underlying the Somerville area. Governmental entities have also documented soil contamination at the Somerville site.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.25.

3.26    Surface water run-off from the Somerville site has carried contaminated sediment to the waters of Thompson Creek and other natural drainage features resulting in off site contamination of the Somerville area.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.26.

3.27    Natural wind patterns have dispersed throughout the air in Somerville toxic gasses created by the Somerville site.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.27.

3.28    Toxic contamination of the clothing of plant workers has caused harmful chemicals to contaminate the inside of their homes where family members and loved ones have been secondarily exposed to such contaminates.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.28.

3.29    Plaintiffs have experienced one or more of the following during the relevant time periods:

a.    Intermittent flooding of their property with surface water running from the contaminated Koppers' railroad tie treatment facility.

b.    Intermittent  flooding of their property from Thompson Creek and other natural drains that receive contaminated surface water flowing from the Somerville railroad tie treatment facility.

c.    Treated wood routinely provided to Plaintiffs by BNSF and Koppers as firewood in the homes of the Plaintiffs and in some cases used as cooking fuel.

d.    Treated wood ties from time to time would be placed on or near the property of one or more of the Plaintiffs for storage prior to their being sold or removed by BNSF and Koppers for some other purpose.

e.    Groundwater lying under the real estate of Plaintiffs has been and remains contaminated with the chemicals used by BNFS and Koppers as a consequence of the chemicals being spilled and otherwise placed on the soil of the treatment facility and otherwise placed in leaking containment ponds such that the groundwater and the aquifers underlying the Somerville are now contaminated.

f.    One or more of the Plaintiffs has in the past experienced "oily tasting" water drawn from fresh water wells in the Somerville area.

g.    One or more of the Plaintiffs' houses and real estate have become contaminated with dioxins/furans, PAHs and other toxic molecules released from the wood treatment facility.

h.    Noxious odors emanating from the wood treating facility.

i.    Poisonous dusts released from the wood treatment facility that settled from the air onto their respective properties in the Somerville area.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.29, including the allegations found in subparagraphs (a) - (i).

3.30    PCP-containing products were routinely stored outside at the facility without cover or protection, allowing the chemicals to disperse throughout the neighborhood, contaminating Plaintiffs' homes, properties, and persons.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.30.

3.31    During the relevant time in question, BNSF and Koppers improperly disposed of unwanted chemicals and contaminated dirt by dumping the refuse outside at the facility, contaminating Plaintiffs' homes, properties, and persons.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.31.

3.32    As a consequence of the foregoing activities of the Defendants, but not limited to such, toxic substances including PAHs, dioxins/furans, arsenic and other dangerous and deadly toxins were at all relevant times generated and released from the Somerville site.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.32.

3.33    As a result of exposure to the toxic and hazardous chemicals, solvents, and substances, Plaintiffs have sustained bodily injuries, including cancer.

ANSWER:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.33.

## CAUSES OF ACTION

### IV.
#### NEGLIGENCE

4.1    Each of the statements and allegations made in Sections 3.1 to 3.33 above are specifically adopted and incorporated by reference herein as if set forth in full.

ANSWER:  Dow incorporates herein its answers to paragraphs 3.1 - 3.33.

4.2    Defendants Monsanto Company, Dow Chemical Company, and Vulcan Materials Company were in the business of designing, manufacturing, selling and/or distributing the

chemicals and placed said chemicals in the stream of commerce. The chemicals were mixed with the creosote and shipped via rail to the Cicero Koppers facility in Cook County, Illinois and the Somerville, Texas facility.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 4.2

to the extent they are directed against Dow.  To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

4.3     At the time the chemicals left the control of Monsanto, Dow and Vulcan, the chemicals were in a defective condition which rendered the chemicals unreasonably dangerous.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 4.3

to the extent they are directed against Dow.  To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

4.4     This unreasonably dangerous, defective, and unsafe condition of the chemicals continued up to and including the time of the exposure.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 4.4

to the extent they are directed against Dow.  To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

4.5     At all times relevant herein, it was the duty of the Defendants, Monsanto, Dow, and Vulcan, and each of them, to use reasonable care in designing, manufacturing, selling, and/or distributing the chemicals.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 4.5

to the extent they are directed against Dow.  To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

4.6     At all times relevant herein, it was the duty of the Defendants, Koppers and BNSF, and each of them, to use reasonable care in handling, released, and disposing of the chemicals.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.6 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.7     Each and every defendant committed various acts of omission and commission
that constitute negligence and were a proximate cause of the injuries and damages of Plaintiffs.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 4.7

to the extent they are directed against Dow.  To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

4.8     At all times relevant herein, in violation of their above-specified duty, and in
breach thereof, the Defendants, Koppers, BNSF, Monsanto, Dow, and Vulcan, and each of them,
were guilty of one or more of the careless and negligent acts or omissions set forth more fully
herein.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 4.8

to the extent they are directed against Dow.  To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

4.9     Koppers and BNSF were negligent in allowing and failing to prevent the release
of toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and
air in and around the wood treatment facility they operated and/or owned.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.9 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.10    Koppers and BNSF were negligent in failing to monitor their procedures and
receipts of toxic and hazardous chemicals, solvents, and substances so that they were released
and escaped into the soil, groundwater, water, and air in and around the wood treatment facility
they operated and/or owned.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.10 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.11    Koppers and BNSF were negligent in failing to monitor the types and amounts of
toxic and hazardous chemicals, solvents, and substances that were being released and that

escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.  Alternatively, Koppers and BNSF were negligent in the manner in which they undertook to monitor the types and amounts of toxic and hazardous chemicals, solvents, and substances that were being released and that escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned, and such conduct increased the risk of harm and/or caused harm because it was relied upon by others to be performed with the appropriate standard of care.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.11 because they are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.12    Koppers and BNSF were negligent in improperly disposing of and failing to properly dispose of toxic and hazardous chemicals, solvents, substances, waste materials, byproducts and effluents of the wood treatment process so that they were released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.12 because they are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.13    Koppers and BNSF were negligent in failing to warn the Plaintiffs and others in the general public of the toxic and hazardous chemicals, solvents, and substances that they knew, or in the exercise of reasonable ordinary care should have known, were being released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.13 because they are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.14    Koppers and BNSF were negligent in failing to warn Plaintiffs and others in the general public of the dangers and potential bodily harm that could be caused by the toxic and hazardous chemicals, solvents, and substances that they knew, or in the exercise of reasonable ordinary care should have known, could result from exposure to the toxic and hazardous chemicals, solvents, and substances that were being released and escaping into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.14 because they are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.15    Koppers and BNSF were negligent in creating an unreasonable risk of harm by exposing Plaintiffs to the toxic and hazardous chemicals, solvents, and substances that they were causing to be released into the soil, groundwater, water, and air.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.15 because they are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.16    Koppers and BNSF were negligent in failing to intervene in a timely manner to prevent, contain, monitor, or control the toxic and hazardous chemicals, solvents, and substances that were being released into the soil, groundwater, water, and air, which could have minimized or eliminated Plaintiffs' exposure to the toxic and hazardous chemicals, solvents, and substances.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.16 because they are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.17    Koppers and BNSF were negligent in failing to implement and enforce procedures with regard to industrial hygiene that resulted in increased exposure to the toxic and hazardous chemicals, solvents, and substances that were being used at the wood treatment facility they operated and/or owned.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 4.17 because they are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

4.18    The Supplier Defendants, Monsanto, Dow and Vulcan, were negligent in failing to adequately warn and in failing to properly manufacture unadulterated chemicals, and in failing to properly test for contamination.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 4.18 to the extent they are directed against Dow.  To the extent the allegations are directed against other defendants, Dow is without knowledge or information.

4.19    As a proximate result of one or more of the above-stated careless and negligent acts or omissions by the Defendants, Koppers, BNSF, Monsanto, Dow, and Vulcan, and each of them, the Plaintiffs and Decedents were injured and sustained damages, resulting in the death of Decedents.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph

4.19 to the extent they are directed against Dow.  To the extent the allegations are directed

against other defendants, Dow is without knowledge or information.

4.20     The above-referenced negligent acts and omissions were a proximate cause of the deaths of Decedents and Plaintiffs' injuries and damages.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph

4.20 to the extent they are directed against Dow.  To the extent the allegations are directed

against other defendants, Dow is without knowledge or information.

## V.
### TRESPASS

5.1     Each of the statements and allegations made in Sections 3.1 to 3.33 above are specifically adopted and incorporated by reference herein as if set forth in full.

ANSWER:  Dow incorporates herein its answers to paragraphs 3.1 - 3.33.

5.2     Koppers and BNSF released toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air that encroached upon and entered into and onto the real property of Plaintiffs, in a way that was physical, intentional and voluntary by Koppers and BNSF.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 5.2 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

5.3     Koppers and BNSF intentionally released said toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around Plaintiffs' personal and real property, including their clothing, land, and homes, while knowing to a substantial degree of certainty that said release would result in an intrusion of said toxic and hazardous chemicals, solvents, and substances on Plaintiffs' persons, personal property, land, and real estate.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 5.3 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

5.4     Koppers and BNSF's release of said toxic and hazardous chemicals, solvents, and substances has been a continuing course of conduct on their part through the present.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 5.4 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.


5.5     Koppers and BNSF wrongfully caused said toxic and hazardous chemicals, solvents, and substances to enter, invade, and intrude upon Plaintiffs' property without the permission or consent of the Plaintiffs.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 5.5 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.


5.6     Koppers and BNSF's abnormally dangerous activity in releasing said toxic and hazardous chemicals, solvents, and substances has wrongfully interfered, and continues through the present wrongfully to interfere, with Plaintiffs' possessory rights in their property and, specifically, has directly interfered, and continues through the present to interfere directly, with Plaintiffs' ability to use and enjoy their property free of harm to their health and persons.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 5.6 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.


5.7     As a proximate result of said trespass by Defendants upon Plaintiffs' property and persons, the Plaintiffs and Decedents have sustained personal injury and damages, including mental anguish and physical injury.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 5.7 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.


5.8     These releases and trespasses, whether the result of negligence, recklessness, or intentional conduct involving abnormally dangerous activity, caused injury to Plaintiffs' right of possession, resulting in personal injury and damage to Plaintiffs and Decedents, including mental anguish and physical injury.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 5.8 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

## VI.
### WILFUL AND WANTON CONDUCT

6.1     Each of the statements and allegations made in Sections 3.1 to 3.33 above are specifically adopted and incorporated by reference herein as if set forth in full.

ANSWER:  Dow incorporates herein its answers to paragraphs 3.1 - 3.33.


6.2     At all times relevant herein, it was the duty of the Defendants, Koppers and BNSF, and each of them, to refrain from willful and wanton conduct which would endanger the safety of others, including the Plaintiffs and Decedents.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 6.2 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.


6.3     At all times relevant herein, in violation of their above-specified duty, and in breach thereof, the Defendants, Koppers and BNSF, and each of them, intentionally and/or with an utter indifference to or conscious disregard for the safety of others, including the Plaintiffs and Decedents, willfully and wantonly committed one or more of the following acts and/or omissions set forth more fully herein.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 6.3 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.


6.4     Koppers and BNSF knew that the chemicals, solvents, and substances that they were causing to be released into the soil, groundwater, water, and air in and around their wood treatment facility were toxic and hazardous.  They knew that these chemicals, solvents, and substances would cause grave, sometimes fatal, injuries to the people in and around the facility. Despite their knowledge, Koppers and BNSF consciously disregarded the rights, safety, and welfare of the general public, including Plaintiffs and Decedents, in proceeding to cause and allow these toxic and hazardous chemicals, solvents, and substances to escape from the facility and cause significant and pervasive bodily injuries and deaths to Decedents, Plaintiffs and others.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 6.4 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.


6.5     This conduct was known and directed by managers and officers of Koppers and BNSF and was a proximate cause of Plaintiffs' injuries and damages and Decedents' death.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 6.5 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.


6.6    As a proximate result of one or more of the above-stated willful and wanton acts and/or omissions of the Defendants, Koppers and BNSF, and each of them, the Plaintiffs and Decedents were injured and sustained damages, resulting in the death of Decedents.

ANSWER:  Dow neither admits nor denies the allegations in paragraph 6.6 because they

are directed entirely against defendants Koppers and BNSF; therefore no answer is required.

## VII.
### STRICT LIABILITY

7.1    Each of the statements and allegations made in Sections 3.1 to Section 3.33 are specifically adopted and incorporated by reference herein as if set forth in full.

ANSWER:  Dow incorporates herein its answers to paragraphs 3.1 - 3.33.


7.2    Defendants Monsanto Company, Dow Chemical Company, and Vulcan Materials Company were in the business of designing, manufacturing, selling and/or distributing the chemicals and placed said chemicals in the stream of commerce.  The chemicals were mixed with the creosote and shipped via rail to the Cicero Koppers facility in Cook County, Illinois and the Somerville, Texas facility.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 7.3

to the extent they are directed against Dow.  To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.


7.3    At the time the chemicals left the control of Monsanto, Dow and Vulcan, the chemicals were in a defective condition which rendered the chemicals unreasonably dangerous in one or more of the following ways:

a.    Long term exposure to the chemicals posed a danger to humans and the environment;

b.    The chemicals contained hazardous propensities and characteristics that, when exposed to long term, caused cancer and other health problems.

<u>ANSWER</u>:  Dow denies the allegations and legal conclusions contained in paragraph 7.3

to the extent they are directed against Dow.  To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

7.4     Plaintiffs and Decedents have been exposed and Plaintiffs continue to be exposed
to the toxic chemicals from the Somerville facility.  At some point in time unknown to Plaintiffs,
these chemicals began to contaminate their bodies, property and homes.

<u>ANSWER</u>:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 27.4.

7.5     Due to the size of the operation, extensive stacks of treated railroad ties and other
treated products were and at relevant times in the past have been, placed on the ground for the
purpose of "curing out".  Volatized molecules of the aforesaid toxic compounds are released as
gas from this process and are carried by the prevailing winds over the Somerville area.

<u>ANSWER</u>:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 7.5.

7.6     Creosote and other pesticides drip from the curing treated wood products and
leech into the soil causing contamination of the soil, surface and groundwater including the
aquifers underlying the Somerville area.

<u>ANSWER</u>:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 7.6.

7.7     The unreasonably dangerous, defective, and unsafe usage of the chemicals
continued up to and including the time of the exposure.

<u>ANSWER</u>:  Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 7.7.

7.8     As a proximate result of the exposure, unreasonably dangerous, defective, and
unsafe condition of the chemicals, Plaintiffs and Decedents were injured and suffered damages,
resulting in the death of Decedents.

<u>ANSWER</u>:  Dow is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.8.

7.9    Defendants Monsanto, Dow and Vulcan knew or reasonably should have known that the chemicals they sold and shipped to the Koppers Cicero Illinois facility and Somerville, Texas facility were unreasonably dangerous and failed to warn of their dangerous propensity.

<u>ANSWER</u>:  Dow denies the allegations and legal conclusions contained in paragraph 7.9 to the extent they are directed against Dow.  To the extent the allegations are directed against other defendants, Dow is without knowledge or information.

## VIII.
### GENERAL AGENCY ALLEGATIONS

8.1    Whenever in this Complaint it is alleged that a corporate Defendant did any act or omission it is meant that Defendants' officers, agents, servants, employees, joint venturers, partners, joint enterprisers and/or representatives did such act or omission, and that at the time such act or omission was done, it was done with the full authorization and/or ratification of that Defendant, and was done in the normal and routine course and scope of the employment of Defendants' officers, agents, servants, employees, joint venturers, partners, joint enterprisers or representatives.

<u>ANSWER</u>:  Dow denies the allegations and legal conclusions contained in paragraph 8.1 to the extent they are directed against Dow.  To the extent the allegations are directed against other defendants, Dow is without knowledge or information.

## IX.
### FRAUDULENT CONCEALMENT, DISCOVERY RULE,
### ESTOPPEL, AND TOLLING OF LIMITATIONS

9.1    The accrual of Plaintiffs' causes of action, and the running of any applicable statute of limitations, has been deferred by Defendants' acts of fraudulent concealment.  These include, but are not limited to, failing to disclose, and in fact suppressing, information concerning: (a) the injurious nature of their activities; (b) the fact that the toxic and hazardous chemicals, solvents, and substances were being released into the soil, groundwater, water, and air in and around the wood treatment facility; and (c) the harmful effects associated with continued exposure to the toxic and hazardous chemicals, solvents, and substances to the Plaintiffs and others residing near the wood treatment facility.  Defendants concealed the results of their health monitoring of certain employees.   Defendants also concealed from federal and state governmental agencies their conduct involving the toxic and hazardous chemicals, solvents, and substances.  Defendants had actual knowledge of these wrongs, but concealed the wrongs by

making misrepresentations and/or by remaining silent when they had a duty to speak. Further, Defendants had a fixed purpose to conceal the wrongs. Plaintiffs and Decedents reasonably relied on Defendants' misrepresentations and/or silence. Plaintiffs brought their claims promptly when they reasonably knew or should have known based upon a reasonably diligent inquiry that their injuries and damages were caused by the wrongful acts of Defendants.

ANSWER: Dow denies the allegations and legal conclusions contained in paragraph 9.1

to the extent they are directed against Dow. To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

9.2    Further and alternatively, the accrual of Plaintiffs' causes of action have been deferred because many or all of Plaintiffs' injuries were inherently undiscoverable and not objectively verifiable. Further, Plaintiffs' action is brought under State law for personal injuries, which are caused or contributed to by exposure to a hazardous substance, pollutant, or contaminant released into the environment from a facility.

ANSWER: Dow is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 9.2.

9.3    Further and alternatively, with regard to any allegations Defendants may make as to statute of limitations, Plaintiffs plead equitable estoppel. Defendants, with actual or constructive knowledge, have materially misrepresented or concealed facts by contending that their activities were not harmful and injurious. Defendants are now estopped from contending that Plaintiffs knew or should have known that the Defendants' activities were in fact harmful or injurious.

ANSWER: Dow denies the allegations and legal conclusions contained in paragraph 9.3

to the extent they are directed against Dow. To the extent the allegations are directed against

other defendants, Dow is without knowledge or information.

## DAMAGES

### XIII.
#### PUNITIVE DAMAGES

13.1    Because Defendants are guilty of willful and wanton conduct, they should have punitive damages assessed against them in an amount deemed appropriate by the jury.

ANSWER:  Dow denies the allegations and legal conclusions contained in paragraph 13.1 to the extent they are directed against Dow.  To the extent the allegations are directed against other defendants, Dow is without knowledge or information.

## **AFFIRMATIVE DEFENSES**

1.     Plaintiffs' Complaint fails to state in whole or in part a claim upon which relief may be granted against Dow.

2.     Plaintiffs' claims against Dow are preempted because the United States Environmental Protection Agency (EPA) granted it express permission to distribute and sell its product with the labeling, packaging, and composition as approved by the EPA.  40 C.F.R. § 152.130(a).

3.     Plaintiffs' negligence and strict liability claims that are based on a failure to warn or inadequate warnings are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq.  Therefore, the claims must be dismissed.  (Dow's pentachlorophenol product had a FIFRA approved label.)

4.     Plaintiffs' entire complaint is barred by applicable statutes of limitations.  By way of illustration, Dow stopped manufacturing pentachlorophenol in 1980, and the last sale of Dow's pentachlorophenol was made in 1983.

5.     Plaintiffs' entire complaint is barred by applicable statutes of repose.  By way of illustration, Dow stopped manufacturing pentachlorophenol in 1980, and the last sale of Dow's pentachlorophenol was made in 1983.

6.     Plaintiffs' claims are barred by the doctrine of laches.

7.     Plaintiffs, by their acts, conduct and omissions, are estopped from asserting the claims alleged in the Complaint, and each cause of action stated therein.

8.     Plaintiffs' claims against Dow are barred by a failure to identify Dow's pentachlorophenol as the substance causing the alleged damage to plaintiffs.

9.     Plaintiffs' claims are barred because the entities that purchased Dow's product(s), if any, are and were sophisticated users of any and all such product(s).  Dow, therefore, sold the product(s) alleged in the Complaint, if any, to sophisticated users, giving said users adequate and complete warnings of the potential risks involved in the handling and use of said product(s).  The sophisticated users thereby acquired a separate and affirmative duty to warn of any alleged potential harmful effects from the use or misuse of said product(s).  For the above reasons, Dow has no duty independently to warn Plaintiffs of said risks.

10.     Plaintiffs' claims are barred because the entities that purchased Dow's product(s), if any, modified, altered, and changed the products, chemicals, and compounds, referred to in Plaintiffs' Complaint, so that such changes in said products, chemicals and compounds proximately caused the loss and damages complained of, if there were any.

11.     Plaintiffs' claims against Dow are barred as the alleged injuries and damages were caused in whole or in part by the acts or omissions of persons and/or entities other than Dow, over whom Dow had no control, or by the superseding intervention of causes outside of Dow's control.

12.     Plaintiffs' claims are barred because Dow did not owe any duty of care to the plaintiffs.  Dow never owned or operated any facilities at the Somerville plant.  Dow did not supervise or have any authority or control over the use or disposal of chemicals at the Somerville plant.  Therefore, any alleged injuries to the plaintiffs were unforeseeable to Dow.

13.     Dow would further show that if Plaintiffs were exposed to any alleged pentachlorophenol-containing product specified, sold, distributed, installed or applied by Dow,

which is denied, such exposure was of a *de minimis* nature and could not within a reasonable degree of certainty be the legal and proximate cause of Plaintiffs' damages, conditions, or injuries.

14.    Plaintiffs' claims are barred because at all times material hereto, Dow's products conformed to the state of the art and complied with all federal statutes and regulations.

15.    The state of the medical, scientific and industrial knowledge, art and practice was at all times such that Dow neither breached any alleged duty owed to Plaintiffs, nor knew, nor could have known, that any products allegedly attributable to Dow presented foreseeable risk of harm to Plaintiffs in connection with the normal and expected use of such products.

16.    Dow alleges that other parties, whether named or unnamed in the plaintiffs' complaint, and whether known or presently unknown to Dow, were negligent or legally responsible or otherwise at fault for the injuries and damages alleged.  Therefore, in the event any party recovers against Dow, whether by settlement or judgment, this Court should make an apportionment of fault as to all responsible parties.

17.    Plaintiffs may not recover on the claims pleaded in their Complaint because the damages sought are too speculative and remote.

18.    Plaintiffs' claims are barred, reduced and/or limited to the extent plaintiffs have or will recover any compensation from any source whatsoever apart from defendant Dow.

19.    Any verdict or judgment that might be recovered by plaintiffs must be reduced by the amount of any recovery plaintiffs have received from collateral sources.

20.    Plaintiffs' claims are barred or must be reduced to the extent plaintiffs failed to mitigate any alleged damages or by the doctrine of avoidable consequences.

21.     Plaintiffs' claims are barred by their assumption of risk from open, obvious and known conditions or risks, if any.

22.     Defendant Dow hereby gives notice that it intends to rely upon any other defenses that may become available or apparent during the proceedings in this matter and hereby reserves the right to amend this Answer and to assert any such defenses.

WHEREFORE defendant The Dow Chemical Company denies that plaintiffs are entitled to any relief whatsoever and prays for judgment as follows:

A.     Dismissing plaintiffs' complaint against Dow with prejudice;

B.     Awarding Dow its costs for defending this action, together with such other relief that this Court deems just and proper.

Dated:  December 13, 2007                    Respectfully submitted,

                                            By:    /s/ Lise T. Spacapan
                                                   One of The Dow Chemical Company's
                                                   Attorneys

Lise T. Spacapan
Gabrielle Sigel
Jill M. Hutchison
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

## <u>CERTIFICATE OF SERVICE</u>

I, Lise T. Spacapan, an attorney, certify that I caused the foregoing Answer to Plaintiffs'

Amended Complaint at Law to be served upon the counsel listed below by utilizing the CM/ECF

filing system on December 13, 2007:

Daniel J. Mohan
Sean Sullivan
Raymond Hugo Groble, III
William Joseph McFadden
Daley & Mohan, PC
150 N. Wacker Drive
Chicago, IL 60606
Tel: 312-422-9999
Fax: 312-201-9368
Email: groble@daleymohan.com
Email: ssullivan@daleymohan.com
Email: mohan@daleymohan.com
Email: wmcfadden@daleymohan.com
**Attorneys for Defendant, BNSF Railway Company**

Douglas W. Poole
William Floyd
Heather Patterson
McLeod, Alexander, Powel & Apffel
802 Rosenberg
P.O. Box 629
Galveston, TX 77553
Tel: 409-763-2481
Fax: 409-762-1155
Email: dwpoole@mapalaw.com
Email: wrfloyd@mapalaw.com
Email: hbpatterson@mapalaw.com
**Of Counsel for Defendant, BNSF Railway Company**

I further certify that I caused the foregoing Answer to Plaintiffs' Amended Complaint at Law to

be served upon the counsel listed below at the respective address listed below for each by

depositing same with the US Postal Service on December 13, 2007:

James L. "Larry" Wright
Watts Law Firm, LLC
111 Congress Avenue, Suite 1000

Austin, TX 78701
Tel: 512-479-0500
Fax: 512-478-0328
**Attorney for Plaintiff**

Grover G. Hankins
The Hankins Law Firm
4400 Louisiana Street, Suite 725
Houston, TX 77002
Tel: 713-292-2720
Fax: 713-292-2729
**Attorney for Plaintiff**

Dwight E. Jefferson
Dwight E. Jefferson, PLLC
405 Main Street, Suite 950
Houston, TX 77002
Tel: 713-222-1222
Tel: 866-405-8343
Fax: 713-222-1223
**Attorney for Plaintiff**

David S. Jasmer
David S. Jasmer, LLC
111 W. Washington Street, Suite 1150
Chicago, IL 60602
Tel: 312-782-6344
Fax: 312-372-1974
**Attorney for Plaintiff**

/s/    Lise T. Spacapan