# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LEONARD EDWARD DAVIS, ET AL. | § § § | |
| v. | § § | CIVIL ACTION NO. 1:05-CV-464 SS |
| KOPPERS INDUSTRIES INC., ET AL. | § § § | |

## DEFENDANTS' JOINT MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c), Koppers Inc., f/k/a Koppers Industries, Inc., The Burlington Northern Santa Fe Railway Company, Monsanto Company, The Dow Chemical Company, and Vulcan Materials Company ("Defendants") jointly move to dismiss all class claims in Plaintiffs' Class Action Complaint ("Complaint")

## FACTS

This diversity of citizenship action arises from the historic operations of a wood treatment facility (the "Plant") located near Somerville, Burleson County, Texas. The Plaintiffs assert that the Plant has been operated for over 100 years as a nuisance because various alleged toxins used in the wood treatment process were allowed to escape to the surrounding lands, air, and groundwater. The Plaintiffs purport to represent a class of persons whose real property has allegedly been contaminated by the escape of these substances since 1905. They define the class as two separate sub-classes: (1) the "Property Owners class" – those who currently own real estate within a five-mile radius of the Plant; and (2) the "Medical Monitoring class" – those who have either resided, been employed, or attended the public schools within a five-mile radius of the Plant over the last 100 years. Plaintiffs seek monetary damages for medical monitoring on behalf of the Medical Monitoring class. No personal injury claims are asserted.

31005374.1

## ARGUMENTS AND AUTHORITIES

Defendants bring this motion at the early stages of this case and without the need to engage in discovery relating to a Rule 23 class analysis. The purported Property Owners class lacks standing since none of the class members could have owned the real properties at issue at the time the alleged injury *commenced* over 100 years ago. The Medical Monitoring class fails to assert a legally cognizable claim under Texas law. Since the Plaintiffs fail to allege viable class claims as a threshold matter, there is no reason to waste judicial resources in conducting discovery on class certification issues for classes that cannot be certified. Instead, the Court should dismiss the Complaint as a matter of law based on the face of the pleadings.

### A. Federal Rules of Civil Procedure 12(b)(1) and 12(c) Standards.

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is the appropriate vehicle to challenge a plaintiff's lack of standing. *Xerox Corp. v. Genmoora Corp*, 888 F.2d 345, 350 (5th Cir. 1989). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction and the plaintiff constantly bears the burden of proving that jurisdiction does in fact exist. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). A Rule 12(c) motion for judgment on the pleadings should be granted when the pleadings and any judicially noticed facts establish that the defendant is entitled to judgment as a matter of law. *Hebert Abstract Co. v. Touchstone Props. Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citation omitted).

The standard for dismissal under Rules 12(b)(1) and 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)); *see also Bombardier Aero. Empl. Welfare Benefits Plan v. Ferrer, Poiro & Wansbrough, P.C.*, 354 F.3d 348, 351 (5th Cir. 2004). The plaintiff's well-pleaded

facts are accepted as true and viewed in a light most favorable to the plaintiff. *Id.* The court, however, should ignore conclusory allegations and "unwarranted deductions of fact." *Great Plains Trust*, 313 F.3d at 312-13. Further, the court is "not required to conjure up unpled allegations . . . to save a complaint." *Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995)(citation omitted). "Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming*, 281 F.3d at 161. In a diversity case arising under state law, the law of the forum state is to be applied. *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980).

**B.    The Property Owners Class Lacks Standing.**

**1.    The Law Applicable to the Standing Analysis.**

The purported Property Owners class representatives lack standing to assert valid property damage claims, and such claims should therefore be dismissed as a matter of law. "[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, a district court must determine that at least one named class representative has Article III standing to raise each class sub-claim." *Prado-Steiman v. Busch*, 221 F.3d 1266, 1279 (11th Cir. 2000). Article III standing is a jurisdictional prerequisite to maintaining suit. *Bertulli v. Indep. Assoc. of Continental Pilots*, 242 F.3d 290, 294 (5th Cir. 2001)("Standing is an inherent prerequisite to the class certification inquiry"); *In Re Reliant Securities Litig.*, 2005 U.S. Dist. LEXIS 9716, *9730 (S.D. Tex. February 18, 2005). "In a class action case, Article III standing is determined by reference to class representatives, not the absent class members." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 2201-02, 135 L. Ed. 2d 606 (1996).

Texas courts have long held that standing to sue for permanent damage to real property vests in the person owning the property at the time the damage ***commences***. *See Vann v. Bowie*

*Sewerage Co.*, 127 Tex. 97, 90 S.W.2d 561, 562 (1936) ("Where injury to land results from a thing that the law regards as a permanent nuisance, the right of action for all of the damages resulting from the injury accrues to the owner of the land at the time the thing that causes the injury *commences* to affect the land.") (emphasis supplied); *see also Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex. App.—Tyler 2002, no pet.) (holding that plaintiff lacked standing to sue for property damage that occurred prior to plaintiff's purchase of the land); *Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 731 (Tex. App.—Texarkana 2003, no pet.) ("We conclude that . . . the Denmans lack standing to sue because the injury to their property occurred before they purchased it . . .").

In *Vann*, the plaintiffs bought land adjacent to the defendant sewer company's facility in the year 1925. 90 S.W.2d at 561. A creek running across the land was periodically polluted and contaminated by the defendant's operation of a septic tank, which had begun operation in 1916. *Id.* at 562. Prior to purchasing their property, the plaintiffs had performed an inspection and found no pollution or contamination in the creek. *Id.* Six months later, the creek was polluted by the septic tank in the same way as it had been since 1916. *Id.* The court found that the injury to the land occurred prior to the plaintiffs' purchase because a permanent nuisance *commenced* in 1916. *Id.* at 563. Therefore, the plaintiffs had no right of action with respect to any property injury because, where injury to land results from a source that constitutes a permanent nuisance, the right for all damages accrues to the owner of the land at the time the injury begins to affect the land. *Id.*

In *Senn v. Texaco, Inc.*, plaintiffs alleged that defendant's oil and gas production activities on the plaintiffs' property had caused permanent and temporary injury by contaminating an underlying aquifer. 55 S.W.3d 222, 224 (Tex. App.—Eastland 2001, pet.

denied). The court upheld the lower court's dismissal on summary judgment because the plaintiffs lacked standing. *Id.* First, the court relied on the holding in *Vann* that it is well established in Texas that injury to land caused by a permanent nuisance accrues to the owner of the land at the time the injury *commences*. *Id.* at 225. The right to sue for injury to land is not a right that runs with the land. *Id.* Second, the court rejected the plaintiffs' argument that the nature of the injury called for the application of the discovery rule. *Id.* at 225-26. Specifically, plaintiffs asserted that since they were the ones who had discovered the injury, they owned any cause of action arising from that injury. *Id.* at 226. The court held that the discovery rule is only applicable to a statute of limitations analysis, not a standing inquiry, and that the issue of limitations never arises unless the plaintiff has standing in the first place to pursue the claim. *Id.*

> Standing is a component of subject matter jurisdiction. It arises when a person is personally aggrieved or has an interest peculiar to himself and not merely as a member of the general public. The discovery rule cannot transfer the valid ownership of a cause of action from one person to another simply because the second person claims to have discovered that injury.

*Id.* Although the court noted an occasional harsh application of the rule in *Vann*, it also stated that this rule is simple, straight-forward, and easily applied, which lends certainty to transactions involving real property. *Id.* Therefore, the court concluded that the plaintiffs lacked standing to bring suit for any type of injury to the land that occurred prior to their purchase, even though such injury was neither discovered nor discoverable until later. *Id.*

Based on well-established Texas law, the standing analysis with regard to property damage claims is two-fold: (1) whether the injury alleged is permanent or temporary; and (2) whether the plaintiffs owned the land at the time the injury commenced. *Id.*

### 2. The Property Owners Class Alleges Permanent Injuries to Land as a Matter of Law.

The Supreme Court of Texas recently clarified the law of permanent versus temporary nuisance claims and when each accrues. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 266 (Tex. 2004). "A permanent nuisance claim accrues when injury *first* occurs or is discovered; a temporary nuisance claim accrues *anew* upon each injury." *Id.* (emphasis in original). Thus, the distinction is critical in a case where the conditions alleged to constitute the nuisance have existed for many years. *Id.*

The plaintiffs in *Bates* lived near industrial plants on the Houston Ship Channel and brought suit alleging that they had been subject to years of nuisance conditions caused by industrial emissions of noise, light, fumes, dust, odors, and other substances. *Id.* at 267. They sought damages for physical discomfort, annoyance, mental anguish, loss of use, enjoyment and rental value of their properties, and the cost of repairing real and personal property. *Id.*

The *Bates* court defined a permanent nuisance as:

> [A]n activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely. Thus, a nuisance is permanent if it is constant and continuous, and if injury constantly and regularly recurs.

*Id.* at 272 (internal citations omitted).

> Conversely, a nuisance is temporary if it is of limited duration. Thus, a nuisance may be considered temporary if it is uncertain if any future injury will occur, or if future injury is liable to occur only at long intervals. A nuisance is also temporary if it is occasional, intermittent or recurrent. Or sporadic and contingent upon some irregular force such as rain.

*Id.* (internal citations omitted). "Accordingly, we hold that a permanent nuisance may be established by showing that either plaintiff's injuries or the defendant's operations are permanent." *Id.* at 283. Based on this reasoning, the court held that all the plaintiffs' claims, including the nuisance, trespass, negligence, and gross negligence claims, were time-barred since

all related to damage to real property and none were brought within the applicable two-year statute of limitations. *Id.* at 292.

Although the *Bates* case turned on a statute of limitations analysis, its reasoning and guidance governs in determining the accrual date and type of injury alleged in a standing analysis, as here. *Denman v. SND Operating, LLC*, 2005 Tex. App. LEXIS 7795 (Tex. App.—Texarkana, September 23, 2005) (unpublished). In *Denman*, plaintiffs claimed that the defendant damaged their real property by leaving behind oilfield equipment and spilling oil during production activities. *Id.* In holding that the plaintiffs lacked standing for any injuries that accrued prior to their purchase of the property, the court focused on the distinction between the accrual of a permanent versus a temporary property injury as distinguished by the Texas Supreme Court in *Bates*. *Id.* Since the injuries alleged by the plaintiffs were sporadic and separate (so as to constitute a temporary nuisance), a new cause of action accrued when each separate injury occurred. *Id.* (citing *Bates*, 147 S.W.3d at 270). Based on the *Bates* decision, the court concluded that the plaintiffs had standing only for the temporary injuries they alleged accrued during their ownership of the property. *Id.*

Here, the Plaintiffs assert permanent nuisance claims as a matter of law because their claims relate to Plant activities and operations alleged to be permanent – over 100 years of an alleged nuisance. *See Bates*, 147 S.W.3d at 269. The Plaintiffs' Complaint clearly alleges that the injury to the subject properties commenced in 1905 and has since been constant and continuous.

> *Since 1905*, the wood treatment defendants by virtue of the actions of BNSF and its predecessors and successors, and the other defendants by virtue of their actions, jointly, severally, created and maintained a nuisance on the property known as the "Somerville Plant" . . . .

Complaint, ¶ 107 (emphasis supplied). Paragraph 55 of the Complaint further explains their theory:

> The wood treatment defendants were under a legal duty to use their Somerville plant in such a way as to not unreasonably interfere with the rights of the plaintiffs and the putative class members to enjoy their property. ***Beginning in 1905*** the defendants breached this duty to the plaintiffs and caused abnormally dangerous substances to escape the wood treatment defendants' Somerville property. As more particularly plead below, the class members and their property were all injured and damaged as a consequence of the same breach of duty the defendants owed to each class member as a matter of law.

Complaint, ¶ 55 (emphasis supplied).

The Plaintiffs also make clear in their Complaint that all of their claims arise from the alleged permanent injury to their land that commenced in 1905.

> The claims of the putative class as well as the class representatives, as shown above, all arise from the same set of conditions created by the wood treatment defendants *from 1905* to the present at the Somerville plant site located near Somerville, Burleson County, TX. The mechanism of exposure and contamination is common to all persons in the class effected area.

Complaint, ¶ 53 (emphasis supplied). Paragraph 57 of the complaint emphasizes that all of the Plaintiffs' properties were allegedly damaged by the permanent nuisance that began in 1905: "Contamination of the real estate owned by the putative class members was all contaminated in the same way, during the *same time period*, and presents the same type of property damage as to each potential class member." Complaint, ¶ 57 (emphasis supplied).

In sum, the Plaintiffs complain of injuries to their properties that occurred over 100 years ago and that have been "constant and continuous" since that time: "The defendants, over the course of approximately *one hundred years*, indiscriminately contaminated the plaintiffs' and putative class members' property . . . ." Complaint, ¶ 71 (emphasis supplied). Assuming the Plaintiffs' claims are true, a fiction indulged in the Rule 12(b)(1) analysis, the Property Owners class would cover alleged injury to properties that *commenced* in 1905 – over 100 years ago.

Therefore, to have standing to bring these claims, the representative class members must have owned the properties in 1905.

### 3. Plaintiffs Fail to Allege Ownership of the Property in 1905.

The Plaintiffs have not alleged that any of the purported class representatives owned their properties in 1905. In fact, the oldest named Plaintiff whose date of birth is provided is alleged to have been born in 1923. Complaint, ¶ 13. Further, common sense demonstrates that the Plaintiffs could not have owned the properties in 1905, which was 100 years ago, and still be able to maintain this suit today. Therefore, as a matter of law, none of the purported Property Owners class members have standing to assert a valid property damage claim, and thus the entire class should be dismissed.

### C. The Medical Monitoring Class Claims Are Not Recognized in Texas.

Pursuant to Rule 12(c), the Court should dismiss all claims brought for the purported Medical Monitoring class as a matter of law because, "Texas law does not recognize a cause of action based solely on an increased health risk, absent a manifested injury." *Martin v. Home Depot USA, Inc.*, 369 F. Supp. 2d 887, 890-92 (W.D. Tex. March 31, 2005) (S. Sparks). Texas law requires a plaintiff to demonstrate "actual injury" in order to pursue a claim. *Id.* (citing *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 338-42 (Tex. App.—Tyler 2003, no pet.) (putative class plaintiffs' claims dismissed because no injury had manifested itself at the time of suit); *Hines v. Evergreen Cemetery Assoc.*, 865 S.W.2d 266, 268 (Tex. App.—Texarkana 1993, no writ) (actual injury must be demonstrated to support a claim under the D.T.P.A.); *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex. App—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (injury required under breach of warranty claim); *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1136 (5th Cir. 1985) ("However egregious the legal fault, there is no cause of action for negligence or products liability unless there is actual loss or damage resulting to the interest of

another.") (quoting W. PAGE KEETON, ET AL., PROSSER & KEETON ON TORTS § 30 at 165 (5th Ed. 1984)).

In *Martin*, this Court dismissed all claims arising from alleged defects in chromated copper arsenate ("CCA") used to treat lumber because the plaintiffs had failed to allege they had sustained any actual physical injury. *Id.* "Instead, [the plaintiffs] alleged only that CCA treated wood present[ed] an increased risk of future injury or illness." *Id.* This Court dismissed all of the plaintiffs' claims because Texas law requires an injury-in-fact. *Id.* (citing *Martin v. Ford Motor Co.*, 914 F. Supp. 1449 (S.D. Texas 1996) and *In Re Airbag Prod. Liab. Lit.*, 7 F. Supp. 2d 792 (E.D. La. 1998)).

As in *Martin*, here, all of Plaintiffs' claims for medical monitoring are based on the fear of an increased risk of injury in the future. *See* Complaint, ¶¶ 54, 57, 59, 66-68, 115, 123, 150-151, 176-181, 182, 185. In sum, Plaintiffs seek recovery of money damages to establish a monitoring program based merely on allegations of exposure to alleged toxic substances. *Id.* Noticeably absent from the Complaint are allegations of any present personal injuries-in-fact. Thus, the entire proposed Medical Monitoring class should be dismissed because the complaint on its face demonstrates that such claims are not actionable under Texas law. *Id.*

Dismissal of the claims of the purported Medical Monitoring class would find support in United States Supreme Court precedent. In *Metro-North Commuter Railroad Co. v. Buckley*, the Supreme Court analyzed the reasons that the Federal Employer Liability Act (FELA) does not allow recovery for medical monitoring costs in the absence of an existing physical injury. 521 U.S. 424 (1997). The plaintiff in *Buckley* was exposed to asbestos in the course of his employment, and sought damages for his emotional distress and to cover the cost of future medical check-ups under FELA, a statute that permits a railroad worker to recover damages from

his employer for an injury resulting from his employer's negligence. *See* 45 U.S.C. § 51 (2005). The Supreme Court outlined three considerations leading to its holding. First, the Court described the difficulty that judges and juries face in medical monitoring cases, given the "uncertainty among medical professionals about just which tests are most usefully administered and when." *Id* at 442. Next, the Court noted that "tens of millions of individuals may have suffered exposure to substances that might justify some form of substance-exposure-related medical monitoring," and expressed concern that allowing recovery for some of those individuals "could threaten both a 'flood' of less important cases . . . and [create] the systemic harms that can accompany 'unlimited and unpredictable liability.'" Finally, the Court explained:

> a traditional, full-blown ordinary tort liability rule would ignore the presence of existing alternative sources of payment, thereby leaving a court uncertain about how much of the potentially large recoveries would pay for otherwise unavailable medical testing and how much would accrue to plaintiffs for whom employers or other sources . . . might provide monitoring in any event.

*Buckley*, 521 U.S. at 442-43.

The same reasoning applies with even more force in this case. Plaintiffs here fail to allege fear of specific disease from a single chemical. Rather, they allege the fear of a myriad of disparate diseases from alleged exposure to several different chemicals. The "uncertainty among medical professionals about just which tests are most usefully administered and when" would be compounded in the circumstances of this case. *Id.* at 441. Furthermore, allowing Plaintiffs to recover medical monitoring costs in the absence of a present injury would potentially open the floodgates of litigation. It would encourage lawsuits from every individual who lives or owns property in the vicinity of any facility where chemicals might have been used. For all of these reasons, Plaintiffs' claims based on their fear of possible future injury should be dismissed.

## CONCLUSION

The Property Owners class claims are legally invalid because the Plaintiffs lack standing to bring them. The Medical Monitoring class claims are not recognized under Texas law. Therefore, pursuant to Rules 12(b)(1) and 12(c), the Court should dismiss the entire Complaint and award the Defendants such other and further relief to which they are justly entitled.

Respectfully submitted,

KOPPERS INC., F/K/A KOPPERS INDUSTRIES, INC.

By: *Michael R. Klatt / By Permission / [signature]*
Michael R. Klatt
State Bar No. 11554200
Susan E. Burnett
State Bar No. 20648050
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas 78767
(512) 472-8800 – Telephone
(512) 474-1129 – Facsimile

**Attorneys for Defendant
Koppers Inc., f/k/a Koppers Industries, Inc.**

OF COUNSEL:

Robert Shuftan
(admitted pro hac vice)
Leonard Kurfirst
(admitted pro hac vice)
Brent Austin
(admitted pro hac vice)
Paul Freeborn
(admitted pro hac vice)
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 201-2000 – Telephone
(312) 201-2555 - Facsimile

THE BURLINGTON NORTHERN
SANTA FE RAILWAY COMPANY,


By: *Douglas W. Poole/ By Permission/ Joshua A. Lewis*
    Douglas W. Poole
    TBA No. 16115600
McLEOD, ALEXANDER, POWEL & APFFEL,
A Professional Corporation
802 Rosenberg; P. O. Box 629
Galveston, Texas 77553
409.763.2481 - Telephone
409.762.1155 – Facsimile

**Attorney for Defendant,
The Burlington Northern Santa Fe
Railway Company**

OF COUNSEL:

Robert W. Stewart, Esq.
Kelly, Hart & Hallman, P.C.
301 Congress, Suite 2000
Austin, Texas 78701
(512) 495-6400 - Telephone
(512) 495-6401 - Facsimile

MONSANTO COMPANY

By: *Kenneth R. Heinemann /By Permission/ Joshua W. Davis*
    Kenneth R. Heinemann
    (admitted *pro hac vice*)
    Jerry K. Ronecker
    (admitted *pro hac vice*)
    Charles Ron Hobbs, II
    (admitted *pro hac vice*)
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500 – Telephone
(314) 480-1505 – Facsimile

**Attorneys for Defendant,
Monsanto Company**

OF COUNSEL:

Edward M. Carstarphen
State Bar No. 03906700
Ellis, Carstarphen,
   Dougherty & Goldenthal P.C.
5847 San Felipe, Ste. 1900
Houston, TX 77057-3009
(713) 647-6800 – Telephone
(713) 647-6884 – Facsimile

Stephen W. Lemmon
State Bar No. 12194500
Brown McCarroll, LLP
111 Congress, Suite 1400
Austin, Texas 78701
(512) 479-1148 – Telephone
(512) 226-7325 – Facsimile

THE DOW CHEMICAL COMPANY

By: *Lise T. Spacapan / By Permission / Joshua U. Morris*
    Frank L. Hill, Esq.
Thompson & Knight LLP
98 San Jacinto Blvd., Suite 1900
Austin, Texas 7870-4239
(512) 469-6100 - Telephone
(512) 469-6180 – Facsimile

**Attorneys for Defendant
The Dow Chemical Company**

OF COUNSEL:

Lise T. Spacapan
Joanne Hannaway Sweeney
Fazal R. Khan
Jenner & Block LLP
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350 – Telephone
(312) 527-0484 – Facsimile

VULCAN MATERIALS COMPANY

By: _____
Stephen C. Dillard
State Bar No. 05868000
Federal I.D. No. 1067
Fulbright & Jaworski L.L.P
1301 McKinney, Suite 5100
Houston, Texas 77010 3095
(713) 651 5151 – Telephone
(713) 651 5246 – Facsimile

**Attorney-in-Charge for Defendant
Vulcan Materials Company**

OF COUNSEL:

Thomas A. Nesbitt
State Bar No. 24007738
Fulbright & Jaworski L.L.P.
600 Congress, Suite 2400
Austin, Texas 78701-2978
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile

## CERTIFICATE OF SERVICE

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on October 17, 2005.

_____
Stephen C. Dillard