# EXHIBIT F

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2006 AUG 24  PM 1: 29

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

BRANDON T. ADAMS, et al.,            §
                                     §
            Plaintiffs,              §
                                     §
v.                                   §     Civil Action No. A 05 CA 464 SS
                                     §
KOPPERS INDUSTRIES, INC., et al.,    §
                                     §
            Defendants.              §

## DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO RULE 37

Defendants, Koppers Inc., f/k/a Koppers Industries, Inc., The Burlington Northern Santa Fe Railway Company, Monsanto Company, The Dow Chemical Company, and Vulcan Materials Company ("Defendants"), by their attorneys, pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure ("Rule 37"), jointly move this Honorable Court to dismiss this action with prejudice because Plaintiffs have provided grossly insufficient answers to the Interrogatories propounded by this Court in its Order dated April 3, 2006.  In support thereof, Defendants state as follows:

## I.    INTRODUCTION

Plaintiffs' Second Amended Complaint is replete with vague, unspecified allegations and fails to set forth information regarding the basic elements of Plaintiffs' personal injury and property damage claims.  To address these deficiencies, Defendants moved the Court for a more definite statement and for entry of a *Lone Pine* case management order, arguing Plaintiffs should provide the prima facie elements for each claim asserted by each Plaintiff.  This Court instead ordered each Plaintiff to answer nine Interrogatories which were designed to elicit the factual allegations that it found were noticeably absent from Plaintiffs' Second Amended Complaint.

However, the generic answers to these Interrogatories served on behalf of 562 individual Plaintiffs do utterly nothing to cure the defects in the Second Amended Complaint.[1]  First, Plaintiffs' 562 *identical responses* to Court-Ordered Interrogatories 3, 4, 5, and 8, all of which seek plaintiff-specific information, are nothing more than a regurgitation of the vague and conclusory allegations set forth in the Second Amended Complaint.

Next, for the specific "injuries" listed in response to Interrogatory Number 2, it is clear that each of the Plaintiffs simply provided a laundry list of every ailment or injury that they had experienced over the course of their lives.  What is particularly disturbing is that these lists apparently were compiled without any effort made to identify which injuries were caused by old age, physical trauma or diseases that obviously have nothing to do with alleged chemical exposures.  Consider, for example, the following "injuries" for which Plaintiffs are seeking compensation:

- HIV[2]

- Alzheimer's Disease[3]

- Muscle/joint aches, visual changes and memory loss in a woman who lived to be 95 years old[4]

- Knee surgery[5]

- Sprained foot[6]

---

[1] Four of the responses concern individuals who were not even named as Plaintiffs in the Amended Complaint.  The four "new" Plaintiffs include Kimberly Moore, Sandra Murray, Mable Smith, and Eddie B. Washington.

[2] *See* Plaintiff Barbara Wilson's, as Representative of the Estate of Eric Wilson, deceased, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit D, at p. 4.

[3] *See* Plaintiff Vickie Plumber's, as Representative of the Estate of Willie Mae Maxine Hamilton, deceased, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit E, at p. 4.

[4] *See* Plaintiff Minnie Jackson's, as Representative of the Estate of Minnie Burns, deceased, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit F, at p. 4.

[5] *See* Plaintiff Jessie Burns's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit G, at p. 4.

[6] *See* Plaintiff Leon Brinston's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit H, at p. 4; Plaintiff James Burns's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit I, at p. 4.

- Diabetes[7]

- Arthritis[8]

- Carpal tunnel syndrome[9]

- Heartburn and indigestion[10]

- Two disks removed from spine[11]

- Diarrhea and chronic constipation[12]

- Decreased libido in a 78 year old woman[13]

- Sexual dysfunction in an 83 year old woman[14]

- Paranoid schizophrenia[15]

- Headaches and rashes on an 18 month old baby[16]

- Sleep apnea[17]

- Dehydration[18]

- Enlarged prostate in a three-year old boy[19]

---

[7] *See* Plaintiff Lois Brooks-Nix's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit J, at p. 4.

[8] *See* Plaintiff Louise Cromo's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit K, at p. 4.

[9] *See* Exhibit G, at p. 4.

[10] *See* Plaintiff Henry W. Aldridge's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit L, at p. 4.

[11] *See* Plaintiff Gale Burnett's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit M, at p. 4.

[12] *See* Plaintiff Clarence Batts's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit N, at p. 4.

[13] *See* Plaintiff Ruth Branch's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit O, at p. 4.

[14] *See* Plaintiff Versie Davis's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit P, at p. 4.

[15] *See* Plaintiff Roosevelt Dillard's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit Q, at p. 4.

[16] *See* Plaintiff Clarence DeVault's, as Next Friend of Quantaruis DeVault, a Minor, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit R, at p. 4.

[17] *See* Plaintiff Duwonn Evans's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit S, at p. 4.

[18] *See* Plaintiff Patricia Ann Gonzales's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit T, at p. 4.

3

Finally, numerous Plaintiffs even admitted they suffered no injuries,[20] or stated under oath they had never lived or worked in Somerville.[21]  Given the failures of the Plaintiffs to comply with the Order, Defendants request that this Court dismiss all claims asserted in the Second Amended Complaint, with prejudice, pursuant to Rule 37(b)(2)(C).

## II.    PROCEDURAL HISTORY

Plaintiffs originally filed this case as a putative class action on behalf of approximately 2,500 persons, with 12 individuals identified as class representatives.  At that time, Plaintiffs asserted claims for nuisance, trespass, strict products liability, negligence and gross negligence, and they sought both equitable and monetary relief for alleged property damage caused by alleged chemical contamination emanating from a wood treatment plant in Somerville, Texas ("Somerville Plant").  In their Class Action Complaint ("Complaint"), none of the Plaintiffs alleged any personal injuries arising from the purported contamination.  They did, however, assert that they were fearful of developing unspecified illnesses *in the future*.  Therefore, in addition to seeking property damages, Plaintiffs requested monetary compensation that would allow them to participate in a medical monitoring program.

Each of the Defendants answered the Complaint and joined in filing a Motion to Dismiss, which demonstrated (1) Plaintiffs lack standing to assert property damage claims because the purported contamination arose from an alleged permanent nuisance that began more than one hundred years ago, and (2) Plaintiffs' claim for medical monitoring was improper because they failed to allege any existing illness or injury.  Certain Defendants also argued that Plaintiffs'

---

[19] *See* Plaintiff Michelle Ratliff's, as Next Friend of Joshua Ratliff, a Minor, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit U, at p. 4.
[20] *See e.g.,* Plaintiff Inez Davis's, as Representative of the Estate of Norris Davis, deceased, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit V; Plaintiff Ester Ellis's, as Next Friend of Darrolynn Ellis, a Minor, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit W, at p. 4.

4

product liability claims were barred by the applicable statute of repose. In response to these substantive challenges, Plaintiffs requested leave to file an amended complaint to clarify the nature of each Plaintiff's allegations. On December 15, 2005, this Court heard arguments and, among other rulings, granted Plaintiffs leave to file an amended complaint.

One week later, Plaintiffs abandoned the pursuit of class certification and filed the Amended Complaint, in which nine of the 12 purported class representatives suddenly were joined by approximately 600 additional individuals. (A true and correct copy of the Second Amended Complaint is attached hereto and incorporated herein as Exhibit A). In the Second Amended Complaint, Plaintiffs attempted to circumvent Defendants' prior substantive arguments by alleging that unspecified toxic chemicals "[a]t some point in time unknown to Plaintiffs . . . began to contaminate their bodies, real property and homes." (*See* Exhibit A, at ¶ 13). Plaintiffs further alleged that each of the Plaintiffs suffer from unspecified diseases and personal injuries because those "chemicals have contaminated Plaintiffs' bodies, homes and real estate, places of business and public schools in the area" as well as "the air, ground, and water resources of Somerville, Texas." (*Id.* at ¶ 14).

When Plaintiffs elected to transform this putative class action into a mass tort involving both property damage and unspecified personal injury claims, they failed to provide any details that would enable this Court or Defendants to determine whether any of the Plaintiffs might possess valid claims. Indeed, aside from a long list of names, the Amended Complaint provided no information regarding (1) which Plaintiffs experienced a personal injury as a result of the alleged chemical exposure, (2) the type of personal injury allegedly experienced by those individuals, (3) which Plaintiffs actually own property that was damaged, (4) the location of the

---

[21] *See e.g.,* Exhibit P, at p. 6; Plaintiff Clifton Burns's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit X, at p. 6.

property allegedly damaged, (5) the dates on which each Plaintiff allegedly suffered personal injury or property damage, or (6) the manner in which each Plaintiff allegedly was fooled by unspecified misrepresentations and/or damaged by the alleged breach of any warranty made by each Defendant. The same flaws also applied to the Title VI discrimination claims, as the Amended Complaint failed to provide any details regarding how *each* Defendant discriminated against *each* Plaintiff, minors included.

In light of these deficiencies, Defendants requested that this Court enter an order requiring Plaintiffs to file another amended complaint and provide sufficiently detailed factual allegations to establish the *prima facie* elements for *each* of the claims asserted by *each* of the Plaintiffs. During the course of a hearing on that motion, this Court agreed that the Amended Complaint failed to provide sufficient details and acknowledged the Defendants' predicament:

> [T]hey cannot know who is an adult, who is a minor, who is derivatively suing, what they are suing for, and what are the specific factual allegations. Is it for a farm that doesn't produce anymore, is it an illness that somebody has, they can't tell that from the pleadings. We're not going to do anything until they have that pleading that tells them.
>
> \*      \*      \*
>
> They're entitled to know who, what they're suing for and, you know, they're entitled to that. I don't see how they could even figure out how to proceed without that.

(*See* Transcript of All Pending Matters Before the Honorable Sam Sparks, dated March 31, 2006, attached hereto and incorporated herein as Exhibit B, at pp. 22-23). Rather than requiring another amended pleading, however, this Court compelled each Plaintiff to provide detailed factual information regarding the nature of their claims by responding to several Interrogatories. (*See* Order, dated April 3, 2006, attached hereto and incorporated herein as Exhibit C). In effect, Plaintiffs were given a *third* opportunity to set forth the basic factual allegations underlying their

6

claims.  After reviewing the grossly inadequate responses provided by Plaintiffs, Defendants again must petition this Court for relief.

III.    **ARGUMENT – THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS PURSUANT TO FEDERAL RULE 37(b)(2)(C) BECAUSE THEY HAVE VIOLATED THE COURT'S ORDER BY SERVING PATENTLY INSUFFICIENT RESPONSES TO THE INTERROGATORIES.**

Rule 37 authorizes dismissal with prejudice as a sanction when a party refuses to obey a discovery order.  *See Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990). Dismissal is appropriate when the "refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct."  *Id.*  Further, the violation must be attributable to the client instead of the attorney.  *Id.*  Finally, the conduct must substantially prejudice the opposing party and a lesser sanction must be an "inefficacious deterrent."  *Id.*  For the reasons explained herein, the Court should dismiss all of Plaintiffs' claims with prejudice.

A.    **Plaintiffs' "laundry list" responses to Interrogatory No. 2 demonstrate that they have not acted in good faith.**

In its Order, this Court propounded nine Interrogatories which ask for basic facts related to Plaintiffs' claims.  The Order expressly states "a separate set of responses shall be completed for each individual plaintiff."  (*See* Exhibit C at pg 2) (emphasis added).  Thus, the Court manifested its clear intent that each individual respond to the Interrogatories.  Yet in response to four of the nine Interrogatories, 562 Plaintiffs submitted identical responses.    Even the Interrogatories which were tailored to individual Plaintiffs are so incomplete, vague and unresponsive as to completely circumvent the purpose of the Court's Order.

For example, Interrogatory No. 2 ordered each Plaintiff to disclose the injuries for which they seek recovery in this lawsuit:

7

**INTERROGATORY NO. 2:**

Identify any and all injuries (including personal injuries, injuries to property, and medical or other expenses) *for which each plaintiff or minor plaintiff seeks recovery in this suit.*

(emphasis added).  Instead of disclosing the injuries for which each Plaintiff seeks recovery, in response to Interrogatory No. 2, Plaintiffs issued a laundry list of every condition they "suffer from" -- without alleging that they are seeking recovery for these conditions.[22]  But, Interrogatory No. 2 did not request a list of any and all conditions from which Plaintiffs suffer.  The Order plainly required each Plaintiff to provide the injuries for which he seeks recovery in this lawsuit, yet Plaintiffs blatantly ignored the question put forth by the Court.

Plaintiffs could not in good faith claim that they are seeking recovery in this lawsuit for each and every ailment listed in response to Interrogatory No. 2, which for some Plaintiffs exceeded several dozen conditions.[23]  For instance, one Plaintiff alleged that he suffered from Alzheimer's Disease.[24]  Other Plaintiffs allege that they have suffered from heartburn, visual changes and hearing changes,[25] but do not seek to recover from Defendants for these conditions.[26]  Because Plaintiffs' responses are so vague, unresponsive and incomplete as to provide no more information about their allegations than the conclusory allegations made in the Amended Complaint, this action should be dismissed.

---

[22] *See, e.g.*, Plaintiff Cynthia Washington's Answers to All Defendants' Interrogatories, attached hereto as Exhibit Y, at p. 4.
[23] *Id.*
[24] *See* Plaintiff Vickie Plumber's, as Representative of the Estate of Willie Mae Maxine Hamilton, deceased, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit E, at p. 4.
[25] *See, e.g.*, Plaintiff Katherine Feltus' Answers to All Defendants' Interrogatories, attached hereto as Exhibit Z, at p. 4.
[26] Further, although the complaint alleges property damage on behalf of an unspecified number of Plaintiffs, not one Plaintiff lists any "injuries to property" in response to Interrogatory No. 2.

8

B.    **Plaintiffs' identical responses to Interrogatories 3, 4 and 5 are nothing more than repetitions of the vague allegations in the Second Amended Complaint.**

Compounding the inadequacy of the Plaintiffs' responses are the generic, repetitive responses regarding the alleged causes of the injuries for which they seek recovery. In addition to identifying the injuries of each Plaintiff, the Order required Plaintiffs to identify the alleged cause of each injury:

> INTERROGATORY NO. 3:
>
> Identify, with reasonable specificity, the alleged cause of each injury for which each plaintiff and minor plaintiff seeks recovery.

Presumably, the intent of the Court was for each Plaintiff to identify the specific chemical(s) allegedly responsible for his or her injuries and provide some causal link with the injuries listed in response to Interrogatory No. 2. Instead of providing information about the cause of each injury for each Plaintiff, as Interrogatory No. 3 plainly requires, 562 Plaintiffs submitted the identical vague and unresponsive answer:

> ANSWER:
>
> My injuries were caused by exposure to toxic chemicals prepared, sold, manufactured, emitted aerially, deposited in the soil which we walk and play and discharged into the ground and drinking water by the defendants acting jointly and severally.

(*See, e.g.*, Plaintiff Leon Briston's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit E, at p. 5). Plaintiffs' response does not demonstrate a good faith effort to comply with the Court's order. Indeed, this response merely repeats the vague allegations set forth in the Amended Complaint, which this Court attempted to remedy by propounding the Interrogatories in the first place. (*See, e.g.*, Exhibit A, at ¶¶ 13-14, 33, 35).

Defendants are entitled to know which chemicals allegedly caused each of the conditions listed by Plaintiffs in response to Interrogatory No. 2. For example, one of the Plaintiffs, Eric

Wilson, lists HIV as an "injury."[27]  Yet, there is no factual basis in Plaintiff's Interrogatory response suggesting which wood treatment chemical supposedly causes HIV.  Similarly, Plaintiffs failed to allege which wood treatment chemicals cause unspecified muscle and/or joint aches,[28] knee surgery,[29] a sprained foot,[30] diabetes,[31] arthritis,[32] and carpal tunnel syndrome.[33] Clearly, many of the Plaintiffs identified physical maladies that are generally associated with physical trauma or aging.  Other alleged illnesses, such as depression, bronchitis or asthma are obviously caused by many factors that have nothing to do with living in the general area near a wood treatment plant.  Apparently no good faith effort was made to determine which, if any, of their alleged injuries or illnesses were caused by common everyday explanations such as advancing age, viral diseases, stress or trauma.  Clearly, Plaintiffs failed to identify with "reasonable specificity" the causes of the injuries for which they seek recovery.

The Court next required each Plaintiff to identify each Defendant that should be held liable for his or her particular injuries.  Instead, 562 Plaintiffs gave the identical unresponsive generic answer to Interrogatory No. 4:

> INTERROGATORY NO. 4:
>
> Identify each defendant that each plaintiff or minor plaintiff contends is liable for his or her injuries.  If the plaintiff alleges different defendants caused different injuries, specify the individual injuries for which each defendant is liable.

---

[27] *See* Plaintiff Barbara Wilson's, as Representative of the Estate of Eric Wilson, deceased, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit F, at p. 4.

[28] *See, e.g.,* Lois Harris's, as Representative of the Estate of Elizabeth Harris, deceased, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit G, at p. 4.

[29] *See, e.g.,* Jessie Burns's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit H, at p. 4.

[30] *See, e.g.,* Exhibit E, at p. 4.

[31] *See, e.g.,* Plaintiff Lois Brooks-Nix's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit I, at p. 4.

[32] *See, e.g.,* Plaintiff Louise Cromo's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit J, at p. 4.

[33] *See, e.g.,* Exhibit H, at p. 4.

10

<u>ANSWER:</u>

It is my belief that all of the defendants are liable as a group for the injuries to me and my family because we have been exposed environmentally to toxins the defendants are responsible for preparing, selling and manufacturing. We are affected through the air we breath, the water that we drink, and by direct contact with the toxic waste that comes into our homes as dust particles.[34]

This Interrogatory is especially significant because the allegations against each Defendant are not premised upon the same facts, yet no effort was made in the "form" answer generated by Plaintiffs to make such a distinction. For example, it seems implausible that each so-called Penta Defendant injured each Plaintiff by making the exact same "misrepresentations" and warranties to each Plaintiff, including minors, over the last 50 years. *See* Exhibit A, at ¶ 46. Not one Plaintiff identified specific representations, if any, made by each Defendant and when they were made. Without this information, none of the Defendants can determine what it is that they allegedly did to make them specifically liable under Plaintiffs' breach of warranty and misrepresentation claims.

Certainly, the alleged liability of the Penta Defendants is also different from the alleged liability of the two plant operators, BNSF and Koppers. Defendant BNSF and its predecessors operated the plant up to 1995, and Koppers has operated the plant since 1995. Given this, it would be frivolous for Plaintiffs to contend, for example, that Koppers should be liable to a Plaintiff who never lived in the Somerville area after 1995, or liable to someone who died before 1995. Yet, by providing identical responses that seek to hold "all of the defendants . . . liable as a group," this is precisely what Plaintiffs have done. Plaintiffs have not provided any information related to which Defendants are conceivably liable to which Plaintiffs.

---

[34] *See, e.g.*, Plaintiff James Fisher's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit K.

11

In furtherance of its efforts to obtain more details regarding the nature of each personal injury and/or property damage claim that has been made, this Court requested in Interrogatory No. 5 that each Plaintiff state the amount of damages being sought for each claim. In response, every single Plaintiff merely referenced "categories of damages" in the same generic form as was set forth in the Amended Complaint:

> INTERROGATORY NO. 5:
>
> State the amount of damages each plaintiff and minor plaintiff has sustained as a result of each alleged injury.
>
> ANSWER:
>
> I do not have sufficient information without having engaged in discovery, to quantify the damages sustained as a result of injuries caused by the defendants. However, we plaintiffs can identify the categories of damages from which we will seek relief, depending on whether we own, or rent property. Those areas include, but are not limited to: property (both personal and chattel) for diminution in the value of our property and rental interest in our property, caused by the pervasive contamination; damages for personal injuries associated with diseases and illnesses related to exposure to the various contaminants released, emitted produced and manufactured by the defendants; and injuries requiring future medical and other costs for the increased risk of contracting cancer and other serious diseases as the result of having been exposed to the various contaminants in both the past and in the future until the contamination has been alleviated.

(*See, e.g.*, Exhibit F, at p. 5) (emphasis added). The alleged personal injury or property damages of each Plaintiff are clearly within Plaintiffs' knowledge. Such information should have been obtained by Plaintiffs' counsel during the pre-filing investigation required by Rule 11. At a minimum, Plaintiffs could have identified whether they owned property (as opposed to renting) at the time the alleged contamination began. Once Plaintiffs provide such basic information, Texas law will require most, if not all, of the property claims to be dismissed in accordance with the Texas Supreme Court's decision in *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264

(Tex. 2004). Again, Plaintiffs failed to provide the basic information required by the Court's Order which would have been responsive to this request.

In short, the Court ordered Plaintiffs to disclose the damages resulting for each injury to each Plaintiff, and not a single Plaintiff complied. It strains credulity to suggest that over 500 Plaintiffs possess an identical response about the causes of their injuries and damages such that carbon copy answers to Interrogatory No. 5 are appropriate. The Court's Interrogatories were clearly designed so that Plaintiffs would disclose basic information about the causes and damages with regard to each injury to each Plaintiff -- a purpose which was thwarted by the identical responses to Interrogatories Nos. 3, 4, and 5 served by over 500 Plaintiffs.

**C.    Plaintiffs blatantly disregarded the Court's Order by failing to answer Interrogatories 7 and 8 with sufficiently detailed information so that Defendants can respond to the Second Amended Complaint.**

This Court's Order plainly required each claimant to provide the specific timeframe during which Plaintiff owned property or resided at an address at the time of injury or exposure, and the dates each Plaintiff claims to have been exposed to chemicals. There are several reasons why these dates are crucial. First, Plaintiffs' claims may be barred by limitations. In addition, the Penta Defendants have argued that Plaintiffs' claims are barred by the Texas statute of repose. Further, one of the most important reasons is the blanket assertion made in the Amended Complaint that each Plaintiff either owned the property when it first was damaged, or was otherwise assigned the rights to pursue a property damage claim by the original property owner. (*See* Exhibit A, at ¶ 17). Of course, Plaintiff must identify who owned the property and when, before Defendants can ascertain whether the allegation is true and made in good faith.

To gather the facts needed to assess which defenses apply to which claims, Interrogatory No. 7 required each Plaintiff to disclose four categories of information: (a) each Plaintiff's current residential address, (b) the address of any property at which the Plaintiff resided at the

13

time of injury or exposure to any cause of injury identified in response to Interrogatory (2), (c) the name of the owner of such property, and (d) the <u>dates</u> for all periods of time during which the Plaintiff has either owned the property or resided at this address.   Plaintiffs' responses to Interrogatory No. 7 are incomplete at best.

For instance, with respect to those Plaintiffs who did list a current or former residence in Somerville, over one-half of them failed to disclose the physical location of that residence and, instead, provided only a P.O. Box number or a street name.  Obviously, a P.O. Box number does not inform Defendants whether the Plaintiff lived in a residence that was capable of being contaminated or, more importantly, was somehow connected to a drinking water system which could have been impacted by the plant. (*See, e.g.*, Exhibit H, at p. 6; Exhibit I, at p. 6).  Many of the Plaintiffs also failed to disclose the time period in which they lived at a current or former residence.  Others claimed to have resided in two or three different locations *at the same time*. For example, from 1962 to the present, Plaintiff Lois Brooks-Nix apparently lived at three different locations in Somerville, and Plaintiff Lee Eldridge apparently lived at two different locations from 1988 to the present.  (*See* Exhibit J, at p. 6; Plaintiff Latasha Eldridge's, as Representative of the Estate of Lee Eldridge, deceased, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit N, at p. 6).  Thus, Plaintiffs' Answers to Interrogatory No. 7 are incomplete and fail to provide the information necessary for Defendants to respond to the allegations in the Second Amended Complaint.

When the Court previously acknowledged Defendants' concerns regarding the exposure allegations set forth in the Second Amended Complaint, Plaintiffs' counsel attempted to ease those concerns by assuring this Court that "[a]ll of these Plaintiffs lived in Somerville." (*See* Exhibit B, at p. 24).  As it turns out, however, at least forty-four (44) of the Plaintiffs never lived in Somerville for a single day of their lives.  (*See, e.g.*, Plaintiff Sandra Hutson's, as

14

Representative of the Estate of Wiley Brooks, deceased, Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit L, at p. 6; Plaintiff Clifton Burns's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit M, at p. 6).

Finally, with respect to Interrogatory No. 8, the Court ordered each Plaintiff to specify the time period during which he and/or his property allegedly were exposed to chemicals emanating from the Somerville Plant:

> **INTERROGATORY NO. 8:**
>
> Identify the dates for any period(s) during which you content that the plaintiff and/or plaintiffs property and/or minor plaintiffs person were exposed to any chemicals alleged to be responsible for the injuries that were identified in response to interrogatory (2).

Rather than provide responsive information on behalf of each Plaintiff as the Order required, the same vague and evasive response was repeated for 562 Plaintiffs:

> **ANSWER:**
>
> Because aerial emissions, caused by the ongoing incineration of defendants creosote ladened wastes have been and are continuing to invade our residences, schools, businesses, churches and other establishments throughout the entire period of occupancy, residency, and ownership of the plaintiffs including myself, the period of exposure coincides with the period that my family and I have resided in proximity to the plant.

(*See, e.g.*, Plaintiff Brala Swain's Answers to All Defendants' Interrogatories, attached hereto and incorporated herein as Exhibit L, at p. 6). Instead of disclosing the dates of exposure as required by this Interrogatory, Plaintiffs' responses to No. 8 merely refer back to Plaintiff's answer to Interrogatory No. 7. However, as demonstrated, Plaintiffs' responses to Interrogatory No. 7 do not provide the information necessary to determine *when* Plaintiffs claim that they were exposed to the chemicals which allegedly caused their injuries.

The purpose of the Interrogatories was to provide Defendants with specific factual allegations for each Plaintiff -- facts which the Court expressly found that Defendants are entitled to know before proceeding. By failing to respond on behalf of each individual Plaintiff with reasonable specificity, Plaintiffs completely disregarded the Court's Order. Plaintiffs' intent is clear – prolong this litigation by refusing to provide the specific information that will most certainly allow the Defendants and the Court to adequately evaluate these claims. Dismissal with prejudice is therefore an appropriate sanction.

## IV.    CONCLUSION

Plaintiffs have attempted to convert this putative class action into a mass tort involving hundreds of claims, each of which presents different procedural and substantive issues that must be addressed. Because these issues could not be addressed until Plaintiffs disclosed more specific information regarding each individual's claims, the Court granted Plaintiffs yet another opportunity to remedy the deficiencies in the Amended Complaint by providing meaningful responses to nine Interrogatories propounded by the Court. Since none of the Plaintiffs' Interrogatory responses, or the Amended Complaint for that matter, provide the details and core information required by this Court's Order, this Court should exercise its discretion under Rule 37 and dismiss this lawsuit with prejudice.[35]

---

[35] By moving for dismissal with prejudice pursuant to Rule 37, Defendants are not abandoning any of the alternate grounds for dismissal raised in earlier briefs. Should the Plaintiffs be permitted, over Defendants' objections, to provide additional details regarding their Interrogatory answers, Defendants reserve their rights to pursue other grounds for dismissal after the revised or supplemental answers are filed. Defendants further reserve their right to move for a *Lone Pine* order and to sever the Plaintiffs' claim pursuant to the *Greene* decision.

Respectfully submitted,

KOPPERS INC.,


By: *Michael R. Klatt / By Permission / Joshua A Morris*
     Michael R. Klatt
     State Bar No. 11554200
     Susan E. Burnett
     State Bar No. 20648050
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas 78767
(512) 472-8800 – Telephone
(512) 474-1129 – Facsimile
**Attorneys for Defendant**
**Koppers Inc., f/k/a Koppers Industries, Inc.**

OF COUNSEL:

Robert Shuftan
(admitted pro hac vice)
Leonard Kurfirst
(admitted pro hac vice)
Brent Austin
(admitted pro hac vice)
Paul Freeborn
(admitted pro hac vice)
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 201-2000 – Telephone
(312) 201-2555 – Facsimile

17

THE BURLINGTON NORTHERN
SANTA FE RAILWAY COMPANY,


By: Douglas W. Poole / By Permission / Joshua Mavias
     Douglas W. Poole /
     TBA No. 16115600
McLEOD, ALEXANDER, POWEL & APFFEL,
A Professional Corporation
802 Rosenberg; P. O. Box 629
Galveston, Texas 77553
409.763.2481- Telephone
409.762.1155 – Facsimile

**Attorney for Defendant,**
**The Burlington Northern Santa Fe**
**Railway Company**


OF COUNSEL:

Robert T. Stewart, Esq.
Kelly, Hart & Hallman, P.C.
301 Congress, Suite 2000
Austin, Texas 78701
(512) 495-6400 - Telephone
(512) 495-6401 – Facsimile

MONSANTO COMPANY

By: *Charles Don Hobbs, II / By Permission / Joshua A Morris*

        Kenneth R. Heineman
        (admitted *pro hac vice*)
        Jerry K. Ronecker
        (admitted *pro hac vice*)
        Charles Ron Hobbs, II
        (admitted *pro hac vice*)
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500 – Telephone
(314) 480-1505 – Facsimile

**Attorneys for Defendant,
Monsanto Company**

OF COUNSEL:

Edward M. Carstarphen
State Bar No. 03906700
Ellis, Carstarphen,
   Dougherty & Goldenthal P.C.
5847 San Felipe, Ste. 1900
Houston, TX 77057-3009
(713) 647-6800 – Telephone
(713) 647-6884 – Facsimile

Stephen W. Lemmon
State Bar No. 12194500
Brown McCarroll, LLP
111 Congress, Suite 1400
Austin, Texas 78701
(512) 479-1148 – Telephone
(512) 226-7325 – Facsimile

THE DOW CHEMICAL COMPANY


By: *Frank L. Hill / By Permission / Joshua B. Nevin*

Frank L. Hill, Esq.
Thompson & Knight LLP
98 San Jacinto Blvd., Suite 1900
Austin, Texas 7870-4239
(512) 469-6100 - Telephone
(512) 469-6180 – Facsimile

**Attorneys for Defendant
The Dow Chemical Company**


OF COUNSEL:

Lise T. Spacapan (admitted *pro hac vice*)
Joanne Hannaway Sweeney (admitted *pro hac vice*)
Stacy S. Jakobe (admitted *pro hac vice*)
Jenner & Block LLP
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350 – Telephone
(312) 527-0484 – Facsimile

20

VULCAN MATERIALS COMPANY

By: _Stephen C. Dillard / By Permission / Joshua Morin_
     Stephen C. Dillard
     State Bar No. 05868000
     Federal I.D. No. 1067
Fulbright & Jaworski L.L.P
1301 McKinney, Suite 5100
Houston, Texas 77010 3095
(713) 651 5151 – Telephone
(713) 651 5246 – Facsimile

**Attorney-in-Charge for Defendant
Vulcan Materials Company**

OF COUNSEL:

Thomas A. Nesbitt
State Bar No. 24007738
Fulbright & Jaworski L.L.P.
600 Congress, Suite 2400
Austin, Texas 78701-2978
(512) 474-5201 – Telephone
(512) 536-4598 – Facsimile

## <u>CERTIFICATE OF SERVICE</u>

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on August 24, 2006.

_Stephen C. Dillard / By Permission / Joshua Morin_
                Stephen C. Dillard