IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIRDA BELL BULLARD; et. al.<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY; KOPPERS INDUSTRIES, INC.; MONSANTO COMPANY; DOW CHEMICAL COMPANY; AND VULCAN MATERIALS COMPANY<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 07-C-6883<br><br>Judge Kennelly<br>Magistrate Judge Ashman |

DEFENDANTS' COMBINED RESPONSE TO
PLAINTIFFS' MOTION TO REMAND AND MOTION FOR
VOLUNTARY DISMISSAL WITHOUT PREJUDICE OF CERTAIN PLAINTIFFS

Plaintiffs are 144 individuals asserting personal injury claims who, on October 25, 2007, joined together to file a single mass action complaint challenging the operation of a wood treatment facility near Somerville, Texas (the "Somerville Plant"). Defendants[1] timely removed this action on December 6, 2007 pursuant to the "mass action" provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(11). On January 4, 2008, Plaintiffs filed a Motion to Remand (the "Remand Motion"), and, in an admitted post-removal attempt to evade federal jurisdiction, also filed a Motion for Voluntary Dismissal Without Prejudice of Certain Plaintiffs

---

[1] BNSF is incorrectly identified as "Burlington Northern Santa Fe Railway Company," Koppers is incorrectly identified as "Koppers Industries, Inc.," and Dow is incorrectly identified as "Dow Chemical Company" in Plaintiffs' Complaint. Also, the subject matter of this lawsuit relates to time periods before Monsanto was incorporated, and to products that were never manufactured, sold, and/or distributed by Monsanto. Monsanto was incorporated on February 9, 2000. The subject matter of this lawsuit relates to the alleged actions, and former business, of Pharmacia Corporation, f/k/a Monsanto Company.

(the "Dismissal Motion").  Plaintiffs' attempts to defeat this Court's jurisdiction under CAFA, however, are unavailing.

Plaintiffs raise two challenges to Defendants' removal of this case as a CAFA "mass action."  First, they claim their Complaint merely sought joint pretrial proceedings, not a joint trial, and that this case therefore does not satisfy the "mass action" requirement that the plaintiffs must seek a joint trial of purportedly common legal and factual issues.  *See* Remand Motion at 4-5.  Second, Plaintiffs claim that two post-removal maneuvers – a purported "stipulation" to separate trials and a request to voluntarily dismiss enough plaintiffs to drop below the 100-plaintiff requirement for a CAFA "mass action" – destroy this Court's removal jurisdiction.  *See* Remand Motion at 4-5, 10.

Plaintiffs' arguments are baseless and reflect an impermissible attempt to evade this Court's jurisdiction under CAFA.  First, Plaintiffs' Complaint clearly seeks a joint trial of 100 or more plaintiffs on claims that allegedly involve common questions of law or fact.  Plaintiffs did not, as they suggest, file separate claims and ask the Cook County Circuit Court to consolidate those claims for pretrial proceedings only.  Plaintiffs instead joined the alleged claims of 144 individual plaintiffs together in one cause and under one case caption, filed a single complaint with that one caption in the Circuit Court of Cook County, paid a single filing fee, filed a single appearance for each plaintiffs' attorney on behalf of all plaintiffs, and alleged one set of facts and one set of legal claims for all 144 plaintiffs collectively.  No plaintiff-specific claims or factual allegations are made – indeed, the individual plaintiffs are barely even identified in the Complaint, and there are no allegations whatsoever about their individual residencies and purported injuries.  If this Complaint does not qualify as a CAFA "mass action," then CAFA's "mass action" provision would be rendered almost meaningless.

2

Second, Plaintiffs' post-removal attempts to defeat jurisdiction must fail. Courts have consistently held that jurisdiction is determined based on the allegations in a complaint at the time of removal and that post-removal amendments, stipulations, or dismissals will not affect the court's removal jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). Plaintiffs cannot circumvent this Court's jurisdiction under CAFA by belatedly trying to "stipulate" to separate trials or dismissing enough plaintiffs to drop below the 100-plaintiff requirement.

The Court should reject Plaintiffs' arguments, deny Plaintiffs' Remand Motion, and deny Plaintiffs' Dismissal Motion.

## ARGUMENT

### I.    REQUIREMENTS FOR A "MASS ACTION" UNDER CAFA

CAFA was intended to expand federal court jurisdiction over class actions and "mass actions." *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 681 (7th Cir. 2006). "Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." S. Rep. No. 109-14, at 34 (2005).

A case qualifies as a "mass action" under CAFA if it is one "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11). Additionally, it must be shown that at least one plaintiff seeks recovery in excess of $75,000. 28 U.S.C. § 1332(d)(11)(B)(i); *see Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1206-07 (11th Cir. 2007); *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 689-90 (9th Cir. 2006).[2]

---

[2] In addition to the above criteria, a "mass action" must also satisfy the jurisdictional requirements for class actions under CAFA. Specifically, (1) at least one class member must be a citizen of a state different from any defendant; (2) the plaintiffs' must seek $5,000,000 in damages in the aggregate; and (3) the aggregate number of the members of all proposed plaintiff classes must be 100 or

## II.    THIS CASE QUALIFIES AS A "MASS ACTION" UNDER CAFA

### A.    Plaintiffs' Complaint Seeks A Joint Trial Of Purported Common Legal And Factual Issues

To determine whether removal was proper, a court must look to the allegations in the complaint at the time of removal. *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992); *Goldstein v. W.L. Gore & Assocs.*, 887 F. Supp. 168, 172 (N.D. Ill. 1995). The allegations in Plaintiffs' complaint make clear that, at the time of removal, Plaintiffs sought a joint trial of all 144 individual plaintiffs claims that purportedly involved common questions of law or fact.[3] A review of Plaintiffs' complaint reveals the following:

- Plaintiffs filed one action, joining 144 plaintiffs under one caption with one filing fee and one appearance. *See* 705 ILCS § 105/27.2a(a), (e).

- Plaintiffs filed a single appearance for each plaintiffs' attorney on behalf of all plaintiffs collectively rather than a separate appearance for each plaintiff. *See* Ill. R. Cir. Ct. Cook. Co., R 1.3.

- Plaintiffs referenced a singly jury and paid a single jury fee. *See* Complaint at ¶ 13.1, Prayer; 705 ILCS § 105/27.2a(s).

- Plaintiffs repeatedly referred to their case as a single "suit," a single "action," and a single "lawsuit." *See* Complaint at ¶¶ 1.2, 3.1, 9.2, 11.1.

- Plaintiffs brought joint causes of action on behalf of all plaintiffs and alleged identical factual bases as to all plaintiffs. *See, e.g.*, Complaint at ¶¶ 4.1-4.20, 5.1-5.8.

- Plaintiffs made no allegations that are specific to individual plaintiffs.

- Plaintiffs provided a list of allegedly common ways in which each plaintiff was purportedly damaged by the operation of the Somerville Plant. *See* Complaint at ¶ 3.29.

---

more. 28 U.S.C. §§ 1332(d)(1)(B), 1332(d)(2), 1332(d)(5). As explained in Defendants' Notice of Removal, each of these requirements is met here, and Plaintiffs do not put any of them at issue in their Remand Motion.

[3] Despite Plaintiffs' allegations, Defendants deny that Plaintiffs' claims involve common questions of law or fact or are appropriate for a joint trial. But the issue here is what Plaintiffs alleged at the time of removal, notwithstanding Defendants' disagreement with those allegations.

Moreover, under 735 ILCS § 5/2-404, the Illinois state court rule governing joinder of plaintiffs, the joinder of more than one plaintiff is proper only where the claims arise "out of the same transaction or series of transactions" and where "any common question of law or fact would arise." 735 ILCS § 5/2-404. Section 2-404 also provides that, upon motion of any party, "the court may order separate trials," which suggests that, absent such motion or order of the court, the claims of multiple plaintiffs brought in the same action are to be tried jointly.[4]  *Id.*  In short, the mere filing of a complaint with more than one plaintiff in Illinois state court raises the presumption that the plaintiffs intend all claims to be tried jointly based on purported common legal and factual issues.[5]

Indeed, many of the same plaintiffs and plaintiffs' attorneys involved in this case already passed up the opportunity to bring nearly identical claims based on nearly identical facts in individual lawsuits in another federal court.  *See* Defendants' Notice of Removal at  6-10; Defendants' Memorandum in Support of Motion to Transfer at 4-6.

Rather than address the allegations in their own Complaint, Plaintiffs urge this Court to adopt two interpretations of the "mass action" provision that would render it almost meaningless. First, Plaintiffs argue that because the "mass action" provision uses the phrase "proposed to be tried jointly" – and not "filed" – and because Plaintiffs never explicitly "proposed" a joint trial in

---

[4] In their Remand Motion, Plaintiffs argue that they never intended to seek a joint trial and cite 735 ILCS § 5/2-614(b) to support their assertion that an Illinois state court would sever the cases for trial. *See* Remand Motion at 4. Section 2-614(b), however, addresses the joinder of claims, not plaintiffs. More importantly, like Section 2-404, Section 2-614(b) gives the court discretion in determining whether a separate trial for any cause of action or counterclaim is appropriate. In other words, both Sections 2-404 and 2-614(b) contemplate severance of plaintiffs or claims that have already been joined for a joint trial only upon a motion and at the court's discretion.

[5] Plaintiffs claim that by joining 144 plaintiffs in one case they were merely seeking joint pretrial proceedings. *See* Remand Motion at 4-5. Pretrial consolidation, however, is governed by a different rule – 735 ILCS § 5/2-1006 – and involves a motion and a court order to join separately filed actions for purposes of judicial efficiency. By bringing the claims of 144 individual plaintiffs in one case, Plaintiffs have implicitly alleged common legal and factual issues and implicitly sought a joint trial.

their Complaint, the case cannot qualify as a "mass action."  *See* Remand Motion at 6. Complaints filed in Illinois state court rarely make such an explicit "proposal," however, because, as explained above, a single case involving multiple plaintiffs goes to a single trial unless the court, in its discretion, severs certain parties or claims.

More importantly, as the Senate Committee Report on CAFA makes clear, Congress included the "mass action" provision in CAFA because "mass actions are simply class actions in disguise" and present many of the same problems that make federal court jurisdiction preferable in class actions:

> They involve a lot of people who want their claims adjudicated together and they often result in the same abuses as class actions. In fact, sometimes the abuses are even worse because the lawyers seek to join claims that have little to do with each other and confuse a jury into awarding millions of dollars to individuals who have suffered no real injury.

S. Rep. No. 109-14, at 37 (2005).

If courts were to adopt Plaintiffs' interpretation of this provision, plaintiffs' attorneys would have little trouble doing exactly what the "mass action" provision was intended to prevent – disguising their case and avoiding federal court jurisdiction by simply not explicitly requesting a joint trial.  *See* Gregory P. Joseph, Federal Class Action Jurisdiction After CAFA, Exxon Mobil and Grable, 8 DEL. L. REV. 157, 181 (2006) (discussing the concern that an overly literal interpretation of the "proposed to be tried jointly" phrase in the "mass action" provision might "leave plaintiffs' counsel with significant latitude in avoiding a federal forum."). Such a narrow interpretation of the "mass action" provision is also inconsistent with the broader purpose of CAFA to expand federal court jurisdiction over class actions and "mass actions." *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 681 (7th Cir. 2006); S. Rep. No. 109-14, at 34 (2005). To give the "mass action" provision its proper reading in light of the broader purposes of CAFA,

this Court should apply the phrase "proposed to be tried jointly" to the willful joinder of plaintiffs under Federal Rule 20(a) or a state equivalent such as 735 ILCS § 5/2-404. *See* S. Amy Spencer, *Once More Into the Breach, Dear Friends: The Case for Congressional Revision of the Mass Action Provisions in the Class Action Fairness Act of 2005*, 39 LOY. L.A. L. REV. 1067, 1079-81 (2006) ("If Congress intended to encompass 'class actions in disguise' and prevent plaintiffs from making an end run on the class action provisions, interpreting 'proposed to be tried jointly' to mean joined by the plaintiffs – not a court – would accomplish Congress's goal.").

Plaintiffs next claim that an exchange between Senator Trent Lott and Senator Richard Durbin somehow establishes that Congress intended the "mass action" provision to apply only to "mass actions" filed in Mississippi or West Virginia. *See* Remand Motion at 9. Plaintiffs' reliance on passing comments made during a Senate debate is unavailing. The United States Supreme Court has made clear that, when considering legislative history, "the authoritative source for finding the Legislature's intent lies in Committee Reports on the bill, which represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation," and not the "passing comments" or "casual statements" from floor debates.[6] *Garcia v. United States*, 469 U.S. 70, 76 (1984); *see also Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1205-06 (11th Cir. 2007) (looking to only the Senate Committee

---

[6] Plaintiffs themselves acknowledge that the Senate floor debate they cite is not indicative of Congressional intent. *See* Remand Motion at 8 ("[T]he statement of a single legislator . . . is not a reliable source of Congressional intent."). Even if this Court were to consider the passing comments of members of Congress during floor debates, the exchange between Senator Lott and Senator Durbin is not the only such commentary on this issue.

Indeed, Representative James Sensenbrenner, speaking on behalf of the sponsors of CAFA in the House of Representatives, addressed the specific issue before this Court, making clear that "a complaint in which 100 or more plaintiffs are named fits the criteria of seeking to try their claims together, because there would be no other apparent reason to include all of those claimants in a single action unless the intent was to secure a joint trial of the claims asserted in the action." 151 Cong. Rec. H729 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner).

Report to resolve the "lack of clarity" in CAFA); *Abrego v. Shell Oil Co.*, 443 F.3d 676, 686-87 (9th Cir. 2006) (same).

This is especially true here where the interpretation offered by the plaintiffs based on the exchange between Senator Lott and Senator Durbin is inconsistent with the plain language of the statute and the Senate Committee Report on CAFA.   Nowhere does CAFA or the Senate Committee Report suggest that the "mass action" provision is limited to cases filed in Mississippi or West Virginia.  In fact, the Senate Report makes clear that "any civil action in which 100 or more named parties seek to try their claims for monetary relief together will be treated as a class action for jurisdictional purposes." S. Rep. No. 109-14, at 37 (2005) (emphasis added).

In short, Plaintiffs ask this Court to ignore the clear intent of their Complaint – the joinder, pursuant to 735 ILCS § 5/2-404, of the purportedly legally and factually common claims of 144 individual plaintiffs for purposes of a joint trial – and instead apply a narrow interpretation of the "mass action" provision that would contradict the overall purpose of CAFA to expand federal court jurisdiction and allow creative plaintiffs' attorneys to easily evade that jurisdiction.  Based on the allegations in the Plaintiffs' Complaint at the time of removal, this case qualifies as a CAFA "mass action," and Plaintiffs' Remand Motion should be denied accordingly.

### B.    Plaintiffs' Post-Removal "Stipulation" And Voluntary Dismissal Cannot Defeat This Court's Removal Jurisdiction

Apparently unconvinced by their own argument that this case did not qualify as a "mass action" at the time of removal, Plaintiffs attempt two post-removal maneuvers in a transparent effort to belatedly defeat this court's removal jurisdiction under CAFA.  First, Plaintiffs claim they will "stipulate" to separate trials and that they will not seek joint trials of more than 99 plaintiffs. *See* Remand Motion at 4-5.

Courts have long held that jurisdiction is to be determined based on the allegations in the complaint at the time of removal and that post-removal amendments, stipulations, or dismissals will not defeat a court's removal jurisdiction. *See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938) ("Events occurring subsequent to the instruction of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) ("Because jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint."). CAFA did not change this fundamental principle. *See, e.g., Colomar v. Mercy Hospital, Inc.*, No. 05-22409, 2007 U.S. Dist. LEXIS 52659, at *7 (S.D. Fla. July 19, 2007) ("While CAFA expressly alters some traditional jurisdictional notions – such as the complete diversity requirement – there is nothing in CAFA suggesting that the time for assessing removal jurisdiction has been modified."); *Garcia v. Boyar & Miller*, P.C., No. 06-1936, 2007 U.S. Dist. LEXIS 39072, at *18-19 (N.D. Tex. May 30, 2007) (post-removal amendment to remove class claims did not divest the court of jurisdiction under CAFA); *Moniz v. Bayer, A.G.*, 447 F Supp. 2d 31, 36 (D. Mass. 2006) (finding that, in the context of a CAFA removal, "[w]hether a proceeding is removable is evaluated on the basis of the allegations in the complaint at the time of removal, not on the basis of what may occur at some point in the future.").

Indeed, according to the Senate Committee Report on CAFA, the "law is clear that, once a federal court properly has jurisdiction over a case removed to federal court, subsequent events generally cannot 'oust' the federal court of jurisdiction." S. Rep. No. 109-14, at 35 (2005).

> Sound policy reasons support this rule. If a federal court's jurisdiction could be ousted by events occurring after a case was removed, plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years)

into the litigation to require remand to state court. If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not be able to defeat that right and bring the cause back to the state court at his election.

S. Rep. No. 109-14, at 56 (2005).

Here, Plaintiffs' vague "stipulation" or assertion that they will not seek joint trials of more than 99 plaintiffs is exactly the kind of post-removal maneuver that cannot "oust" this Court's jurisdiction. Moreover, in the context of removal under 28 U.S.C. § 1332(a), the Seventh Circuit has made clear that plaintiffs must "stipulate" to less than $75,000 in damages <u>before</u> the case is removed to federal court. *See, e.g., Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000) (an amount-in-controversy stipulation "must be made at the time the suit is filed since jurisdiction is determined as of then and not later"); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, *St. Paul* makes later filings irrelevant."). The same logic applies here.

Plaintiffs also try to belatedly divest this Court of jurisdiction by seeking the dismissal of enough plaintiffs to drop the case below the 100-plaintiff requirement for a "mass action." *See* Dismissal Motion at ¶ 5; Remand Motion at 10. Indeed, Plaintiffs themselves admit that they "seek to dismiss their cause of action for the purpose of allowing this action to proceed in Plaintiffs' chosen forum where it was originally filed, i.e., the Circuit Court of Cook County, Illinois." Dismissal Motion at ¶ 5. Plaintiffs' Dismissal Motion is thus brought for one improper purpose, and one improper purpose only – to evade this Court's removal jurisdiction – and it should be denied accordingly.

Even if the Court were to grant Plaintiffs' Dismissal Motion, it would have no effect on this Court's removal jurisdiction over the remaining claims. At the time of removal, Plaintiffs' Complaint included the claims of 144 individual plaintiffs and thus satisfied the 100-plaintiff requirement for a "mass action." A subsequent voluntary dismissal of enough plaintiffs to bring the case below the 100-plaintiff threshold cannot divest the court of removal jurisdiction. *See, e.g., Braud v. Transport Serv. Co. of Illinois*, 445 F.3d 801, 808-09 (5th Cir. 2006) (denying plaintiffs' motion for remand where the dismissal of a defendant was intended solely to destroy the Court's CAFA jurisdiction); *Robinson v. Holiday Universal, Inc.*, No. 05-5726, 2006 U.S. Dist. LEXIS 7252, at *9-10 (E.D. Pa. Feb. 23, 2006) (dismissal of removing defendant after removal does not defeat removal jurisdiction under CAFA).

The Senate Committee Report addressed the possibility that the remand of individual plaintiffs not meeting the $75,000 amount-in-controversy requirement would bring the number of "mass action" plaintiffs below 100, and soundly rejected the notion that this would defeat federal court jurisdiction:

> Subsequent remands of individual claims not meeting the section 1332 jurisdiction amount requirement may take the action below the 100-plaintiff jurisdictional threshold or the $5 million aggregated jurisdictional amount requirement. However, so long as the mass action met the various jurisdictional requirements at the time of removal, it is the Committee's view that those subsequent remands should not extinguish federal diversity jurisdiction over the action.

S. Rep. No. 109-14, at 56 (2005); *see also Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1206 (11th Cir. 2007) (citing to this portion of the Senate Committee Report with approval). If a legitimate, post-removal event such as the remand of individual plaintiffs seeking less than $75,000 cannot defeat the court's jurisdiction under the "mass action" provision of CAFA,

Plaintiffs' attempt to gerrymander around this Court through a voluntary dismissal certainly cannot do so either.

When a plaintiff attempts a post-removal amendment, "stipulation," or dismissal that would destroy the court's jurisdiction, "a district court must consider the reasons behind the amendment in determining whether remand is proper," and "[i]f the plaintiff amended simply to destroy diversity, the district court should not remand." *Schillinger v. Union Pacific Railroad Co.*, 425 F.3d 330, 333 (7th Cir. 2005). Here, Plaintiffs admit that their post-removal attempt to "stipulate" to separate trials and to dismiss the claims of 53 plaintiffs is aimed at defeating this Court's removal jurisdiction under CAFA. Plaintiffs should not be able to so transparently evade this Court's jurisdiction, and their Remand Motion and Dismissal Motion should be denied accordingly.

### III.    THIS COURT SHOULD DENY PLAINTIFF'S DISMISSAL MOTION OR GRANT A CONDITIONAL DISMISSAL

Plaintiffs bring their Dismissal Motion <u>after</u> Defendants answered the Complaint. When sought after a defendant has filed an answer or a motion for summary judgment, voluntary dismissal may be obtained only "upon order of the court and upon such terms and conditions as the court deems proper." FED. R. CIV. P. 41(a)(2). Motions for voluntary dismissal under Rule 41(a)(2) are committed to the discretion of the district court, but it is an abuse of discretion for the district court to permit the voluntary dismissal of an action where the defendant would suffer prejudice as a result. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 927 (7th Cir. 2007).

As explained above, Plaintiffs bring their Dismissal Motion for an improper purpose – to evade this Court's CAFA jurisdiction – and it should be denied accordingly. *See, e.g., Bassett v. Subaru-Isuzu Automotive, Inc.*, 948 F. Supp. 811, 815 (N.D. Ind. 1996) (denying plaintiffs'

motion to voluntarily dismiss federal claim when the motion was brought solely to defeat the court's jurisdiction).

Alternatively, if the Court grants Plaintiffs' Dismissal Motion, such dismissal would have no effect on jurisdiction for the reasons explained above. *Braud*, 445 F.3d at 808-09; *Robinson*, No. 05-5726, 2006 U.S. Dist. LEXIS 7252, at *9-10. Furthermore, given the stated purpose of the sought-for dismissals to evade jurisdiction and CAFA's strong policy disfavoring the use of mass actions as surrogates for Rule 23 class actions, any dismissal should be subject to the condition that neither the 53 dismissed plaintiffs nor any of the plaintiffs' attorneys involved in this case be able to file or prosecute another action in any state or federal court in the United States on the basis of any theory of recovery relating to the operation of the Somerville Plant except as individual lawsuits with single plaintiffs. Many of these plaintiffs and plaintiffs' attorneys have already filed several, overlapping lawsuits based on the operation of the Somerville Plant, and they have made repeated attempts to forum shop and evade federal court jurisdiction. *See* Defendants' Notice of Removal at 5-9; Defendants' Memorandum in Support of Motion to Transfer at 4-9.

An unconditional voluntary dismissal of their claims here would simply allow them to re-file a class action or "mass action" in another court and make yet another attempt to avoid federal court. This would not only prejudice Defendants but would also undermine the purpose of CAFA to "restore the intent of the framers of the United States Constitution by providing for federal court consideration of interstate cases of national importance under diversity jurisdiction." 28 U.S.C. § 1711; *see also Shappell v. PPL Corp.*, No. 06-2078, 2007 U.S. Dist. LEXIS 20041, at *9-11 (D.N.J. Mar. 20, 2007) (to avoid gerrymandering around CAFA, court granted plaintiffs' motion to voluntarily dismiss on the condition that they not file another case in

any court in the United States asserting the same claims stemming from the same facts); *Nelson v. Mission Foods Co.*, No. 00-2336, 2001 U.S. Dist. LEXIS 1259, at *2-3 (N.D. Tex. Feb. 7, 2001) (because plaintiff may have sought dismissal "for improper purposes, such as forum shopping or an effort to defeat federal jurisdiction," court granted dismissal "on the condition that he not file in any court in the United States a duplicative class action based on the controversy at issue here"); *In re Phillips Petroleum Securities Lit.*, 109 F.R.D. 602, 609 (D. Del. 1986) (same).

Defendants therefore request that this Court deny Plaintiffs' Dismissal Motion or, in the alternative, grant the Dismissal Motion on the condition that the 53 dismissed plaintiffs and plaintiffs' attorneys involved in this case not file or prosecute another action in any state or federal court in the United States on the basis of any theory of recovery relating to the operation of the Somerville Plant except as individual lawsuits with single plaintiffs.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court (1) deny Plaintiffs' Motion to Remand and (2) deny Plaintiffs' Motion for Voluntary Dismissal Without Prejudice of Certain Plaintiffs or, in the alternative, grant the conditional dismissal described above.

Dated: January 29, 2008

Respectfully submitted,

BNSF RAILWAY COMPANY


By: /s/ Daniel J. Mohan (by permission)

Daniel J. Mohan (6187721)
Daley & Mohan, PC
150 N. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 422-9999
Facsimile: (312) 201-9368

**Attorneys for Defendant, BNSF Railway
Company**


OF COUNSEL:

Douglas W. Poole
        (motion for *pro hac vice* admission to be filed)
McLeod, Alexander, Powel & Apffel
A Professional Corporation
802 Rosenberg; P.O. Box 629
Galveston, Texas 77553
Telephone: (409) 763-2481
Facsimile: (409) 762-1155

Respectfully submitted,

KOPPERS INC.


By:  /s/ Robert L. Shuftan_____


Robert L. Shuftan (3124475)
Brent R. Austin (6220501)
Leonard S. Kurfirst (6187651)
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 201-2000
Facsimile: (312) 201-2555

**Attorneys for Defendant, Koppers Inc.**

Respectfully submitted,

MONSANTO COMPANY


By: _/s/ Marla R. Shade (by permission)___


Darren VanPuymbrouck (6193910)
Marla R. Shade (6273036)
Renee C. Kelley (6289904)
Schiff Hardin LLP
6600 Sears Tower
233 South Wacker Drive
Chicago, Illinois  60606-6473
Telephone: (312) 258-5559
Facsimile: (312) 258-5600

**Attorneys for Defendant, Monsanto Company**


OF COUNSEL:

Kenneth R. Heineman
        (motion for *pro hac vice* admission to be filed)
Joe Kilpatrick
        (motion for *pro hac vice* admission to be filed)
Charles Ron Hobbs, II
        (motion for *pro hac vice* admission to be filed)
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1505

Respectfully submitted,

THE DOW CHEMICAL COMPANY


By:  /s/ Lise T. Spacapan (by permission)


Lise T. Spacapan (6188257)
Gabrielle Sigel (6186108)
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, Illinois 60611-7603
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

**Attorneys for Defendant, The Dow
Chemical Company**

Respectfully submitted,

VULCAN MATERIALS COMPANY


By:  /s/ Larry J. Chilton (by permission)


Larry J. Chilton (6185236)
Chilton Yambert Porter & Young LLP
150 South Wacker Drive, Suite 2400
Chicago, IL  60606
Telephone: (312) 460-8000
Facsimile: (312) 460-8299

**Attorneys for Defendant, Vulcan
Materials Company**


OF COUNSEL:

Stephen C. Dillard
        (admitted *pro hac vice*)
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Husch & Eppenberger, LLC
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

## CERTIFICATE OF SERVICE

I, Robert L. Shuftan, an attorney, state that I have served true and correct copies of the foregoing *Defendants' Combined Response to Plaintiffs' Motion to Remand and Motion for Voluntary Dismissal Without Prejudice of Certain Plaintiffs* upon all attorneys of record through the Court's CM/ECF system.


/s/ Robert L. Shuftan_____