IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **VIRDA BELL BULLARD,** *et al.*; § <br> § <br> **Plaintiffs**, § <br> § <br> VS. § <br> § **CASE NO. 07-C-6883** <br> **BURLINGTON NORTHERN SANTA FE** § <br> **RAILWAY COMPANY,** *et al.*; § Judge Kennelly <br> § Magistrate Judge Ashman <br> **Defendants.** § <br> § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION
TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

                                     DAVID S. JASMER, LLC
                                     111 W. Washington Street
                                     Suite 1150
                                     Chicago, Illinois 60602
                                     (312) 782-6344
                                     Fax: (312) 372-1974

                                     **ATTORNEY FOR PLAINTIFFS**

OF COUNSEL:
James L. "Larry" Wright
Christopher V. Goodpastor
Watts Law Firm, LLP
111 Congress Avenue, Suite 1000
Austin, Texas 78701
(512) 479-0500
Fax: (512) 473-0328

Grover G. Hankins
The Hankins Law Firm
440 Louisiana Street, Suite 725
Houston, Texas 77002
(713) 292-2720
Fax: (713) 236-7731

Dwight E. Jefferson
Dwight E. Jefferson, P.L.L.C.
405 Main Street, Suite 950
Houston, Texas 77002
(713) 222-1222
Fax (713) 222-1223

Plaintiffs Virda Bell Bullard, *et al.* ("Plaintiffs") file this Opposition to Defendants' Joint Motion to Transfer Venue to the Western District of Texas, Austin Division, under 28 U.S.C. § 1404(a).

## SUMMARY OF THE ARGUMENT

Defendants are five corporations currently headquartered in Michigan, Pennsylvania, Missouri, Alabama, and Texas with significant operations in Illinois and throughout the United States. Indeed, the very creosote to which Plaintiff was exposed and that caused her injuries, was manufactured in Cook County. Although all Defendants maintain a significant business presence in Illinois and have previously sought relief from Illinois courts, they nonetheless seek to deprive plaintiff Virda Bell Bullard, a 76-year-old resident of Chicago for 46 years, and other plaintiffs of their choice of forum in Illinois. Defendants claim, without factual support, that (1) the Western District of Texas would be more convenient for the plaintiffs; (2) Illinois has no connection with the dispute; (3) unidentified factual and expert witnesses and documents are located in Texas; and (4) a Texas court would be more familiar with applicable law. Defendants are wrong on all counts. This Court can and should deny Defendants' Joint Motion to Transfer Venue on the following grounds:

- Defendants have failed to satisfy their heavy burden to prove, through "undisputed facts presented to the Court by affidavit, deposition, stipulation or other relevant documents," that trial in the Western District of Texas "is clearly more convenient" than this District;
- The primary toxic constituent, creosote, was produced by defendant Koppers in Cook County, Illinois;
- BNSF's predecessor in interest, Atchison, Topeka and Santa Fe Railway Company ("ATSF"), was headquartered in Cook County, Illinois and many, if not all, of the material decisions from which Plaintiffs' claims arise were made in Cook County, Illinois;
- Defendants' have failed to "clearly specify" any non-party trial witnesses who would be inconvenienced by trial in Illinois;
- At least four (4) of Plaintiffs' non-party trial witnesses reside in this District, would not appear voluntarily for trial in Texas, and would not be subject to the subpoena power of the Western District of Texas;
- Plaintiffs' choice of forum in Illinois is entitled to substantial deference

- because plaintiff Bullard has resided in Chicago for 46 years;
- The material events underlying both Plaintiffs' claims and Defendants' affirmative defenses occurred in this District and other parts of Illinois;
- Significant sources of evidence are located in this District, in other parts of Illinois, and in nearby states;
- Venue in this District would not impose an undue inconvenience on Defendants because material events occurred at the Koppers and Monsanto plants in Illinois, all Defendants maintain a significant business presence in Illinois, and all Defendants have previously sought relief from Illinois courts;
- The relative congestion of the Courts weighs against transfer because, according to U.S. District Judge Sam Sparks, the Western District of Texas, Austin Division, has "*the heaviest civil docket in the country*";
- This Court is in a better position to apply complex Illinois choice-of-law rules and the common law of other states, if applicable, is neither complex nor unsettled; and
- Even if the *Davis* and *Brinston* actions were still pending in the Western District of Texas, *which they are not*, transfer of this dispute would merely and impermissibly shift inconvenience from Defendants to Plaintiffs and would not promote judicial efficiency.

## ARGUMENT

Defendants do not contend that venue in this District is improper, but instead seek transfer of this case under 28 U.S.C. § 1404(a). This Court has broad discretion to deny Defendants' motion.[1] A decision to deny transfer "involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge."[2] Transfer is not warranted unless the Defendants satisfy their burden to prove that the proposed transferee forum "is *clearly* more convenient."[3] In particular, Defendants must prove that the balance of factors weighs *heavily* in favor of transfer and that transfer will not merely shift inconvenience from one party to another.[4] A defendant's mere allegations will not support transfer of venue; the Court may consider "only undisputed facts presented to the Court by affidavit, deposition, stipulation or

---

[1] *Graham v. United Parcel Service*, 519 F. Supp.2d 801, 809 (N.D. Ill. 2007).

[2] *Id.* (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

[3] *Millennium Prods. v. Gravity Boarding Co.*, 127 F. Supp.2d 974, 980 (N.D. Ill. 2000) (citing *Coffey*, 500 F. Supp.2d at 219-20) (emphasis added). *See also Electroplated Metal Sol'ns v. American Svcs.*, 500 F. Supp.2d 974, 978 (N.D. Ill. 2007); *Cypress Medical Prods. v. Worthington*, 2005 WL 936903 at *3 (N.D. Ill. Apr. 18, 2005) (quoting *Heller Financial v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)).

[4] *Gueorguiev v. Max Rave*, 526 F. Supp.2d 853, 857 (N.D. Ill. 2007); *Howell*, 478 F. Supp.2d at 1021-22.

other relevant documents . . . ."[5]  Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.[6]

Transfer should be denied unless the moving party proves that (1) venue is proper in both the transferor and transferee courts; (2) transfer is for the convenience of the parties and the witnesses; and (3) transfer is in the interest of justice.[7]  The Court must consider the relevant private and public interests in evaluating the requested transfer.  The private interests factors are (1) the availability of compulsory process for the attendance of unwilling witnesses and the convenience of the witnesses; (2) the plaintiffs' choice of forum; (3) the situs of material events; (4) the ease of access to sources of proof; and (5) the convenience of the parties.[8]  The public interest factors are (1) the relative congestion of the Courts' dockets; (2) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; and (3) the court's familiarity with applicable law.[9]

## I.   THE PRIVATE INTEREST FACTORS WEIGH HEAVILY AGAINST TRANSFER.

### A. The Convenience and the Ability to Obtain the Attendance of Non-Party Witnesses Weighs Heavily Against Transfer.

The convenience and the ability to obtain the attendance of non-party witnesses is "the most important factor in the transfer balance."[10]  A defendant seeking transfer "must 'clearly specify the key witnesses to be called' and describe their testimony in a manner that goes beyond vague generalizations."[11]  "The Court will not consider the

---

[5] *Vance v. Rumsfeld*, 2007 WL 2746845 (N.D. Ill. Sept. 19, 2007) (internal quotations omitted).
[6] *Cypress Medical Prods. v. Worthington*, 2005 WL 936903 at *3 (N.D. Ill. Apr. 18, 2005) (citing *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995)).
[7] *Collier v. Murphy*, 2002 WL 31761406 at *2 (N.D. Ill. Dec. 9, 2002) (citing *Coffey*, 796 F.2d at 219).
[8] *Cypress Medical Prods.*, 2005 WL 936903 at *2; *Collier*, 2002 WL 31761406 at *2.
[9] *Cypress Medical Prods.*, 2005 WL 936903 at *2.
[10] *Avesta Sheffield v. Olympic Continental Resources*, 2000 WL 198462 at *6 (N.D. Ill. Feb. 14, 2000) (citing *Brandon Apparel Group v. Quitman Mfg. Co.*, 42 F. Supp.2d 821, 834 (N.D. Ill. 1999)).  See also *Cypress Med. Prods.*, 2005 WL 936903 at *4.
[11] *Vance*, 2007 WL 2746845 at *5 (quoting *Heller Fin., Inc.*, 883 F.2d at 1293); accord *Cypress Med. Prods.*, 2005 WL 936903 at *4; *Avesta Sheffield*, 2000 WL 198462 at *6.

convenience of unidentified witnesses."[12]  Further, a defendant may not rely on alleged inconvenience of a plaintiff's witnesses to support a transfer[13] and "the convenience of witnesses who are employees of a corporate party is less significant than that of non-party witnesses . . . ."[14]  Courts also assign little weight to the location of expert witnesses.[15]

Defendants cannot show that the convenience of witnesses weighs heavily in favor of transfer of this case.  Defendants fail to "clearly specify" or identify *any* of their trial witnesses or provide any information regarding their expected testimony. (Def. Mot. at 12.)   The only witnesses even vaguely mentioned by Defendants are "[e]xperts" and Plaintiffs' witnesses (*i.e.,* "Plaintiffs' treating physicians"), none of which supports Defendants' requested transfer.[16]

Transfer of this case, however, would not only inconvenience Plaintiffs' key non-party witnesses, it would prevent Plaintiffs' from compelling the witnesses' attendance at trial.  Four of Plaintiffs' currently-identified, non-party trial witnesses, all formerly employed by one of the defendants, reside in this District and would provide testimony critical to both Plaintiffs' claims and the defeat of Defendants' affirmative defenses:

---

[12] *Brandon Apparel Group*, 42 F. Supp.2d at 834 (citing *Vandeveld*, 877 F. Supp. at 1168).
[13] *Sun Oil Co. v. Lederle*, 199 F.2d 423, 424 (6th Cir. 1952).
[14] *Millennium Prods.*, 127 F. Supp.2d at 980.  *Accord AHP Systems, Inc. v. Cullman Ventures, Inc.*, 1997 WL 779108 at *3 (N.D. Ill. Dec. 10, 1997) ("[A]s party employees there is a strong presumption that they will be available wherever this case tried.").
[15] *Applied Web Systems, Inc. v. Catalytic Combustion Corp.*, 1991 WL 70893 at *5 (N.D. Ill. Apr. 29, 1991); *Ragold, Inc. v. Ferrero, U.S.A., Inc.*, 506 F. Supp. 117, 121 (N.D. Ill. 1980).
[16] *E.g., Applied Web Systems, Inc.*, 1991 WL 70893 at *5; *Ragold*, 506 F. Supp. at 121 ("[T]he convenience of experts is irrelevant in determining the propriety of transfer . . . ."); *Sun Oil*, 199 F.2d at 424 ("[I]nconvenience to the defendant is not established by citing the number of witnesses for the plaintiff who live outside the district where the suit was begun . . . .").

| Witness | Title | Location | Anticipated Testimony |
|---|---|---|---|
| Robert D. Krebs | Former Chairman, President & CEO ATSF (Ex. 1.) | Lake Forest, IL 60045 (Ex. 2.) | Mr. Krebs's possesses significant information regarding the environmental and regulatory implications of ATSF's operation of the Somerville facility and the reasons for its sale to Koppers in 1995. Mr. Krebs also possesses information regarding the allocation between ATSF and Koppers of liability and responsibility for toxic exposures at the Somerville facility. |
| Gus Svolos | Former Vice-President for Legal Affairs ATSF | Lisle, IL 60532 (Ex. 3.) | Mr. Svolos has significant information regarding the lack of disclosure to employees of the Somerville facility of the harmful effects of chemicals used in that facility and the disparity of such disclosure when compared to those made by ATSF to similarly situated employees in Illinois and California. (Ex. 4.) |
| Raja K. Khuri, M.D. | Former Chief Medical Officer ATSF | Chicago, IL 60606 (Ex. 5.) | Same. (Ex. 4.) |
| Karen Boyce-Lindgren | Manager ENVIRON | Chicago, IL 60631 (Ex. 6.) | Plaintiffs believe that Ms. Boyce-Lindgren served as a contractor for BNSF, consulting on issues relating to environmental remediation of sites owned or operated by BNSF or its predecessors, including Somerville. She will testify regarding the existence, identity, nature, concentration, and effects of harmful chemicals at Somerville and/or similar sites. |

Many other former employees of Koppers, ATSF, and BNSF with critical information also reside in this District. Before the merger forming BNSF, ATSF maintained its corporate headquarters in Cook County. (Ex. 7.) In addition, Koppers and BNSF operated adjoining facilities in Galesburg, Illinois, and, according to the EPA, contaminated the surrounding aquifer with creosote and PCP. (Ex. 8.) Considering the similarity of the Somerville and Galesburg contaminations and the disclosure policies discussed by Mr. Svolos and Dr. Khuri, many other former Illinois employees of Koppers and BNSF will serve as trial witnesses.

All these witnesses are outside of the subpoena power of the Western District of Texas and, because of their affiliation with Defendants, are unlikely to appear at trial in

5

Texas.[17] Accordingly, this factor weighs heavily against transfer.

### B. Plaintiffs' Choice of Forum Weighs Heavily Against Transfer.

"It has long been held that 'the plaintiff's choice of forum should rarely be disturbed.'"[18] This rule applies with particular force when a plaintiff resides in her chosen forum,[19] even if some of the events underlying the plaintiff's claims occurred outside the forum.[20]

This Court should defer to Plaintiffs' choice of forum. This District has been Plaintiff's residence for 46 years. (Ex. 9.) Further, despite Defendants' contentions, the material events underlying Plaintiffs' claims occurred in this District and in Illinois. Plaintiffs' claims include negligence, strict liability, and trespass arising from (1) Koppers's and BNSF's use of toxic chemicals manufactured in and shipped to Koppers's Stickney Plant in Cicero, Cook County ("Cook County Plant"), (Compl. ¶ 3.2); (2) Monsanto's, Dow's, and Vulcan's supply and sale of toxic chemicals, including pentachlorophenol (PCP), to the Cook County Plant for use in Koppers's railroad products, (Compl. ¶ 3.16); and (3) the policy decisions made by BNSF's predecessor in interest, ATSF, in Cook County. (Compl. ¶ 1.2.) In particular, Plaintiffs allege that the chemicals supplied by Monsanto, Dow, and Vulcan to the Koppers Cook County Plant "were in a defective condition which rendered the chemicals unreasonably dangerous" at "the time the chemicals left the control of [these defendants.]" (Compl. ¶ 4.3.) Plaintiffs also allege that Monsanto, Dow, and Vulcan manufactured these products and

---

[17] *Safe Bed Technologies Co. v. KCI USA Inc.*, 2002 WL 1769991 (N.D. Ill. July 31, 2002) (Ashman, Mag. J.) (inability to compel testimony of witnesses in transferee forum disfavors transfer); *Applied Web Systems, Inc.*, 1991 WL 70893 at *5 ("Obviously, the live testimony of material non-party witnesses is preferred.").

[18] *Vance*, 2007 WL 2746845 at *4 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

[19] *Vance*, 2007 WL 2746845 at *4; *Collier*, 2002 WL 31761406 at *3; *Brandon Apparel Group*, 42 F. Supp. at 833.

[20] *Electroplated Metal Soln's, Inc.*, 500 F. Supp.2d at 978; *Cypress Med. Prods.*, 2005 WL 936903 at *3; *Collier*, 2002 WL 31761406 at *3; *Brandon Apparel Group*, 42 F. Supp. at 833 (plaintiff's choice of forum is entitled to deference because it "is the situs of *some* of the material events in this case") (emphasis added).

delivered them to the Cook County Plant without adequately testing the chemicals for contamination or providing adequate warnings or instructions. (Compl. ¶ 3.16.)

Koppers admits that it manufactured creosote and other chemicals at its Cook County Plant and shipped these chemicals for use at the Somerville facility.[21] BNSF's predecessor in interest, ATSF, made many, if not all of the policy decisions underlying the Plaintiffs' claims at its corporate headquarters in Cook County. (Ex. 7.) Evidence also shows that Monsanto or its predecessors manufactured "Penta"–a brand of PCP that Plaintiffs believe was used at the Cook County Plant–at Monsanto's W.G. Krummrich Plant in Sauget, Illinois. (Ex. 10.) Koppers and Monsanto also gathered significant information concerning the dangers of creosote and PCP at their respective plants in Cook County and Sauget, Illinois. Consequently, conduct concerning Defendants' negligent design, negligent manufacture, sale, placement into the stream of commerce, distribution, shipment, delivery, failure to test, and processing of the toxic chemicals that harmed Plaintiffs and Defendants' failure to provide adequate warnings and instructions all occurred in this District or in Sauget, Illinois. In addition, at least one plaintiff has suffered injury and harm in this District. (Ex. 9.)

The material events from which Defendants alleged affirmative defenses arise also occurred in this District.[22] Monsanto, Dow Chemical, and Vulcan claim that they (1) delivered their PCP products with all required warnings; (2) delivered their PCP products with labels approved under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) and the Federal Hazardous Substances Act (FHSA); and (3)

---

[21] (Koppers Ans. ¶¶ 3.1-3.2 ("Koppers admits that it has used at the Somerville facility creosote preservatives which were delivered from a separate facility located in Cook County."); see also Ex. 11.)

[22] *Safe Bed Technologies Co.*, 2002 WL 1769991 at *4 (defendant's assertion of affirmative defenses "reinforces this litigation's connection to Illinois"); *Abbott Laboratories v. Zenith Laboratories, Inc.*, 1995 WL 117984 at *4 (N.D. Ill. Mar. 16, 1995) (plaintiff's choice of forum entitled to deference because defendant's defenses relate to Illinois) (citing *Aptargroup, Inc. v. Summit Packaging Systems, Inc.*, 1994 WL 589540, at *2 (N.D. Ill. Oct. 21, 1994)).

provided adequate warnings regarding their products to sophisticated intermediaries.[23] These defenses rely upon the conduct of Defendants in this District–*i.e.*, the transmission of labels and warnings upon delivery of the PCP to the Cook County Plant–and on the sophistication and other characteristics of Koppers and its Cook County personnel.

Monsanto, Dow Chemical, and Vulcan also claim that the entity that purchased their PCP, (*i.e.*, Koppers Cook County Plant), modified their products, causing Plaintiffs' damages. (Monsanto Aff. Def. No. 25; Dow Aff. Def. No. 10; Vulcan Aff. Def. No. 13.) To support their defenses, Defendants must show that the processes and policies employed at the Cook County Plant materially modified the PCP to a form that injured Plaintiffs.

Monsanto and Vulcan also assert the "bulk sale" defense, claiming that they provided their PCP products to "intermediaries"–*i.e.*, the Koppers Cook County Plant– with adequate warnings. (Monsanto Aff. Def. Nos. 36 & 42; Vulcan Aff. Def. No. 24.) Again, these defenses rely on the nature of Defendants' sale and delivery of products to the Cook County Plant, and the delivery and content of warnings provided by Defendants to Koppers at the Plant.

Monsanto also alleges that it manufactured PCP consistent with the available technological, medical, scientific, and industrial state of the art, (Monsanto Aff. Def. Nos. 19 & 21), and that it did not know of the dangerous characteristics of PCP that caused Plaintiffs' damages, (Monsanto Aff. Def. No. 20.) Koppers claims that punitive damages are barred because its conduct was not knowing or grossly negligent. (Koppers Aff. Def. No. 11.) These defenses rely upon the processes used by Monsanto and Koppers for production of their respective chemicals in Sauget and Cook County, Illinois; medical, scientific, and safety information gathered by Monsanto and Koppers

---

[23] (Monsanto Aff. Def. Nos. 22, 24, 36 & 38; Dow Aff. Def. Nos. 2 & 9; Vulcan Aff. Def. Nos. 15 – 17, 19.)

in these locations during production; and the experiences of Monsanto and Koppers personnel in Illinois during production.

Accordingly, this factor weighs heavily against transfer.

### C. The Situs of Material Events Weighs Against Transfer.

Defendants incorrectly claim that transfer is warranted because Plaintiffs' claims arise solely out of their alleged exposure to the Somerville facility and the Defendants' conduct in operating that facility. (Def. Mot. at 11.) Contrary to Defendants' claim, the mere occurrence of some material events in the proposed transferee forum does not warrant transfer.[24] As shown above, although Plaintiffs were exposed to Defendants' chemicals at the Somerville facility, Plaintiffs' claims and Defendants' defenses arise from conduct in this District or Sauget, Illinois. Accordingly, this factor weighs against transfer.

### D. The Ease of Access to Sources of Proof Does Not Favor Transfer.

Defendants claim that transfer is warranted because "[m]ost of the key litigation documents likely reside in Somerville or Austin . . . ." (Def. Mot. at 12.) Defendants are mistaken in both law and fact. First, a defendant seeking transfer must provide specific details showing that it would be unduly burdensome or impractical to produce

---

[24] *Electroplated Metal Soln's, Inc.*, 500 F. Supp.2d at 978 (transfer unwarranted even though "[e]vents material to this dispute occurred in both fora"); *Cypress Med. Prods.*, 2005 WL 936903 at *3 (transfer unwarranted even though defendant negotiated and signed contract in California, worked in California, and subject customers and sales samples were located in California); *Collier*, 2002 WL 31761406 at *3; *Brandon Apparel Group*, 42 F. Supp. at 833 (plaintiff's choice of forum is entitled to deference because it "is the situs of *some* of the material events in this case") (emphasis added).

Defendants' claim that "district courts in the Seventh Circuit consistently transfer venue to the district in which injury allegedly occurred" is both misleading and unavailing. (Def. Mot. at 11.) Unlike this case, none of the cases cited by Defendants involved (1) claims by residents of the original forum; (2) a significant number of non-party witnesses residing in the forum who would be beyond the subpoena power of the proposed transferee court; or (3) material events underlying the claims and defenses that both occurred in the forum and arose out of the conduct of defendants in the forum. *Great West Casualty Co. v. Dekeyser Express, Inc.*, 2005 WL 2861074, at *4-6 (N.D. Ill. Oct. 31, 2005) (no material event occurred in the forum; neither plaintiff nor non-party witnesses resided in the forum); *Marsical v. Anderson*, No. 02-C-7926, Mem. Op. & Order at 4 – 7 (N.D. Ill. Aug. 28, 2003) (same); *Rosenbalm v. Penteck Corp.*, 1992 WL 26930, at *1 (N.D. Ill. Jan. 31, 1992) (no material event occurred in the forum; plaintiff did not reside in the forum; only one medical witness and one expert witness resided in the forum); *Crater v. Lane*, 1988 WL 8978, at *2-3 (N.D. Ill. Feb. 1, 1988) (same).

evidence in the plaintiff's chosen forum.[25] The location of documents "is not a weighty concern in the transfer analysis" because "each party can efficiently transport to this district those documents necessary for trial."[26] In this case, Defendants have failed to show that transporting documents to this District would impose an undue burden. Indeed, upon information and belief, many, if not all, of Koppers's and BNSF's documents currently in Texas came from either Cook County or Pittsburgh (Koppers's headquarters). Moreover, with current technology, tens of thousands of pages of documents can be stored and shipped on a single DVD.

Second, significant documentary and other evidence regarding Plaintiffs' claims is located in this District, in Sauget, Illinois, in Midland, Michigan, and in St. Louis, Missouri, and would be equally difficult to transport to Texas. Evidence concerning the manufacture, processing, chemical makeup, shipping, and medical and safety hazards of creosote used at the Somerville facility is located at the Cook County Plant. ATSF, the predecessor in interest of BNSF, made many, if not all of the policy decisions underlying the Plaintiffs' claims at its corporate headquarters in Cook County, (ex. 7), and BNSF still maintains a corporate office there. (Ex. 12.) Evidence concerning Monsanto's, Dow's, and Vulcan's delivery and sale of PCP to Koppers, including related warnings, also is at the Cook County Plant. Evidence concerning the manufacture, processing, sale, delivery, composition, medical and safety hazards, and warnings and instructions regarding PCP sold by Monsanto to Koppers is located at the Krummrich Plant in Sauget, Illinois and at Monsanto's headquarters in St. Louis, Missouri. Dow Chemical's headquarters and its H&ES/Epidemiology Department in Midland, Michigan, also have evidence concerning the production of PCP, its health

---

[25] *Ty, Inc. v. Collett*, 199 WL 300290, at *5 (N.D. Ill. May 6, 1999).
[26] *Vance*, 2007 WL 2746845, at *5 (internal quotations omitted). In cases involving parties located in several different states, documents will need to be photocopied and transported regardless of which forum is chosen. *See Aptargroup, Inc.*, 1994 WL 589540, at *2.

and safety characteristics, and related warnings and instructions. (Exs. 13 & 14.) Accordingly, this factor does not favor transfer.

### E. The Convenience of the Parties Weighs Heavily Against Transfer.

Contrary to Defendants' claim that "the Western District of Texas would actually be more convenient than the current venue for Plaintiffs as well as Defendants," (Def. Mot. at 11), the most convenient venue for all Plaintiffs is in Cook County, where Plaintiffs filed their Complaint, in the Northern District of Illinois.[27] In addition, Chicago is plaintiff Bullard's residence and, because of her current health condition, transfer of this matter to Texas would impose an undue burden on her. (Ex. 9.)

Moreover, Monsanto, Dow Chemical, Koppers, and Vulcan are all headquartered outside of Texas. ATSF, BNSF's predecessor in interest, made most if not all policy decisions underlying Plaintiffs' claims from its headquarters and principal place of business in Cook County, (ex. 7), and BNSF still maintains a corporate executive office in there. (Ex. 12.)

Several employees of Defendants who will be involved in this litigation also are located in this District. Richard E. Weicher, former General Counsel of ATSF and current Vice President & General Counsel of BNSF, still maintains his office in this District. (Exs. 15 & 12.)[28] Other witnesses include Richard W. Wagner, the Cook County Plant Manager; James Evans, the Plant Manager for the Koppers plant in Galesburg, Illinois (where Koppers and BNSF previously caused creosote and PCP contamination); and other employees from both plants. (Exs. 11 & 16.)[29]

---

[27] *Graham v. United Parcel Service*, 519 F. Supp.2d 801, 810 (N.D. Ill. 2007).

[28] Mr. Weicher's previous roles with ATSF indicate that he will have significant information regarding (1) the environmental and regulatory implications of ATSF's operation of the Somerville facility before its sale to Koppers in 1995; and (2) the allocation between ATSF and Koppers of responsibility for toxic exposures at the facility.

[29] Mr. Wagner and other Plant employees have information regarding the Plant's processes, its use of PCP from Monsanto, Dow Chemical, and Vulcan, the shipment of chemicals from Cook County to the Somerville facility, delivery and content of warnings and labels, the sophistication of the Plant personnel, the nature of sales and deliveries of chemicals to the Cook County Plant, and medical,

Defendants' claim of inconvenience also fails because they maintain locations in Illinois[30] and have sought relief from the courts of Illinois on previous occasions.[31] Accordingly, this factor weighs heavily against transfer.

As shown above, the convenience and ability to obtain the attendance of non-party witnesses, Plaintiffs' choice of forum, the situs of material events, and the convenience of the parties weigh heavily against transfer. In addition, the ease of access to sources of proof does not favor transfer. This Court, therefore, should deny Defendants' Motion to Transfer Venue.

## II.   THE PUBLIC INTEREST FACTORS WEIGH AGAINST TRANSFER.

### A. The Relative Congestion of the Courts Does Not Favor Transfer.

The respective median time intervals from filing to disposition of civil cases in this District and the Western District of Texas are 7.6 months and 8.1 months. For cases resolved by the court before pretrial, the respective median time intervals are 6.4 months and 8.2 months. For cases resolved by the court during or after pretrial, the respective median time intervals are 12.2 months and 15.0 months.[32] According to U.S.

---

scientific, and safety information gathered by Koppers in Illinois. Mr. Evans and other Plant employees will have information regarding Koppers and BNSF's knowledge of the harmful effects of creosote and PCP. According to the U.S. Environmental Protection Agency (EPA), Koppers treated railroad ties on the Galesburg site, which was owned by Burlington Northern Railroad, and contaminated the surrounding aquifer with creosote and PCP. (Ex. 8.) Because of the similarity of this contamination to the contamination that injured Plaintiffs, Plaintiffs will require the testimony of many additional witnesses in Cook County and other parts of Illinois.

[30] Koppers maintains plants in Cook County and Galesburg, Illinois. Monsanto maintains 23 locations in Illinois, including Chicago. (Ex. 17.) BNSF maintains several locations in Galesburg, Bridgeport, Mount Carroll, and Chillicothe, Illinois. (Ex. 18.) Dow Chemical maintains at least three separate locations in Illinois and its corporate headquarters and epidemiology division in Midland, Michigan. (Ex. 19.) Vulcan's Midwest Division is headquartered in Lombard, Illinois and Vulcan operates at least 20 different locations in Illinois. (Ex. 20.)

[31] *AHP Systems, Inc.*, 1997 WL 779108, at *2 ("[B]ecause defendant operates in at least eleven states throughout the country and has sought redress in the courts of Illinois on previous occasions, it is difficult for it to claim significant inconvenience regarding this suit."). Koppers has appeared as a plaintiff in at least five (5) Illinois suits; BNSF has appeared as a plaintiff in at least 15 Illinois suits; Monsanto has appeared as a plaintiff in at least nine (9) Illinois suits; Dow Chemical has appeared as a plaintiff in at least three (3) Illinois suits; and Vulcan has appeared as a plaintiff in at least 23 Illinois suits. (Ex. 21.)

[32] Table C-5, U.S. District Courts–Median Time Intervals from Filing to Disposition of Civil Cases Terminated, Federal Judicial Caseload Statistics (2007), *available at* http://www.uscourts.gov/caseload2007/tables/C05Mar07.pdf.

12

District Judge Sam Sparks, the Western District of Texas, Austin Division, has "the *heaviest civil docket in the country.*" (Ex. G at 6, Def. Mot. (emphasis added).) Indeed, before the *Davis* plaintiffs voluntarily dismissed their claims, Judge Sparks stated that he would transfer the claims to another jurisdiction on plaintiffs' request. (*Id.* at 23-24.) Accordingly, this factor weighs against transfer.

### B. The Local Interest in Adjudicating This Dispute Does Not Favor Transfer.

Illinois courts have an interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.[33] This interest also exists when Illinois is the situs of material events underlying the claims and defenses in the case. The existence of an interest of another state in the dispute does not vitiate Illinois's interest.[34]

In this case, plaintiff Virda Bell Bullard, a resident of Cook County for 46 years, is seeking redress for conduct by out-of-state actors, Koppers, BNSF, Monsanto, Dow, and Vulcan. (Ex. 9.) Defendants committed material tortious conduct at the Koppers Cook County Plant, apparently repeating conduct that also had occurred at the Koppers Plant in Galesburg, Illinois. (Ex. 8.) Conduct underlying the claims against Monsanto also occurred in Illinois. (Ex. 10.) Although Texas also might have an interest in this dispute, that interest does not negate the significant interest of Illinois. Accordingly, this factor does not favor transfer.

### C. The Courts' Familiarity With Applicable Law Does Not Favor Transfer.

Defendants contend that transfer is appropriate because the court in the Western District of Texas would likely be more familiar with the Texas law to be applied to Plaintiffs' claims. (Def. Mot. at 3 & 13.) Defendants' contention is incorrect for several reasons.

---

[33] *Tranzact Technologies v. 1source Worldsite*, 2002 WL 122515, at *6 (N.D. Ill. Jan. 30, 2002).
[34] *Brandon Apparel Group*, 42 F. Supp.2d at 835.

Defendants' claim that Texas law applies to all issues in this case is unfounded. This case involves parties from Illinois, Michigan, Pennsylvania, Missouri, Alabama, California, Arizona, Louisiana, and Texas. Material events underlying the claims and defenses in this matter, occurred in Illinois and these other states. Illinois courts apply the Restatement (Second) of Conflict of Laws to determine choice of law, which subjects each issue in the case to a separate conflicts analysis.[35] Thus, although Plaintiffs believe that Illinois law likely applies to their claims, this determination cannot be made simultaneously for all issues and cannot be made definitively for any single issue until an actual conflict is identified.[36] Consequently, this Court should reject Defendants' contention that Texas law applies to Plaintiffs' claims.

Moreover, Plaintiffs merely assert standard common-law claims for negligence, strict liability, and trespass. When the substantive law at issue is neither complex nor unsettled, a court's familiarity with a particular state's law is not a significant concern in the transfer analysis.[37] Indeed, in this case, Illinois's choice of law principles are far more complex than the common law of the several states that might apply. Given that the law of the transferor court–*i.e.*, Illinois's choice-of-law rules–will continue to apply even if the case is transferred,[38] transfer is disfavored because this Court will be better able to apply Illinois choice-of-law rules than the court in Texas.[39]

Further, transfer of this matter to Texas would not result in judicial efficiencies. Neither the *Davis* nor the *Brinston* matter is pending. The *Davis* plaintiffs voluntarily dismissed their property claims without prejudice in 2005. The court for the Western

---

[35] *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 900-01 (Ill. 2007) ("[T]he Second Restatement authorizes the process of *depecage*, which refers to a process of cutting up a case into individual issues, each subject to a separate choice of law analysis.").

[36] *Id. See also Brandon Apparel Group*, 42 F. Supp.2d at 835 ("Without a meaningful analysis of the choice-of-law issue, the court cannot determine which state's law would apply.").

[37] *Sitrick v. Freehand Systems, Inc.*, 2003 WL 1581741, at *6 (N.D. Ill. Mar. 27, 2003); *Brandon Apparel Group*, 42 F. Supp.2d at 835.

[38] *Coffey*, 796 F.2d at 221.

[39] *Aldridge v. Forest River, Inc.*, 436 F. Supp.2d 959, 962 (N.D. Ill. 2006).

District of Texas dismissed without prejudice the *Brinston* class property claims on justiciability grounds.[40]  Transfer would be unwarranted even if similar claims were pending in the Western District of Texas.  As this Court has noted, "[e]ven were we to assume that consolidation of the cases is likely, that would not tip the balance in favor of transfer."[41]  Transfer of this matter would impermissibly shift the balance of inconvenience from Defendants to Plaintiffs by forcing them to lump their claims into a separate case.[42]  Similarly, conjecture about anticipated litigation in the Western District of Texas does not favor transfer.[43]  Accordingly, this factor does not favor transfer.[44]

Overall, both the private and public interest factors in this litigation weigh heavily against transfer of this case.  Defendants, therefore, have failed to satisfy their burden to prove that the Western District of Texas is "clearly more convenient" that this District for trial of this matter.  Accordingly, this Court should deny Defendants' Joint Motion to Transfer Venue.

## CONCLUSION AND PRAYER

For the foregoing reasons, this Court should deny Defendants' Joint Motion to Transfer Venue.

---

[40] (Ex. H, Def. Mot.; Ex. 22.) Additionally, the Western District of Texas did not address the substantive allegations asserted by Plaintiffs in this action in the *Davis* or *Brinston* cases.  Instead, in *Davis*, the court merely ruled on procedural issues regarding management of the class action and mass action claims. (Ex. G at 3, Def. Mot.)  In *Brinston*, the court merely ruled on justiciability of claims asserted by property owners. (Ex. 22.) Moreover, both the *Davis* and *Brinston* actions involved claims for property damage, which Plaintiffs do not assert here. (Exs. A & I, Def. Mot.)

[41] *Armament Systems and Procedures, Inc.*, 2002 WL 31056735, at *4.

[42] *Id.*

[43] *Vance*, 2007 WL 2746845, at *6.

[44] Defendants' attempt to characterize Plaintiffs' suit as so-called "forum shopping" is incorrect and, in all events, does not favor transfer of this matter.  "Plaintiffs 'are the master[s] of the complaint, and this includes the choice of where to bring suit' and who to sue." *Vance*, 2007 WL 2746845, at *6 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002)).

15

                              Respectfully submitted,

                              By: \s\ David S. Jasmer

                              DAVID S. JASMER, LLC
                              111 W. Washington Street
                              Suite 1150
                              Chicago, Illinois 60602
                              (312) 782-6344
                              Fax: (312) 372-1974

                              **ATTORNEY FOR PLAINTIFFS**

OF COUNSEL:

James L. "Larry" Wright
Christopher V. Goodpastor
Watts Law Firm, LLP
111 Congress Avenue, Suite 1000
Austin, Texas 78701
(512) 479-0500
Fax: (512) 473-0328

Grover G. Hankins
The Hankins Law Firm
440 Louisiana Street, Suite 725
Houston, Texas 77002
(713) 292-2720
Fax: (713) 236-7731

Dwight E. Jefferson
Dwight E. Jefferson, P.L.L.C.
405 Main Street, Suite 950
Houston, Texas 77002
(713) 222-1222
Fax (713) 222-1223

## CERTIFICATE OF SERVICE

     I, David Jasmer, an attorney, state that I have served true and correct copies of the foregoing *Opposition to Defendants' Joint Motion to Transfer Venue* upon all attorneys of record through the Court's CM/ECF system.

                                        /s/David S. Jasmer