**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VIRDA BELL BULLARD; et. al.** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 07-C-6883 |
| | ) | |
| **BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY; KOPPERS INDUSTRIES, INC.; MONSANTO COMPANY; DOW CHEMICAL COMPANY; AND VULCAN MATERIALS COMPANY** | ) | Judge Kennelly<br><br>Magistrate Judge Ashman |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE**

**INTRODUCTION**

On December 13, 2007, Defendants filed a joint motion to transfer venue (the "Motion"), pursuant to 28 U.S.C. § 1404(a), to the Western District of Texas, Austin Division. In that Motion, Defendants demonstrated that this litigation centers almost exclusively in the Western District of Texas. In their Response to the Motion, Plaintiffs make a disingenuous effort to suggest that this case is really all about alleged conduct and injuries in the Northern District of Illinois. Plaintiffs would have this Court ignore the fact that all of them are current or former residents of Somerville, Texas who allege that they were exposed in Texas to chemicals allegedly emanating from a wood treatment plant (the "Texas Plant") in Texas. They offer a litany of allegations that purportedly tie this case to the Northern District, but, as explained further below, those superficial allegations fall apart under even a cursory examination. For these reasons and the reasons explained more fully below, Defendants respectfully request that

the Court transfer this case to the Western District of Texas, Austin Division pursuant to 28 U.S.C. 1404(a).

## ARGUMENT

### I. THIS CASE BEARS VERY LITTLE, IF ANY, CONNECTION TO ILLINOIS OR THIS DISTRICT

Plaintiffs' attempt to connect this case to Illinois is misleading, unsupported by the facts, and belied by their own allegations. First, Plaintiffs claim that the wood preservatives used at the Texas Plant were produced by Koppers Inc. ("Koppers") at a plant in Cicero, Illinois (the "Stickney Plant"). (*See* Response at 1). In their Complaint, Plaintiffs further allege that the "operative time period" is "1905 to the present," and they specifically claim exposure to toxic chemicals used at the Texas Plant beginning in February 1906. (*See* Complaint at ¶¶ 3.3, 3.17). Koppers, however, only acquired the Texas Plant in 1995, and there is no evidence to suggest that it received shipments of any wood preservatives from the Stickney Plant before 1996, or that creosote was shipped to the Texas Plant from Stickney before 1996. (*See* Affidavit of David Shaw ("Shaw Aff."), a copy of which is attached as Exhibit A, at ¶¶ 2, 8; Affidavit of Michael J. Mancione ("Mancione Aff."), a copy of which is attached as Exhibit B, at ¶ 11). Before 1997, Koppers received creosote preservatives from a facility in Houston, Texas. (Shaw Aff., Ex. A, at ¶ 9).

Furthermore, most people rarely, if ever, come into contact with liquid creosote. This wood preservative, which is approved and regulated by the EPA, can only be handled and applied by licensed applicators, such as those individuals employed by Koppers at the Texas Plant. There are no allegations that any Plaintiff was somehow inappropriately exposed to liquid creosote prior to treatment in Texas.

Second, Plaintiffs claim that Defendants Dow, Monsanto, and Vulcan each supplied pentachlorophenol ("PCP") to the Stickney Plant for use in the wood preservatives to which they were allegedly exposed. (*See* Response at 6). This rank speculation is belied by the facts. There is no evidence in this case that Dow, Monsanto or Vulcan delivered PCP to the Stickney Plant. In fact, Dow, Monsanto, and Vulcan did not ship any PCP to the Stickney Plant between at least 1972 and the present or during the period when Koppers shipped creosote preservatives from the Stickney Plant to the Texas Plant. (*See* Affidavit of John M. Floyd ("Floyd Aff."), a copy of which is attached as Exhibit C; Affidavit of Robert G. Kaley II, Ph.D. ("Kaley Aff."), a copy of which is attached as Exhibit D, at ¶ 4; Affidavit of Ellen J. Burchfield ("Burchfield Aff."), a copy of which is attached as Exhibit E, at ¶ 4). Moreover, Koppers has never manufactured or used PCP at the Stickney Plant, sold or otherwise distributed PCP from the Stickney Plant to other locations, or mixed PCP with creosote preservatives at the Stickney Plant. (*See* Mancione Aff., Ex. B, at ¶¶ 6-9). Also, Koppers has never received shipments of PCP at the Texas Plant or used PCP either as a direct wood treatment preservative or as a component of creosote preservatives at the Texas Plant. (*See* Shaw Aff., Ex. B, at ¶¶ 6-7). In short, contrary to Plaintiffs' speculation, PCP has nothing to do with Defendants' alleged conduct in Illinois.

Third, Plaintiffs repeatedly claim that one Plaintiff – Virda Bell Bullard – has been a resident of Illinois for 46 years and would not be able to participate in a case in the Western District of Texas because of her "current health condition." (*See* Response at 6, 11). Plaintiffs fail to note that Ms. Bullard is currently a Plaintiff in an almost identical action pending in the District Court for Tarrant County, Texas – *Hensen v. Burlington Northern Santa Fe Railway Company*, Cause No. 096-212936-05.[1] (*See* Original Petition in Intervention, a copy of which is

[1] Aside from David Jasmer, all of the Plaintiffs' attorneys in this case are currently counsel of record for Ms. Bullard and more than 90 other plaintiffs in the Hensen litigation.

attached as Exhibit F). Along with 77 of the Plaintiffs in this action, Ms. Bullard intervened in the Hensen litigation nearly five months before the filing of this action, and she remains a plaintiff in the Hensen litigation today.

In any event, if the Court accepts Ms. Bullard's claim as true, then Ms. Bullard could not have been exposed to any alleged toxic chemicals from the Texas Plant since 1962. Koppers did not acquire the Texas Plant until 1995, so Ms. Bullard has no viable claim against Koppers.[2] Clearly, Plaintiffs' counsel have asserted claims against Koppers on behalf of Ms. Bullard for no purpose other than to force Defendants to litigate the remaining 143 foreign Plaintiffs' claims in Illinois.

Plaintiffs say nothing about the other 143 Plaintiffs in this case because most, if not all of them, currently reside in Texas. In fact, the 77 Plaintiffs who are also parties to the Hensen litigation and are identified there as "citizens of Texas." (*See* Ex. F at ¶ 2.1). Similarly, 105 of the Plaintiffs were identified as current Texas residents in plaintiffs' witness disclosures in yet another related action pending in Tarrant County – *Faust v. BNSF Railway Company*, No. 096-212928-05.[3] (*See* Sixth Amended Responses to Request for Disclosure and Expert Designation, a copy of which is attached as Exhibit G).

Fourth, Plaintiffs identify four purported "non-party witnesses" that reside in the Northern District of Illinois. (*See* Response at 1, 4-5). At least one of those witnesses – Raja K. Khuri – has been identified as an expert by the Faust plaintiffs and is therefore unlikely to be a non-party witness as Plaintiffs assert. (*See* Ex. G at 26). It is also unlikely that Dr. Khuri or Gus

[2] Plaintiffs also claim that Ms. Bullard has "suffered injury and harm in this district," but provide no evidence to support this assertion. (*Id.* at 7). Ms. Bullard, like the other Plaintiffs, alleges injuries as a result of purported exposure to chemicals from the Texas Plant. Her alleged exposure, if any, would have occurred entirely within Somerville and the Western District of Texas, not this District.

[3] The Faust plaintiffs are represented by Jared R. Woodfill, who also represents the original plaintiffs in the Hensen litigation along with the same attorneys who represent the Plaintiffs in this action.

Svolos would have knowledge that is relevant to this case. Dr. Khuri is a former medical director of ATSF who was responsible for implementing an industrial hygiene program for ATSF workers. He visited the Texas Plant on only two occasions more than 25 years ago, and he recalls very little about those visits or his own involvement with the industrial hygiene program. (*See, e.g.*, Deposition of Raja Khuri, M.D., a copy of which is attached as Exhibit H, at 13-17, 21-25, 34-35, 40-42, 44-45, 52-55, 80-94). Since Plaintiffs have not brought any FELA claims in this case, Dr. Khuri's testimony is irrelevant. Similarly, Plaintiffs identify Mr. Svolos as a witness with knowledge of the "disparity" between ATSF disclosures to employees at the Texas Plant and employees at other plants. (*Id.*). His testimony would also have little relevance in a case like this that does not involve FELA claims.

Moreover, Plaintiffs neglect to mention or identify the thousands of non-party Somerville residents and former workers at the Texas Plant, many of whom are clients of their counsel, who have previously been disclosed as witnesses with relevant knowledge. Indeed, the Faust plaintiffs identified nearly 1,800 such non-party Texas witnesses and less than 5 Illinois witnesses, including Ms. Bullard. (*See* Ex. G).

Fifth, Plaintiffs claim that because BNSF's predecessor in interest, ATSF, was headquartered in Cook County, Illinois, "many, if not all, of the material decisions from which Plaintiffs' claims arise were made in Cook County, Illinois." (Response at 1). ATSF is not a party to this lawsuit, and its former corporate headquarters have no bearing on the determination of the more convenient venue. BNSF's headquarters are in Fort Worth, Texas, and any information about the "material decisions" made by its predecessor would reside there. (*See* Affidavit of Karen McKee ("McKee Aff."), a copy of which is attached as Exhibit I, at ¶ 5).

Finally, Plaintiffs speculate that operations by Koppers and BNSF in Galesburg, Illinois could somehow be a source of evidence and witnesses in this case. (*See* Response at 5). First, Galesburg is in the Central District of Illinois, not this District, so any witnesses or evidence that reside there would still not make venue more convenient in this District. Second, the Galesburg plant has absolutely nothing to do with this case. Plaintiffs allege that they were exposed to toxic chemicals in Somerville, Texas, not Galesburg, Illinois, and Plaintiffs offer nothing to support their bare assertion that evidence relating to the Galesburg plant would be relevant here. The Texas Plant reports directly to Koppers' corporate headquarters in Pittsburgh, Pennsylvania, and personnel working at the Galesburg plant are not and have never been responsible for supervising or otherwise monitoring operations at the Texas Plant while employed at the Galesburg plant. (*See* Shaw Aff. at ¶ 5).

Plaintiffs' attempt to use these tenuous, often incredible connections to justify this District as a more convenient venue only serves to reinforce the reality that this is a Texas case involving alleged exposure and injuries that purportedly occurred entirely within the Western District of Texas.

## II. THE PRIVATE FACTORS WEIGH IN FAVOR OF TRANSFER

### A. Texas Is The Site Of All Material Events In This Case

Plaintiffs' personal injury claims arise solely out of their alleged exposure to chemical constituents purportedly emanating from the Texas Plant and Defendants' alleged improper conduct in operating the Texas Plant. In cases involving claims of personal injury or toxic exposure, district courts in the Seventh Circuit consistently transfer venue to the district in which the injury allegedly occurred. *See, e.g., Great West Cas. Co., v. Dekeyser Express, Inc,* No. 05-2681, 2005 U.S. Dist. LEXIS 26031, at *9 (N.D. Ill. Oct. 31, 2005) (transferring case to Central

District of Illinois where plaintiff's accident occurred there and "the Northern District is not the situs of any material events").

Plaintiffs' allegations themselves make clear that this case centers on alleged exposures and conduct occurring exclusively in Somerville:

- "Plaintiffs are victims of cancer and other bodily injuries, as well as other damage, arising out of exposure to toxic chemicals from a wood treatment facility located in Burleson County. This suit arises out of the operations and activities of the Defendants with regard to the use and lack of containment of toxic chemicals used at the facility, which have caused them injuries and damages." (Complaint at ¶ 3.1).

- "[E]normous quantities of creosote and other pesticides have in the past and currently are being utilized on a daily basis. BNSF and Koppers have caused the release of these toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around the wood treatment facility." (Complaint at ¶ 3.19).

- "Plaintiffs have been exposed and continue to be exposed to the toxic chemicals from the Somerville facility used to treat the wood products." (Complaint at ¶ 3.20).

Plaintiffs now ignore these allegations and argue that this case is somehow centered in this District by claiming that (1) Koppers and BNSF used creosote preservatives at the Texas Plant that were manufactured at the Stickney Plant in Cicero, Illinois; (2) Dow, Monsanto, and Vulcan each supplied PCP to the Stickney Plant for use at the Texas Plant; (3) the material events from which Dow's, Monsanto's, and Vulcan's affirmative defenses arise occurred in this District; and (4) BNSF's predecessor, ATSF, made "policy decisions" relevant to this case at its former headquarters in Cook County. (*See* Response at 6-9).

As explained above, however, these allegations are untrue, misleading and irrelevant. There is no evidence to suggest that Koppers received any wood preservatives at the Texas Plant from the Stickney Plant before 1996. There is also no evidence that Dow, Monsanto or Vulcan ever supplied the Stickney Plant with PCP during the time period when Koppers supplied

creosote preservatives from the Stickney Plant to the Texas Plant. (*See* Floyd Aff., Ex. C; Mancione Aff., Ex. B, at ¶¶ 6-9; Shaw Aff., Ex. A, at ¶¶ 6-7; Kaley Aff., Ex. D, at ¶ 4; Burchfield Aff., Ex. E, at ¶ 4). Finally, ATSF is not a party to this lawsuit, and the location of its former corporate headquarters has no bearing here.

**B. The Vast Majority Of Non-Party Witnesses Reside In Texas**

Plaintiffs argue that the convenience and availability of non-party witnesses weighs in favor of keeping this case in the Northern District of Illinois. (*See* Response at 3-6). As explained above, however, Plaintiffs identify only four current or former employees of BNSF or ATSF who reside in the Northern District and might have knowledge regarding ancillary issues in this case. At the same time, Plaintiffs completely ignore the fact that hundreds, if not thousands, of non-party Somerville residents and plant employees are possible witnesses in this case. (*See* Ex. G). The convenience of these witnesses alone weighs heavily in favor of transfer to the Western District of Texas.

Plaintiffs also make repeated, vague reference to other "former employees" of Koppers, BNSF, and ATSF who might have "critical information" and reside in this District, including Koppers and BNSF employees at the Galesburg plants. (*Id.* at 5). Plaintiffs fail, however, to specifically identify these witnesses or the substance of their possible testimony. As Plaintiffs themselves point out, such generalities have no bearing on the Court's determination of the more convenient venue. Also, as explained above, the Galesburg plants have nothing to do with this case, and Koppers' and BNSF's employees at those plants would have very little, if any, relevant testimony to provide.

### C. Texas Is A More Convenient Venue For All The Parties, Especially The Plaintiffs

Plaintiffs claim that this District is a more convenient forum than the Western District of Texas because one Plaintiff, Virda Bell Bullard, lives in Chicago and would suffer an "undue burden" if the case were transferred to the Western District. (*See* Response at 11). As explained above, however, Plaintiffs neglect to mention that Ms. Bullard is currently a Plaintiff in a nearly identical action – Hensen – that is pending in the District Court for Tarrant County, Texas, and Plaintiffs further ignore the fact that the vast majority of the other 143 Plaintiffs in this case reside in and around Somerville, Texas. (*See* Ex. D; Ex. F at ¶ 2.1; Ex. G).

## III. THE PUBLIC FACTORS WEIGH IN FAVOR OF TRANSFER

### A. This Case Will Proceed To Trial More Quickly In The Western District of Texas

Plaintiffs argue that the "relative congestion of the courts" weighs in favor of keeping this case in this District, citing statistics published by the Administrative Office of the United States Courts indicating that cases proceed to *disposition* more quickly in this District than the Western District of Texas. (*See* Response at 12). Plaintiffs fail to mention, however, that cases proceed from filing to *trial* almost twice as quickly in the Western District of Texas as in this District – on average, it takes 15.8 months for a case to proceed to trial in the Western District and 29.7 months in this District. *See* US District Court – Judicial Caseload Profile; *available at* http://www.uscourts.gov/cgi-bin/cmsd2007.pl. (Copies of the profiles for this District and the Western District of Texas are attached as Exhibit J). This Court has held on more than one occasion that the median time from filing to trial – and not from filing to disposition – is the appropriate measure for comparing the congestion of the transferor and transferee courts. *See* *SEC v. Kasirer*, No. 04-4340, 2005 U.S. Dist. LEXIS 6494, at *9 (N.D. Ill. Mar. 21, 2005) (granting transfer, in part, because the median time to trial was shorter in transferee court); *Allied*

*Van Lines v. Gulf Shores Moving & Storage, Inc.*, No. 04-6900, 2005 U.S. Dist. LEXIS 6244, at *13 (N.D. Ill. Feb. 23, 2005) (finding that "[t]he average time from filing to trial is a much better gauge of the relative pace of cases in the two districts" and granting transfer where the average time to trial was six months shorter in the transferee court.).

Plaintiffs also fail to mention that, between September 30, 2006 and September 30, 2007, there were, on average, 346 cases filed per judge in this District compared to only 246 in the Western District of Texas, and that, as of September 30, 2007, there were 456 cases in this District that were over three years old and only 54 such cases in the Western District. (*See* Ex. J). Taken together, these statistics make clear that this case likely would proceed to a quicker trial in the Western District than in this District.

**B. The Western District Of Texas Has A Greater Interest In Adjudicating This Dispute**

Plaintiffs claim that this Court has a "significant interest" in adjudicating this case, but once again rely on the same inaccurate and irrelevant ties to this District discussed above. (*See* Response at 13). The location of plant operations and overwhelming number of potential fact witnesses and Plaintiffs who reside in Texas clearly demonstrate that the Western District of Texas has a more significant interest in adjudicating this dispute.

**C. A Court In The Western District Of Texas Would Be Much More Familiar With The Texas Law That Will Govern Plaintiffs' Claims**

A court in the Western District of Texas – which has heard these allegations before – would be more familiar with the Texas law to be applied to Plaintiffs' claims. *See, e.g., Mleczek v. Aspen Skiing Co., LLC*, No. 07-238, 2007 U.S. Dist. LEXIS 45472, at *9-10 (N.D. Ill. June 20, 2007) (transfer to the District Colorado appropriate because that court would be more familiar with the Colorado law to be applied to plaintiff's claims); *Woodward Park Imaging, Inc. v. Iwamoto*, 955 F. Supp. 1006, 1008 (N.D. Ill. 1997) (granting transfer of venue to the Eastern

District of California where court there would be more familiar with the state law applicable to plaintiff's claims). Indeed, Judge Sparks dealt with many of the same claims in Davis and Brinston, and he continues to preside over the six additional lawsuits that Plaintiffs' counsel filed in Texas state court shortly after Defendants filed the Motion. (*See* Motion at 4-6).

Plaintiffs claim that Texas law will not apply to all claims in this case, but their convoluted choice of law argument ignores the basic presumption applied by the Illinois Supreme Court: the law of the place of injury applies except in relatively rare situations which do not apply in this case—where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties. Plaintiffs here make the same argument that was "emphatically rejected" by the Illinois Supreme Court in *Townsend v. Sears Roebuck & Co.*, 879 N.E.2d 893, 902-903 (Ill. 2007), which was also a product liability/personal injury action. Following the Court's analysis in *Townsend*, Texas law would apply to Plaintiffs' claims.

The Court in *Townsend* outlined the two-step approach to be followed in a personal injury case: first, apply the presumption that the law of the place of injury applies and, second, test whether another state has "a *more* or *greater* significant relationship" with the occurrence and with the parties. 879 N.E.2d at 903 (emphasis in original) (citing *Ingersoll v. Klein*, 262 N.E.2d 593, 595 (Ill. 1970)). The Court went on to state:

> The likelihood that some state other than that where the injury occurred is the state of the most significant relationship is greater in those *relatively rare* situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties.

*Id.* at 904 (emphasis in original, citations omitted). Testing the strong presumption that Michigan law, the state where the injury occurred, would apply, the Court evaluated the following factors: (1) the place of injury, (2) the place where the conduct causing the injury occurred (including all conduct from any source, such as plaintiffs' contributory negligence), (3)

the place of the parties' residence, place of business, place of incorporation, and (4) the place where the relationship was centered. *Id.* at 905-906. The Court declined to "merely count contacts," and held that Illinois' relationship with the case could not overcome the presumption that Michigan, the state where the injury occurred, was the state with the most significant relationship. *Id.* at 906-907.

Even before *Townsend*, courts making choice of law determinations in personal injury or product liability actions consistently applied the law of the state where the injury occurred – not that of the state where the defendant designed, manufactured, or made decisions about the allegedly defective or dangerous product. *See Firkin v. U.S. Polychemical Corp.*, 835 F. Supp. 1048, 1050 (N.D. Ill. 1993); *Anabaldi v. Sunbeam Corp.*, 651 F. Supp. 1343, 1345 (N.D. Ill. 1987); *Walters v. Maren Eng'g Corp.*, 617 N.E.2d 170, 174 (Ill. App. Ct. 1993); *see also Townsend*, 879 N.E.2d at 909.

Consistent with the strong presumption that the law of the place of injury governs, Texas law should apply to Plaintiffs' claims. Undisputedly, the place of alleged injury is Texas: "Plaintiffs are residents or former residents of Somerville, Burleson County, Texas. Plaintiffs are victims of cancer and other bodily *injuries . . . arising out of exposure* to toxic chemicals from a wood treatment facility located *in Burleson County, [Texas]*." (Complaint ¶ 3.1.) The litany of corporate headquarters that Plaintiffs list, and the remote possibility that the chemicals used at the Texas Plant were somehow modified in other states, does not overcome the strong presumption that the place of injury should apply. Accordingly, Texas law governs Plaintiffs' claims, and a court in the Western District of Texas would be better suited to address those claims.[4]

[4] This is not to say that, in applying the *depecage* principle, the court could not find that issues tangential to Plaintiffs' claims, such as corporate successor issues, may not be subject to the law of a state

Moreover, given the recent history of similar litigation in the Western District of Texas, transfer of this action to that district would likely result in additional judicial efficiencies beyond the application of Texas law. Judge Sparks spent over a year addressing similar claims in Davis, and his familiarity with that case could result in a more expeditious or efficient handling of this action. (*See* Motion at 4-6). Plaintiffs correctly point out that the Brinston action is no longer pending before Judge Sparks, but their counsel fail to mention the six new cases they filed against Koppers and BNSF in Texas state court in December 2007,[5] just a few weeks after Defendants filed their Motion to Transfer in this case. (A copy of one of the six complaints is attached as Exhibit K). Those six cases are identical to each other and involve nearly the same personal injury claims and factual allegations involved in the instant case. Koppers and BNSF removed those cases to Judge Sparks in the Western District, and they are currently pending before him as related cases.[6]

In short, the Western District of Texas is the "established battleground" for disputes between these Defendants and these and other similarly situated Plaintiffs, and this factor weighs heavily in favor of transfer. *See, e.g., Conseco Ins. Co. v. J.C. Penney Life Ins. Co.*, No. 06-1229, 2007 U.S. Dist. LEXIS 75005, at *12 (S.D. Ind. Sep. 27, 2007) (granting transfer to the Central District of California where that district had "become the established battleground for

---

other than Texas. *See, e.g.*, *Ruiz v. Blentech Corp.*, 89 F.3d 320, 327 (7th Cir. 1996) (using the *depecage* principle and applying the tort law of Illinois, the state where the worker was injured by the California-based defendant's product, to determine liability for injuries and California corporate law to determine what liability was conveyed in an asset sale). However, at a minimum, the fundamental liability issues at the heart of Plaintiffs' cause of action are properly subject to Texas law.

[5] One of the Plaintiffs' attorneys in the present action – Grover G. Hankins – also represents the plaintiffs in these six new cases.

[6] *Hamilton, et al. v. Burlington Northern Santa Fe Railway Company, et al.* Case No. 1:08-cv-00129-SS (W.D. Tex.); *More, et al. v. Burlington Northern Santa Fe Railway Company, et al.*, Case No. 1:08-cv-00130-SS (W.D. Tex.); *Adams, et al. v. Burlington Northern Santa Fe Railway Company, et al.*, Case No. 1:08-cv-00131-SS (W.D. Tex.); *Cummings, et al. v. Burlington Northern Santa Fe Railway Company, et al.*, Case No. 1:08-cv-00132-SS (W.D. Tex.); *Jeffrey, et al. v. Burlington Northern Santa Fe*

these parties and this dispute" and "that court and in particular the assigned judge are far better positioned to continue their oversight" of the litigation); *Fisher v. Phoenix Container, Inc.*, No. 99-4473, 1999 U.S. Dist. LEXIS 14707, at *10 (N.D. Ill. Sep. 16, 1999) (transferring case to the District of New Jersey where plaintiff was already a party to a related case in that district and the likely witnesses were the same in both cases).

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court transfer the present action to the United States District Court for the Western District of Texas, Austin Division pursuant to 28 U.S.C. § 1404(a).

Dated: June 5, 2008

---

*Railway Company, et al.*, Case No. 1:08-cv-133-SS (W.D. Tex.); *Rucks, et al. v. Burlington Northern Santa Fe Railway Company, et al.*, Case No. 1:08-cv-00134-SS (W.D. Tex.).

Respectfully submitted,

BNSF RAILWAY COMPANY

By: /s/ Daniel J. Mohan (by permission)

Daniel J. Mohan (6187721)
Daley & Mohan, PC
150 N. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 422-9999
Facsimile: (312) 201-9368

**Attorneys for Defendant, BNSF Railway Company**

OF COUNSEL:

Douglas W. Poole
(motion for *pro hac vice* admission to be filed)
McLeod, Alexander, Powel & Apffel
A Professional Corporation
802 Rosenberg; P.O. Box 629
Galveston, Texas 77553
Telephone: (409) 763-2481
Facsimile: (409) 762-1155

Respectfully submitted,

KOPPERS INC.

By: /s/ Robert L. Shuftan

Robert L. Shuftan (3124475)
Brent R. Austin (6220501)
Leonard S. Kurfirst (6187651)
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 201-2000
Facsimile: (312) 201-2555

**Attorneys for Defendant, Koppers Inc.**

Respectfully submitted,

MONSANTO COMPANY

By: _/s/ Marla R. Shade (by permission)___

Darren VanPuymbrouck (6193910)
Marla R. Shade (6273036)
Renee C. Kelley (6289904)
Schiff Hardin LLP
6600 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6473
Telephone: (312) 258-5559
Facsimile: (312) 258-5600

**Attorneys for Defendant, Monsanto Company**

Respectfully submitted,

THE DOW CHEMICAL COMPANY

By: /s/ Lise T. Spacapan (by permission)

Lise T. Spacapan (6188257)
Gabrielle Sigel (6186108)
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, Illinois 60611-7603
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

**Attorneys for Defendant, The Dow Chemical Company**

Respectfully submitted,

VULCAN MATERIALS COMPANY

By: /s/ Larry J. Chilton (by permission)

Larry J. Chilton (6185236)
Chilton Yambert Porter & Young LLP
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
Telephone: (312) 460-8000
Facsimile: (312) 460-8299

**Attorneys for Defendant, Vulcan Materials Company**

OF COUNSEL:

Stephen C. Dillard
(admitted *pro hac vice*)
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Husch & Eppenberger, LLC
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

**CERTIFICATE OF SERVICE**

I, Matthew J. Caccamo, an attorney, state that I have served true and correct copies of the foregoing *Defendants' Joint Reply in Support of Their Motion To Transfer Venue* upon the below attorneys via overnight mail on June 5, 2008 and upon all other attorneys of record through the Court's CM/ECF system:

James L. "Larry" Wright
Watts Law Firm, LLC
111 Congress Avenue, Suite 1000
Austin, Texas 78701

Grover G. Hankins
The Hankins Law Firm
440 Louisiana Street, Suite 725
Houston, Texas 77002

Dwight E. Jefferson
Dwight E. Jefferson, P.L.L.C.
405 Main Street, Suite 950
Houston, Texas 77002

David S. Jasmer
David S. Jasmer, LLC
111 W. Washington Street, Suite 1150
Chicago, Illinois 60602

*Attorneys for Plaintiffs*

/s/ Matthew J. Caccamo