# EXHIBIT K

CAUSE NO. ___25,176___

| | | |
|---|---|---|
| BRANDON T. ADAMS, LINDA C. | § | IN THE DISTRICT COURT |
| ADAMS, HENRY W. ALDRIDGE, | § | |
| JUSTIN L. ALDRIDGE, RUBY BURNS | § | |
| ALDRIDGE, DONNA J. ALLEY, | § | |
| MICHELLE MEJIAS ARGUELLO, | § | |
| ALVITA C. ARRINGTON, DONNELL | § | OF BURLESON COUNTY |
| BARRETT, SANDRA P. BASS, | § | |
| ASHLEY BATTS, BILL R. BATTS SR., | § | |
| BRODERICK BATTS, JACKLYN | § | |
| BATTS, JASMINE BATTS, | § | 21st JUDICIAL DISTRICT |
| LASHANDA BATTS, LATOMIA | § | |
| BATTS, NICOLE BATTS, PORSHA | § | |
| BATTS, RANDI BATTS, SANDRA | § | |
| BATTS, ROBERT A. BAXTER, | § | |
| ROBERT D. BELL SR., DON BOYCE, | § | |
| CALVIN M. BRADLEY, DEODRICK | § | |
| D. BRADLEY, FLOYD W. BRADLEY, | § | |
| SEDRICK M. BRADLEY, RUTH E. | § | |
| BRANCH, LEON D. BRINSTON, | § | |
| CALANTHIA BROOKS, BARBARA | § | |
| BROOKS, CURTIS EARL BROOKS, | § | |
| DAMION L. BROOKS, JAMES | § | |
| CHARLES BROOKS SR., RICHARD | § | |
| L. BOOKS, WILEY BROOKS, LOIS M. | § | |
| BROOKS-NIX, ANTHONY ANTOINE | § | |
| BROWN, KAYLOR L. BROWN, | § | |
| VENESSA R. BRYANT, BRITTANY | § | |
| NICOLE BURNETT, GALE MOORE | § | |
| BURNETT, JAMIE BURNETT, | § | |
| CLIFTON BURNS III, CLIFTON J. | § | |
| BURNS JR., CLIFTON J. BURNS SR., | § | |
| DARLINE BURNS, DETRENIA | § | |
| BURNS, DONNYELLE BURNS, | § | |
| DOUGLAS RAY BURNS, EDDIE MAE | § | |
| BURNS, GLORIA BURNS, HELEN | § | |
| MARIE BURNS, HENRY BURNS, | § | |
| JAMES C. BURNS, JESSIE L. BURNS, | § | |
| KERVIN D. BURNS, LALONDA | § | FILED ___3:32 P.M.___ |
| BURNS, LINDA K. BURNS, MICKLE | § | DATE ___12-21-07___ |
| BURNS, MINNIE BURNS, PRECIOUS | § | Joy Brymer |
| BURNS, TERRY LYNN BURNS, | § | District Clerk, Burleson County |
| TOMMIE LEE BURNS, TOMMIE LEE | § | By _____ |

BURNS SR., MATTIE J. CAREY,                §
WILLIAM CAREY, WILLIAM LOUIS               §
CAREY, BARBIE D. CARTER,                   §
BOBBIE CARTER, LAURA A.                    §
CLARK, TRACY COLE, CASSANDRA               §
COLEMAN, DEBRA COLEMAN,                    §
DERRICK COLEMAN, DEVIN                     §
COLEMAN, DONNIE H. COLEMAN,                §
ROBIN L. COLEMAN JR.,                      §
NELLIE MAE COLVIN, JOHN E.                 §
COOPER, JONNISHA COOPER,                   §
LAKENDRICK COOPER,                         §
ZEPHYR R. COOPER, MELVIN                   §
COPELALND, and SANTOYA                     §
COPELAND, LOUISE CROMO, INA                §
CROSS, ANQUINSHA CUMMINGS,                 §
BWANA CUMMINGS, DATAYA                     §
CUMMINGS,                                  §
                                           §
                                           §
       Plaintiffs,                         §
                                           §
                                           §
vs.                                        §
                                           §
                                           §
KOPPERS INDUSTRIES, INC., A                §
FOREIGN CORPORATION and THE                §
BURLINGTON NORTHEN SANTA FE                §
RAILWAY COMPANY, A FOREIGN                 §
CORPORATION,                               §

       Defendants.

## <u>PLAINTIFFS' ORIGINAL PETITION</u>

TO THE HONORABLE JUDGE OF SAID COURT:

       COME NOW Plaintiffs and file this, their Original Petition, complaining of Defendants

Koppers Industries, Inc. and Burlington Northern Santa Fe Railway Company, and respectfully

show this Honorable Court and Jury as follows:

## I.
### DISCOVERY

1.1     Discovery should be conducted under Rule 190.3 (Level 3) of the TEXAS RULES OF CIVIL PROCEDURE.

## II.
### PARTIES

2.1     Plaintiffs are residents or former residents of Somerville, Burleson County, Texas, and are citizens of Texas.

2.2     Defendant Koppers Industries, Inc. ("Koppers") is a Pennsylvania corporation that conducts business in Texas from which it derives substantial profits.  Koppers may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

2.3.    Defendant Burlington Northern and Santa Fe Railway Corporation ("BNSF") is a Delaware corporation with its principal place of business in Texas, so that it is a citizen of Texas for purposes of diversity jurisdiction, and it conducts business in Texas from which it derives substantial profits. BNSF may be served through its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

## III.
### JURISDICTION AND VENUE

3.1     Jurisdiction is appropriate in this Court because this is a lawsuit seeking damages in excess of the minimum jurisdictional limits of the district courts of the State of Texas.

3.2     The Court has personal jurisdiction over these Defendants because they have the requisite contacts with Texas, both specific and general, for the exercise of jurisdiction and such

exercise of jurisdiction does not offend the traditional notions of fair play and substantial justice.

3.3    Plaintiffs are not asserting any claims or causes of action based on federal laws, treaties, or the United States Constitution, and there is not complete diversity of citizenship between all Plaintiffs and all Defendants so that even though many of the claims being asserted herein have a value in excess of $75,000, a federal court does not have jurisdiction over this action, and removal would be improper.

3.4    Venue is proper in Burleson County pursuant to §15.002 of the TEXAS CIVIL PRACTICE & REMEDIES CODE because a substantial part of the events or omissions giving cause to the claims occurred in Burleson County, Texas and Defendant BNSF is not a natural person and has its principal office in Texas located in Burleson County, Texas. Plaintiffs' Petition does not assert an action for recovery of damages to real property.

**IV.**
**FACTUAL BASIS OF PLAINTIFFS' CLAIMS**

4.1    Plaintiffs are residents or former residents of Somerville, Burleson County, Texas.  Plaintiffs complain that toxic chemicals from a wood treatment facility located in Burleson County have in the past and currently are escaping for the aforesaid facility.  This suit arises out of the operations and activities of the Defendants in the County with regard to the use and lack of containment of toxic chemicals used at the facility, which have caused them to sustain bodily injuries, including blood diseases, respiratory diseases, reproductive anomalies, birth defects and developmental abnormalities.

**The Wood Treatment Facility**

4.2    The Somerville facility, at which BNSF operated and Koppers operates a wood treatment plant, occupies a 200-acre tract of land approximately one mile northwest of the

intersection of Highway 36 and FM 1361 on the northeastern edge of the city of Somerville in Burleson County, Texas. The Somerville wood treatment facility was constructed by Ayer and Lord in 1897 and treated railroad ties by contract for The Atchison, Topeka and Santa Fe Railway Company (AT & SF) under the name of Texas Tie and Lumber Preserving Company (TT & LPC).

4.3    In January 1905, the plant was purchased by AT & SF. TT & LPC operated the original Somerville plant until 1905. It was then dismantled in favor of a new facility built nearby, which is the present site of the plant. The new plant began production in February 1906, and on December 2, 1912, the plant's name was changed to Santa Fe Tie and Lumber Preserving Company. On June 2, 1950, the Santa Fe Railway (AT & SF) absorbed this subsidiary. On March 28, 1995, AT & SF sold the Somerville wood treatment facility to the Koppers. AT & SF merged with and into the Defendant BNSF on December 31, 1996.

4.4    BNSF has represented to the Texas Natural Resource Conservation Commission ("TNRCC") that it assumes responsibility for the historic contamination of the Somerville site.

**Chemical Involvement**

4.5    From its inception in the late 1800's and continuing today, the wood treatment facility has and does today manufacture railroad cross ties, bride timbers, poles, piling, and other wood products all of which are treated on site with one or more pesticides and wood preservatives including derivatives of coal tar creosote and chlorinated pesticide compounds including pentachlorophenol (PCP). PCP is toxic to the environment and man, and exposure to it causes damage to the liver, kidneys, blood, and nervous system, and it is a human carcinogen.

4.6    The Somerville site wood manufacturing process consists of vapor drying the various shaped wood pieces followed by pressure treating the wood with creosote/oil mixtures

as well as certain pesticidal extenders and chlorinated pesticides including the aforesaid PCP. The resulting treated wood products are used in the railroad industry.

4.7    Coal tars are by-products of the carbonization of coal to produce coke and/or natural gas. Coal tars are complex combinations of polycyclic aromatic hydrocarbons (PAHs), phenols, heterocyclic oxygen, sulfur, and nitrogen compounds. Coal tar creosotes are distillation products of coal tar.

4.8    Coal tar creosotes consist of aromatic hydrocarbons, anthracene, naphthalene, and phenanthrene derivatives. At least 75 per cent of coal tar creosote mixture is made up of PAHs. PAHs are toxic to the environment and man and are human carcinogens.

4.9    The composition of the creosote mixture is dependent on the sources and preparation parameters of the coal tar, and as a result, the creosote components are rarely consistent in their type and concentration. An example of the composition variability among creosote samples was recently presented by *Weyand et al.* (1991). In that study, the concentrations of several PAHs were analyzed in four coal tars. All of the PAHs identified exhibited 2-fold to nearly 20-fold differences in concentration among the four samples.

4.10    The coal tar creosote mixtures at issue here represent 100 years of different formulations used at the Somerville site. These formulations contained from time to time 199 identifiable PAHs including benzo(a)pyrenes and dibenzofurans. Coal tar creosote (creosote) is a soup of hundreds, if not thousands, of compounds most of which are toxic to the environment and man.

4.11    To this creosote soup, extenders including, but not limited to, PCP are added to create the "creosote" utilized in the pressure treatment of wood at facilities like Somerville.

4.12    PCP is a chlorinated compound used as a pesticide in the treatment of specialty wood products such as poles and railroad ties and other applications where wood comes into

contact with soil making it vulnerable to insect attack. Often in the past PCP was used in the creosote treatment of specialty products. On information and belief PCP compounds were used in the treatment of specialty wood products at the Somerville site at relevant times.

4.13    During the manufacturing process of PCP, dioxins are formed as an unwanted by-product of production. Further, given the chemical make-up of PCP, it is a likely generator of dioxins and furans when subjected to heat and pressure of the sort utilized in the pressure treatment of specialty wood products at the Somerville facility.

4.14    Because of the availability of benzene in coal tar creosote, a source of chlorine in an environment of heat and pressure together with oxygen presents the opportunity for a variety of dioxins and furans to form during the tie treating process.

4.15    Creosote and its constituent compounds, PCP, dioxins and furans, are toxic and harmful to the environment and man. For purposes of this Petition, all of these toxic and hazardous materials will often be referred to collectively as the "chemicals, solvents, and substances" and sometimes as the "products in question."

**Plaintiffs' Chemical Exposure**

4.16    During the operative time period from 1905 to present, BNSF and Koppers operated the wood treatment facility at Somerville that encompassed the use of large metal cylinders into which shaped wood products would be placed. Under pressure and heat, creosote and other pesticides would infuse the wood and displace water thus impregnating the railroad ties and other products with the aforesaid pesticides.

4.17    Currently, the Somerville plant utilizes four cylinders, which are 8 feet in diameter and 155 feet long, into which specialty wood is placed for pressure treatment.

4.18    Because of the magnitude of the treatment operation at Somerville, enormous quantities of creosote and other pesticides have in the past and currently are being utilized on a

daily basis. BNSF and Koppers have caused the release of these toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around the wood treatment facility.

4.19    Plaintiffs have been exposed and continue to be exposed to the toxic chemicals from the Somerville facility used to treat the wood products. At some point in time unknown to Plaintiffs, these chemicals began to contaminate their bodies, property and homes.

4.20    Due to the size of the operation, extensive stacks of treated railroad ties and other treated products are, and at all relevant times in the past have been, placed on the ground for the purpose of "curing out." Volatilized molecules of the aforesaid toxic compounds are released as gas from this process and are carried by the prevailing winds over the Somerville area.

4.21    Creosote and other pesticides drip from the curing treated wood products and leech into the soil causing contamination of the soil, surface water and groundwater including the aquifers underlying the Somerville area.

4.22    Independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs inside the homes of Somerville residents. Likewise, independent testing has verified the presence of toxic compounds including dioxins/furans and PAHs in the residential soil of the Somerville area. The nature and make-up of the aforesaid compounds establish that the Somerville site is the generator of these compounds.

4.23    Governmental mandated testing of soil, sediment, surface and groundwater on the Somerville site has verified the presence of the aforesaid toxic and dangerous compounds.

4.24    The TNRCC has documented the contamination of the aquifer underlying the Somerville area. The TNRCC has also documented soil contamination at the Somerville site.

4.25    Surface water run-off from the Somerville site has carried contaminated sediment to the waters of Thompson Creek and other natural drainage features resulting in off site contamination of the Somerville area.

4.26    Natural wind patterns have dispersed throughout the air in Somerville toxic gasses created by the Somerville site.

4.27    Toxic contamination of the clothing of plant workers has caused harmful chemicals to contaminate the inside of their homes where family members and loved ones have been secondarily exposed to such contaminants.

4.28    Plaintiffs have experienced one or more of the following during the relevant time periods:

   a.   Intermittent flooding of their property with surface water running from the contaminated Koppers' railroad tie treatment facility.

   b.   Intermittent flooding of their property from Thompson Creek and other natural drains that receive contaminated surface water flowing from the Somerville railroad tie treatment facility.

   c.   Treated wood routinely provided to Plaintiffs by BNSF and Koppers as firewood in the homes of the Plaintiffs and in some cases used as cooking fuel.

   d.   Treated wood ties from time to time would be placed on or near the property of one or more of the Plaintiffs for storage prior to their being sold or removed by BNSF and Koppers for some other purpose.

   e.   Groundwater lying under the real estate of Plaintiffs has been and remains contaminated with the chemicals used by BNSF and Koppers as a consequence of the chemicals being spilled and otherwise placed on the soil of the treatment facility and

otherwise placed in leaking containment ponds such that the groundwater and the aquifers underlying the Somerville area are now contaminated.

f.   One or more of the Plaintiffs has in the past experienced "oily tasting" water drawn from fresh water wells in the Somerville area.

g.   One or more of the Plaintiffs' houses and real estate have become contaminated with dioxins/furans, PAHs and other toxic molecules released from the wood treatment facility.

h.   Noxious odors emanating from the wood treating facility.

i.   Poisonous dusts released from the wood treatment facility that settle from the air onto their respective properties in the Somerville area.

4.29    PCP-containing products were routinely stored outside at the facility without cover or protection, allowing the chemicals to disperse throughout the neighborhood, contaminating Plaintiffs' homes, properties, and persons.

4.30    During the relevant time in question, BNSF and Koppers improperly disposed of unwanted chemicals and contaminated dirt by dumping the refuse outside at the facility, contaminating Plaintiffs' homes, properties, and persons.

4.31    As a consequence of the foregoing activities of the Defendants, but not limited to such, toxic substances including PAHs, dioxins/furans, arsenic and other dangerous and deadly toxins were at all relevant times generated and released from the Somerville site.

4.32    As a result of exposure to the toxic and hazardous chemicals, solvents, and substances, Plaintiffs have sustained bodily injuries, including blood diseases, respiratory diseases, reproductive anomalies, birth defects and developmental abnormalities.

## CAUSES OF ACTION

### V.

#### NEGLIGENCE

5.1    Each of the statements and allegations made in Sections 4.1 to 4.32 above are specifically adopted and incorporated by reference herein as if set forth in full.

5.2    Koppers and BNSF committed various acts of omission and commission that constitute negligence and were a proximate cause of the injuries and damages of Plaintiffs.

5.3    Koppers and BNSF were negligent in allowing and failing to prevent the release of toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

5.4    Koppers and BNSF were negligent in failing to monitor their procedures and receipts of toxic and hazardous chemicals, solvents, and substances so that they were released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

5.5    Koppers and BNSF were negligent in failing to monitor the types and amounts of toxic and hazardous chemicals, solvents, and substances that were being released and that escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.  Alternatively, Koppers and BNSF were negligent in the manner in which they undertook to monitor the types and amounts of toxic and hazardous chemicals, solvents, and substances that were being released and that escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned, and such conduct increased the risk of harm and/or caused harm because it was relied upon by others to be performed with the appropriate standard of care.

5.6     Koppers and BNSF were negligent in improperly disposing of and failing to properly dispose of toxic and hazardous chemicals, solvents, substances, waste materials, byproducts and effluents of the wood treatment process so that they were released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

5.7     Koppers and BNSF were negligent in failing to warn the Plaintiffs and others in the general public of the toxic and hazardous chemicals, solvents, and substances that they knew, or in the exercise of reasonable ordinary care should have known, were being released and escaped into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

5.8     Koppers and BNSF were negligent in failing to warn Plaintiffs and others in the general public of the dangers and potential bodily harm that could be caused by the toxic and hazardous chemicals, solvents, and substances that they knew, or in the exercise of reasonable ordinary care should have known, could result from exposure to the toxic and hazardous chemicals, solvents, and substances that were being released and escaping into the soil, groundwater, water, and air in and around the wood treatment facility they operated and/or owned.

5.9     Koppers and BNSF were negligent in creating an unreasonable risk of harm by exposing Plaintiffs to the toxic and hazardous chemicals, solvents, and substances that they were causing to be released into the soil, groundwater, water, and air.

5.10     Koppers and BNSF were negligent in failing to intervene in a timely manner to prevent, contain, monitor, or control the toxic and hazardous chemicals, solvents, and substances that were being released into the soil, groundwater, water, and air, which could

have minimized or eliminated Plaintiffs' exposure to the toxic and hazardous chemicals, solvents, and substances.

5.11    Koppers and BNSF were negligent in failing to implement and enforce procedures with regard to industrial hygiene that resulted in increased exposure to the toxic and hazardous chemicals, solvents, and substances that were being used at the wood treatment facility they operated and/or owned.

5.12    The above-referenced negligent acts and omissions of Koppers and BNSF were a proximate cause of Plaintiffs' injuries and damages.

## VI.
### NUISANCE AND NUISANCE PER SE

6.1    Each of the statements and allegations made in Sections 4.1 to 5.12 above are specifically adopted and incorporated by reference herein as if set forth in full.

6.2    Koppers and BNSF, through negligent, intentional and unreasonable, and other conduct that was abnormal and out of place in its surroundings, interfered with and/or invaded the rights and interests of Plaintiffs who own, owned, occupied, or occupy land nearby the wood treatment facility operated and/or owned by Koppers and BNSF that was affected by the escape or release of toxic and hazardous chemicals, solvents, and substances in these Plaintiffs' soil, groundwater, water, and air, and substantially interfered with Plaintiffs' private use and enjoyment of the land, causing injuries and damages to Plaintiffs. Koppers and BNSF knew, or should have known, that the release of these toxic and hazardous chemicals, solvents, and substances were causing a substantial and unreasonable interference with Plaintiffs' property interests. Even if the conduct of Koppers and BNSF had not been intentional, it is still an actionable nuisance because they knew the toxic and hazardous chemicals, solvents, and substances were abnormally dangerous and that their release was an abnormally dangerous

activity and created an abnormally dangerous condition. This activity constitutes a nuisance at all times, under any circumstances, and in any location. Defendants' conduct constitutes a nuisance, a nuisance per se, and/or an intentional nuisance.

6.3    The damages and injuries sustained by Plaintiffs because of the nuisance caused by Koppers and BNSF include, but are not limited to, personal discomfort, annoyance, inconvenience, impairment of health, physical pain and mental anguish, all of which occurred in the past and in reasonable probability will continue in the future.

6.4    The conduct of Koppers and BNSF in releasing these toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air in and around the wood treatment facility constitutes an abnormally dangerous activity, so that Koppers and BNSF are strictly liable for all foreseeable harm to Plaintiffs resulting from that activity, even if Koppers or BNSF had exercised care to prevent the harm.

## VII.
### TRESPASS

7.1    Each of the statements and allegations made in Sections 4.1 to 6.4 above are specifically adopted and incorporated by reference herein as if set forth in full.

7.2    Koppers and BNSF released toxic and hazardous chemicals, solvents, and substances into the soil, groundwater, water, and air that encroached upon and entered into and onto the real property of Plaintiffs, in a way that was physical, intentional and voluntary by Koppers and BNSF. These releases and trespasses, whether the result of negligence, recklessness, or intentional conduct involving abnormally dangerous activity, caused injury to Plaintiffs' right of possession, resulting in personal injury and damage to Plaintiffs, including mental anguish and physical injury resulting from fright.

## VIII.
### GROSS NEGLIGENCE

8.1    Each of the statements and allegations made in Sections 4.1 to 7.2 above are specifically adopted and incorporated by reference herein as if set forth in full.

8.2    The acts and omissions of Koppers and BNSF constitute gross negligence because they had subjective awareness that their conduct involved an extreme degree of risk but proceeded and continued with conscious indifference to the rights, safety, and welfare of Plaintiffs.

8.3    Koppers and BNSF knew that the chemicals, solvents, and substances that they were causing to be released into the soil, groundwater, water, and air in and around their wood treatment facility were toxic and hazardous. They knew that these chemicals, solvents, and substances would cause grave, sometimes fatal, injuries to the people in and around the facility. Despite their knowledge, Koppers and BNSF consciously disregarded the rights, safety, and welfare of the general public, including Plaintiffs, in proceeding to cause and allow these toxic and hazardous chemicals, solvents, and substances to escape from the facility and cause significant and pervasive bodily injuries to Plaintiffs and others.

8.4    This conduct was known and directed by managers and officers of Koppers and BNSF and was a proximate cause of Plaintiffs' injuries and damages.

## IX.
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

9.1    Each of the statements and allegations made in Sections 4.1 to 8.4 above are specifically adopted and incorporated by reference herein as if set forth in full.

9.2    Koppers and BNSF had full knowledge of the nature and toxicity of the toxic and hazardous chemicals, solvents, and substances they were freely releasing into the ground, groundwater, water, and air, and knew the grave, and sometimes fatal, consequences to the

Plaintiffs and persons of the general public in and around the wood treatment facility. Koppers and BNSF nevertheless made a conscious decision to disregard the risk to Plaintiffs and to endanger their lives.

9.3     This conduct of Koppers and BNSF constitutes a flagrant disregard for the rights and safety of Plaintiffs that resulted in bodily injuries and damage and, as such was extreme and outrageous.

9.4     This conduct of Koppers and BNSF was a proximate cause of the severe emotional distress that has been suffered by Plaintiffs. Plaintiffs' severe emotional distress will continue in the future.

## X.
### GENERAL AGENCY ALLEGATIONS

10.1     Whenever in this Petition it is alleged that a corporate Defendant did any act or omission it is meant that Defendants' officers, agents, servants, employees, joint venturers, partners, joint enterprisers and/or representatives did such act or omission, and that at the time such act or omission was done, it was done with the full authorization and/or ratification of that Defendant, and was done in the normal and routine course and scope of the employment of Defendants' officers, agents, servants, employees, joint venturers, partners, joint enterprisers or representatives.

## XI.
### FRAUDULENT CONCEALMENT, DISCOVERY RULE,
### ESTOPPEL, AND TOLLING OF LIMITATIONS

11.1     The accrual of Plainitffs' causes of action, and the running of any applicable statute of limitations, has been deferred by Defendants' acts of fraudulent concealment. These include, but are not limited to, failing to disclose, and in fact suppressing, information concerning: (a) the injurious nature of their activities; (b) the fact that the toxic and hazardous

chemicals, solvents, and substances were being released into the soil, groundwater, water, and air in and around the wood treatment facility; and (c) the harmful effects associated with continued exposure to the toxic and hazardous chemicals, solvents, and substances to the Plaintiffs and others residing near the wood treatment facility. Defendants concealed the results of their health monitoring of certain employees. Defendants also concealed from federal and state governmental agencies their conduct involving the toxic and hazardous chemicals, solvents, and substances. Defendants had actual knowledge of these wrongs, but concealed the wrongs by making misrepresentations and/or by remaining silent when they had a duty to speak. Further, Defendants had a fixed purpose to conceal the wrongs. Plaintiffs reasonably relied on Defendants' misrepresentations and/or silence. Plaintiffs brought their claims promptly when they reasonably knew or should have known based upon a reasonably diligent inquiry that their injuries and damages were caused by the wrongful acts of Defendants.

11.2    Further and alternatively, the accrual of Plaintiffs' causes of action have been deferred because many or all of Plaintiffs' injuries were inherently undiscoverable and objectively verifiable. Further, Plaintiffs' action is brought under State law for personal injuries, which are caused or contributed to by exposure to a hazardous substance, pollutant, or contaminant released into the environment from a facility.

11.3    Further and alternatively, with regard to any allegations Defendants may make as to statute of limitations, Plaintiffs plead equitable estoppel. Defendants, with actual or constructive knowledge, have materially misrepresented or concealed facts by contending that their activities were not harmful and injurious. Defendants are now estopped from contending that Plaintiffs knew or should have known that the Defendants' activities were in fact harmful or injurious.

11.4    Further and alternatively, sections 16.001 and 16.062 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE suspend the running of statutes of limitations applicable to the claims asserted by particular Plaintiffs.

## DAMAGES

### XII.
#### PERSONAL INJURY DAMAGES

12.1    Plaintiffs seek compensatory damages arising from their injuries suffered as a result of the wrongful conduct of Defendants.    Plaintiffs seek monetary damages from Defendants to compensate them for the following elements of damages:

- past and future medical expenses;

- past and future loss of earning capacity;

- past and future pain and suffering;

- past and future mental anguish;

- past and future physical impairment; and

- past and future disfigurement.

### XIII.
#### PUNITIVE DAMAGES

13.1    Because Defendants are guilty of gross negligence, they should have punitive damages assessed against them in an amount deemed appropriate by the jury.

### XIV.
#### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

14.1    Plaintiffs seek recovery of pre-judgment and post-judgment interest as permitted by law.

## XV.
### RESERVATION OF RIGHTS

15.1    Plaintiffs reserve the right to prove the amount of damages at trial and to amend their Petition to add additional claims upon further discovery and as their investigation continues.

## XVI.
### CONDITIONS PRECEDENT

16.1    Pursuant to Rule 54 of the TEXAS RULES OF CIVIL PROCEDURE, all conditions precedent to Plaintiffs' rights to recover herein and to Defendants' liability have been performed or have occurred.

## XVII.
### REQUESTS FOR DISCLOSURE

17.1    Pursuant to TEX. R. CIV. P. 194, Plaintiffs request that Defendants disclose, within 30 days of service of this Request, the information and material described in Rule 194.2(a) through (l).

## XVIII.
### REQUEST FOR JURY TRIAL

18.1    In accordance with Rule 216 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs request a trial by jury.

## XIX.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Defendants be cited to appear and answer herein, that this cause be set for trial before a jury, and that Plaintiffs recover judgment of and from Defendants for their actual and exemplary damages in such an amount as the evidence may show and the jury may determine to be proper, together with pre-

judgment interest, post-judgment interest, costs of suit, and such other and further relief to

which Plaintiffs may show themselves to be justly entitled at law or in equity.

Respectfully submitted

THE HANKINS LAW FIRM

*Grover G. Hankins*

Grover G. Hankins
440 Louisiana Street, Suite 725
Houston, TX 77002
713-292-2720
713-292-2729 (fax)
State Bar No. 00795895

**ATTORNEYS FOR PLAINTIFFS**