**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VIRDA BELL BULLARD et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07 C 6883** |
| | ) | |
| **BURLINGTON NORTHERN SANTA** | ) | |
| **FE RY. CO., et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Before the Court are three motions:  defendants' motion to transfer venue to the Western District of Texas pursuant to 28 U.S.C. § 1404(a), plaintiffs' motion to strike certain portions of defendants' reply in support of their motion to transfer venue, and plaintiffs' motion to dismiss without prejudice the claims of fifty-three plaintiffs.  For the reasons stated below, the Court grants defendants' motion to transfer venue, terminates as moot plaintiffs' motion to strike, and denies plaintiffs' motion to dismiss without prejudice.

**Background**

Plaintiffs Virda Bell Bullard and 143 other individuals filed suit on October 31, 2007 in the Circuit Court of Cook County against defendants Burlington Northern Santa Fe Railway Company ("BNSF"), Koppers Industries, Inc., Monsanto Company, The Dow Chemical Company, and Vulcan Materials Company.  Plaintiffs are all current or former

residents of Somerville, Texas.  They have asserted common law tort claims arising "out of the operations and activities of the Defendants with regard to the use and lack of containment of toxic chemicals used at [a wood treatment] facility" in Somerville. Compl. ¶ 3.1.  Plaintiffs also allege that "[u]pon information and belief, many if not all of the chemicals used in the plant were manufactured, mixed and/or consolidated at the Koppers Creosote facility in Cook County, Illinois."  *Id.*  Plaintiffs further allege that BNSF and Koppers operated the Somerville plant from 1905 to the present.  Plaintiffs' claims against Monsanto, Dow and Vulcan derive from their role as manufacturers and alleged suppliers of chemicals to the Koppers plants in Cook County and Somerville.

Defendants removed the case on December 6, 2007, asserting that this Court had jurisdiction over it as a "mass action" pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) & 1453.  The following week, defendants answered plaintiffs' complaint and moved the Court to transfer venue to the U.S. District Court for the Western District of Texas pursuant to 28 U.S.C. § 1404(a).

On January 4, 2008, plaintiffs moved to remand the case to the Circuit Court of Cook County and to dismiss without prejudice 53 plaintiffs.  On April 10, 2008, the Court denied plaintiffs' motion to remand and deferred ruling on the motion to dismiss, allowing plaintiffs to reconsider their motion in light of the Court's decision on their motion to remand.  *Bullard v. Burlington Northern Santa Fe Ry Co.*, 556 F. Supp. 2d 858, 859 (N.D. Ill. 2008), *aff'd*, — F.3d —, 2008 WL 2941359, at *1 (7th Cir. Aug. 1, 2008).  Plaintiffs subsequently renewed their motion to voluntarily dismiss certain plaintiffs and moved to strike the exhibits attached to defendants' reply in support of their motion to transfer venue.

**Discussion**

**A.    Defendants' motion to transfer venue**

Section 1404(a) provides that a district court in which venue is proper may transfer a civil case to any other district in which the case could have been brought if doing so serves "the convenience of parties and witnesses" and is "in the interest of justice."  28 U.S.C. § 1404(a).  The moving party has the burden of demonstrating "that the transferee forum is clearly more convenient."  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).  The Court considers the criteria set forth in section 1404(a) "in light of all the factors of the case," an inquiry that "necessarily involves a large degree of subtlety and latitude," including how much weight to give each of the statutory criteria.  *Id.* at 219 (citing *Christopher v. Am. News Co.*, 176 F.2d 11 (7th Cir. 1949)).  The parties agree, at least for the purposes of this motion, that venue is proper in either this district or the Western District of Texas.

**1.    Private factors:  convenience of the parties and witnesses**

When evaluating the convenience of the parties and witnesses, the Court considers the following private interests:  "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience [to] the parties of litigating in the respective forums."  *See, e.g.*, *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007).  The relative weight a court must give each factor in the § 1404(a) analysis is not fixed.  *See Coffey*, 796 F.2d at 220 n.3.

Defendants contend that the Western District of Texas is a more convenient

forum than the Northern District of Illinois because plaintiffs' claims arise out of events that occurred in Somerville; defendants and nearly all plaintiffs reside outside Illinois; most of the witnesses reside in the Western District of Texas; and most of the key litigation documents are located in that district.

### a.    Plaintiff's choice of forum

Courts generally give deference to the plaintiff's choice of forum. *See, e.g.*, *College Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995). This is especially true when the plaintiff resides in the chosen district. *See FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364, 368 (7th Cir. 1979). Conversely, when the plaintiff does not reside in the forum it selected, courts give the plaintiff's choice less weight and merely consider it as one factor among others. *See, e.g.*, *Doage v. Bd. of Regents*, 950 F. Supp. 258, 259-60 (N.D. Ill. 1997).

Plaintiffs place great emphasis on the fact that Ms. Bullard has lived in Chicago for 46 years. *See* Pl. Resp., Ex. 9 ¶ 2. But they say nothing at all about the residences of the other 143 plaintiffs. In fact, defendants point out, seventy-seven of the plaintiffs are identified as "citizens of Texas" in other litigation in which they have intervened. *See* Def. Reply at 4; *id.* Ex. F at ¶ 2.1. And witness disclosures in a related action in Tarrant County, Texas, identify 105 of these plaintiffs as current Texas residents. Def. Reply at 4; *id.* Ex. G. Because only one plaintiff, Ms. Bullard, actually resides in this district—and most seem to reside in Texas—plaintiffs' preference carries minimal weight.

Defendants also argue that plaintiffs' choice of forum should not receive

deference because "the material facts occurred in Somerville, Texas and not in Cook County." Def. Mot. at 12. Courts discount a plaintiff's choice of forum when the forum "has no significant connection to the situs of material events." *Morton Grove Pharms.*, 525 F. Supp. 2d at 1044. The Court considers this argument in its analysis of the next factor.

### b.    Situs of material events

The material events in this case took place in Texas. Plaintiffs' complaint alleges that plaintiffs' claims arise out of "the operations and activities of the Defendants with regard to the use and lack of containment of toxic chemicals used at the [Somerville] facility." Compl. ¶ 3.1. Plaintiffs acknowledge, in their response to defendants' motion, that their alleged exposure to defendants' chemicals occurred in Somerville. They nevertheless assert that certain of their claims and defendants' defenses arise out of conduct that occurred in Illinois. Specifically, they contend that their claims for negligence, trespass, and strict liability (Counts 1, 2 and 4) arise from Koppers' and BNSF's use of chemicals that plaintiffs allege Monsanto, Dow, and Vulcan shipped in defective condition to Koppers' Stickney plant in Cook County; Koppers' Cook County-based manufacture and shipment to Somerville of creosote and other chemicals; policy decisions allegedly made in Cook County by Santa Fe Pacific Corporation ("ATSF"), BNSF's predecessor in interest[1]; the alleged failure of Monsanto, Dow, and Vulcan to

---

[1] The only evidence plaintiffs provide in support of this assertion is a copy of a letter that Robert Krebs, then the Chairman, President, and CEO of ATSF, sent to shareholders on November 22, 1994, from Schaumburg, Illinois, informing them of the Board's view on how they should respond to a tender offer from Union Pacific Corporation. Pl. Ex. 7.

manufacture and deliver the chemicals to Koppers' plant in Cook County with adequate

testing, warnings, or instructions; Monsanto's (or a predecessor's) manufacture in

Sauget, Illinois of a brand of pentachlorophenol ("PCP") plaintiffs believe was used at

Koppers' Stickney plant; Koppers' and Monsanto's alleged gathering of "significant

information concerning the dangers of creosote and PCP" at their plants in Cook

County and Sauget, Pl. Resp. at 7; and the injury and harm that plaintiffs allege Ms.

Bullard has suffered in this district.

Plaintiffs also argue that many of defendants' affirmative defenses arise out of

material events that occurred in this District and that this connection weighs against

transfer.  *See Safe Bed Techs. Co. v. KCI USA, Inc.*, No. 02 C 97, 2002 WL 1769991,

at *4 (N.D. Ill. July 31, 2002).  Plaintiffs contend that defenses relating to warnings and

labels on PCP products (Monsanto Aff. Def. Nos. 22, 24, 36, & 38; Dow Aff. Def. Nos. 2

& 9; Vulcan Aff Def. Nos. 15-17, 19) rely on the transmission of labels in Cook County,

on warnings made at the time of delivery in Cook County, and on the sophistication of

people in Cook County who received the warnings.  Plaintiffs also argue that to support

the defense that Koppers modified their products (Monsanto Aff. Def. No. 25; Dow Aff.

Def. No. 10; Vulcan Aff. Def. No. 13), Monsanto, Dow, and Vulcan must show that

Koppers' processes and policies in Cook County modified the PCP in a way that

harmed plaintiffs.  Next, plaintiffs argue that Monsanto and Vulcan must rely on the

Cook County sale, delivery, and warnings accompanying PCP products to support their

"bulk sale" defense (Monsanto Aff. Def. Nos. 36 & 42; Vulcan Aff. Def. No. 24) that they

provided PCP products to the intermediary—Koppers—with adequate warnings.

Finally, plaintiffs contend that Monsanto's defenses that it manufactured state-of-the-art

PCP and was unaware of the characteristics of PCP that harmed plaintiffs (Monsanto Aff. Defs. Nos. 19, 20, & 21), and Koppers' defense that its conduct was not knowing or grossly negligent (Koppers Aff. Def. No. 11), all rely upon processes that each company used in Sauget and Cook County, Illinois; information the companies gathered in these locations; and the production experiences of company personnel.

Defendants, in reply, argue that plaintiffs' characterizations of events are "untrue, misleading and irrelevant." Def. Reply at 7. For example, defendants assert that although plaintiffs claim exposure to chemicals beginning in 1906, there is no evidence that the plant in Stickney shipped any creosote to Somerville prior to 1996, and that during that time period, the Somerville plant actually received its creosote from a Houston, Texas facility. Moreover, defendants assert that Koppers never manufactured, used, sold, mixed, or distributed PCP at the Stickney plant and that Dow, Monsanto, and Vulcan have not supplied any PCP to the Stickney plant since 1972, much less during the time period beginning in 1997, when the Stickney plant began to ship creosote to Somerville. Finally, defendants argue that the Illinois location of ATSF's former corporate headquarters is irrelevant, as it is not a party to this lawsuit.

Although plaintiffs object to the evidence, in the form of declarations and affidavits, that defendants provided to supplement their reply, the Court need not address plaintiffs' motion to strike. Even if the Court accepted as true plaintiffs' allegations about the path that the chemicals took through Illinois before ultimately arriving at the Somerville plant and the locations in which labels and warnings were or were not affixed, it would still be clear that the lion's share of the material events forming the gravamen of plaintiffs' complaint—the use of toxic chemicals at the

Somerville facility, the lack of containment of such chemicals, and plaintiffs'

injuries—took place in Somerville, Texas, not in Illinois.  This factor thus strongly favors

transfer.

### c.    Relative ease of access to sources of proof

To the extent that it matters, the third factor, ease of access to evidence and

sources of proof, does not particularly favor transfer.  Whether the case is litigated in

the plaintiffs' or defendants' chosen forum, "all relevant documents will have to be

collected, copied, inspected and sent to the offices of trial counsel."  *S.C. Johnson &*

*Son, Inc. v. Buzz Off Insect Shield, LLC*, No. 05 C 1046, 2005 WL 1838512, at *3 (N.D.

Ill. July 28, 2005) (internal quotation marks and citation omitted); *see also, Gueorguiev*

*v. Max Rave, LLC*, 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007).

Defendants contend that most of the key documents are likely located in

Somerville or in Austin, the storage venue for the Texas Commission on Environmental

Quality.  Plaintiffs counter that there is also evidence located in this District, the

Southern District of Illinois, Michigan, and Missouri.  Neither side contends that serious

cost considerations or technical problems with document reproduction exist in this case.

Thus, this factor amounts to a wash.

### d.    Convenience of the witnesses

In determining which venue is more convenient for the witnesses, the Court

"must consider the number of witnesses in each forum; the nature, quality, and

importance of the witnesses' testimony with respect to the issues of the case; the

expense of transportation and the length of time the witnesses will be absent from their

jobs; and whether the witnesses can be compelled to testify." *S.C. Johnson*, 2005 WL

1838512, at *3; *see also Morton Grove Pharms.*, 525 F. Supp. 2d at 1045.  Defendants

argue that this factor favors transfer to the Western District because the "chief

witnesses," including the doctors who have treated plaintiffs, likely reside there and

because the expert witnesses "will all do their work in Somerville."  Mot. to Transfer

Venue at 12.  Courts are less concerned about the burden that appearing at trial might

impose on witnesses who are either employees of parties or paid experts; it is

presumed that such witnesses will appear voluntarily.  *See Abbott Labs v. Church &

Dwight*, No. 07 C 3428, 2007 WL 3120007, at * 4 (N.D. Ill. Oct. 23, 2007); *see also

Mleczek v. Aspen Skiing Co., LLC*, No. 07 C 238, 2007 WL 1810530, at *2 (N.D. Ill.

June 20, 2007) (explaining that only non-party witnesses are relevant to this inquiry).

Where the expert witnesses do their work in this case is thus not particularly relevant.

On the other side, plaintiffs identify four non-party trial witnesses who they

contend reside in this District.  Three—Robert D. Krebs, Gus Svolos, and Dr. Raja K.

Khuri—are former ATSF employees.  Plaintiffs believe that the fourth, Karen Boyce-

Lindgren, was a contractor for BNSF.  Plaintiffs anticipate that Krebs' testimony would

relate to "the environmental and regulatory implications of ATSF's operation of the

Somerville facility and the reasons for its sale to Koppers in 1995" as well as "the

allocation between ATSF and Koppers of liability and responsibility for toxic exposures

at the Somerville facility."  Pl. Resp. at 5.  The testimony of Svolos and Khuri would

focus on the lack of appropriate disclosures to Somerville employees and the disparity

between such disclosures and those made to similarly situated Illinois and California

employees.  Boyce-Lindgren's testimony would relate to the "existence, identity, nature,

concentration, and effects of harmful chemicals at Somerville and/or similar sites." *Id.*

Plaintiffs also make vague reference to other former employees of Koppers, ATSF, and

BNSF in this District who might have relevant information and who, because of their

affiliation with defendants and their location outside the subpoena power of the Western

District, would be unlikely to appear at a trial in Texas.

Defendants argue that because Dr. Khuri has been identified as an expert in a

similar suit, he will be an expert—not a non-party witness—in this case.  They also

dispute the relevance of his testimony and that of Svolos.  According to defendants,

Khuri visited the Somerville plant only twice, over twenty-five years ago.  And because

this case does not involve claims brought under the Federal Employers Liability Act,

defendants contend that comparative testimony about different plants would be of little

use.  On the other hand, defendants argue, the Court should take into consideration the

large number of potential non-party witnesses who reside in Somerville and previously

worked at the Somerville plant.  In other, related litigation stemming from exposure to

the same chemicals at the same factory—*Faust v. BNSF Rwy Co.*, No. 096-212928-

05—plaintiffs Linda and Donnie Faust identified nearly 1,800 non-party Texas

witnesses and fewer than five Illinois witnesses, including Ms. Bullard.

Setting aside the issue of whether Khuri would be an expert witness, the non-

party witnesses plaintiffs identify may well provide testimony of some relevance to

issues in the case.  In light of the fact that the key material events underlying the

litigation occurred in the Western District, however, it is overwhelmingly likely that the

vast majority of the testimony regarding what defendants did or did not do in Texas will

come from witnesses in that state.

### e.    Convenience of the parties

In assessing the convenience of the parties, "the court should consider the parties' respective residences and their ability to bear the costs of litigating in a particular forum." *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 200 F. Supp. 2d 941, 947 (N.D. Ill. 2002). The Court will not order transfer, however, if doing so would merely "shift the burden of inconvenience" from one party to the other. *See Electroplated Metal Solutions, Inc. v. American Servs., Inc.*, 500 F. Supp. 2d 974, 978 (N.D. Ill. 2007).

Defendants contend that the Western District of Texas would be more convenient not only for defendants, but also for plaintiffs, because most of them likely are current residents of Somerville; many of them would be members of a putative class action pending in the Western District; and sixty-five of them are involved in similar litigation in Tarrant County, Texas.

Plaintiffs deny that the Western District would be more convenient for them than this District. They also claim that Ms. Bullard would suffer an "undue burden" if the case were transferred to the Western District because of her age (seventy-six) and her cancer. Pl. Resp. at 11; Pl. Ex. 9 ¶ 3. As defendants point out, however, Ms. Bullard is currently a plaintiff in a similar action pending in Tarrant County, Texas.

Plaintiffs also dispute that the Western District would be more convenient for defendants. They note that Monsanto, Dow Chemical, Koppers, and Vulcan are all headquartered outside of Texas; ATSF made policy decisions underlying plaintiffs' claims in Cook County; and BNSF still maintains a corporate office in Cook County. In

addition, plaintiffs identify three employees of defendants who they contend are located

in this District: Richard E. Weicher (Vice President and General Counsel of BNSF),

Richard W. Wagner (Cook County Plant Manager), and James Evans (Koppers Plant

Manager in Galesburg, Illinois).  Finally, plaintiffs argue that defendants cannot claim

that this District is inconvenient for them because they "maintain locations" in Illinois

and have brought suits in Illinois on previous occasions.  Pl. Resp. at 13 (citing *AHP*

*Sys., Inc. v. Cullman Ventures, Inc.*, No. 97 C 4947, 1997 WL 779108, at *2 (N.D. Ill.

Dec. 10, 1997) ("[B]ecause defendant operates in at least eleven states throughout the

country and has sought redress in the courts of Illinois on previous occasions, it is

difficult for it to claim significant inconvenience regarding this suit.")).

Although this District may be more convenient for Ms. Bullard, she is already

involved in other litigation in Texas.  And aside from Ms. Bullard, plaintiffs have not

alleged that any of the remaining 143 plaintiffs reside in Illinois, let alone in this District.

Thus, the Western District of Illinois, rather than plaintiffs' chosen forum, appears to be

plaintiffs' home forum.  It is also BNSF's.  Were the Court to transfer the case to Texas,

the overwhelming majority of the plaintiffs, as well as BNSF, would be litigating in their

home forum, at likely lower cost.  Thus, it would do more than "shift the burden of

inconvenience" from one party to the other.  *Electroplated Metal Solutions*, 500 F.

Supp. 2d at 978.  This factor favors transfer.

### 2.    Public factors:  interests of justice

Section 1404(a) also requires the Court to weigh the "interests of justice" in its

analysis.  Such public factors include "the court's familiarity with the applicable law, the

speed at which the case will proceed to trial, and the desirability of resolving

controversies in their locale." *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d

902, 912 (N.D. Ill. 2006) (quoting *Federated Dep't. Stores, Inc. v. U.S. Bank Nat'l Ass'n*,

No. 00 C 6169, 2001 WL 503039, at *2 (N.D. Ill. May 11, 2001)).

Defendants contend that the interests of justice favor transfer because the recent

history of similar litigation in the Western District has established it as the appropriate

battleground; the Western District has greater familiarity with applicable Texas law; and

Judge Sam Sparks' familiarity with other iterations of this case might result in more

expeditious handling. Plaintiffs respond that the relative congestion of the Western

District courts weighs against transfer, as do several other factors, including Illinois'

interest in providing a convenient forum for its residents to redress injuries caused by

out-of-state actors, the unlikelihood that Texas law would be applied to plaintiffs' claims,

and the lack of judicial efficiencies that would result from transfer.

### a.    Familiarity with applicable law

Defendants argue that judicial economy favors transfer to the Western District of

Texas, where Judge Sparks has already dealt with many of the claims plaintiffs

currently allege and would likely be more familiar with the Texas law to be applied to

their claims. Plaintiffs counter that Texas law will not apply to all of the claims in this

case because the Restatement (Second) of Conflict of Laws calls for a separate

conflicts analysis for each issue—a determination they contend cannot be made at this

stage. In any case, they argue, familiarity with the law should not be a significant

consideration because the law underlying plaintiffs' claims is not complex or unsettled.

In addition, Illinois choice of law rules will apply to this action whether or not the Court

transfers it.  *See Vandeveld v. Christoph*, 877 F. Supp. 1160, 1169 (N.D. Ill. 1995).

The Illinois Supreme Court has stated that "the local law of the State where the

injury occurred should determine the rights and liabilities of the parties, unless Illinois

has a *more* significant relationship with the occurrence and with the parties."  *Townsend*

*v. Sears, Roebuck and Co.*, 227 Ill. 2d 147, 163, 879 N.E. 2d 893, 903 (Ill. 2007)

(emphasis in original) (internal quotation marks and citations omitted).  "'The likelihood

that some state other than that where the injury occurred is the state of most significant

relationship is greater in those *relatively rare* situations where, with respect to the

particular issue, the state of injury bears little relation to the occurrence and the

parties.'"  *Id.* at 166, 879 N.E. 2d at 904 (citing Restatement (Second) of Conflict of

Laws § 146, Comment c, at 430-31 (1971) (emphasis in original).  As discussed above,

the place of alleged injury in this case is Texas, where the vast majority of plaintiffs

reside, and where plaintiffs allege they were exposed to toxic chemicals.  The

presumption that Texas law applies is not overcome by the defendants' corporate

headquarters or the possibility that the chemicals were modified in other locations.  As

defendants acknowledge, the law of other states may apply to some issues relating to

plaintiffs' claims, such as corporate successor issues.  Because the law relating to

defendants' fundamental liability will likely be Texas law, however, this factor favors

transfer.

> **b.      Speed at which case would proceed to trial or disposition**

Both sides cite to statistics comparing the pace at which cases are disposed of,

or go to trial, in the two districts in question.  General statistics of this sort are, in the

Court's view, relatively meaningless, because they are averages for cases of all types

14

and tell the reader nothing about cases of the particular type at issue.  The Court does

not regard this as tilting the balance one way or the other.

### c.     Resolution of controversies in their locale

As the Court has explained at length above, Somerville, Texas is the critical situs

in this case.  As such, the Western District of Texas has a much stronger connection to

this case than Illinois.  The underlying facts involve alleged injury by chemical exposure

to many residents of Somerville, Texas.  The local community would therefore seem to

have a great interest in the speedy resolution of this case.  *See Amoco Oil Co. v. Mobil*

*Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000).  Overall, the Court concludes that

the interests of justice would best be served by transfer to the Western District.

### B.     Plaintiffs' motion to dismiss certain plaintiffs

Plaintiffs moved to dismiss without prejudice fifty-three plaintiffs on January 4,

2008, three weeks after defendants answered their complaint.  When a plaintiff moves

for voluntary dismissal after the opposing party has served an answer or filed a motion

for summary judgment, the case (or the particular plaintiff) may be dismissed "only by

court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).

Although this decision is committed to the Court's discretion, "it is an abuse of

discretion for the district court to permit the voluntary dismissal of an action where the

defendant would suffer 'plain legal prejudice' as a result."  *Wojtas v. Capital Guardian*

*Trust Co.*, 477 F.3d 924, 927 (7th Cir. 2007) (quoting *United States v. Outboard Marine*

*Corp.*, 789 F.2d 497, 502 (7th Cir. 1986)).

Defendants object to plaintiffs' motion on two grounds.  First, they argue that

plaintiffs bring this motion for the sole purpose of defeating federal jurisdiction under

CAFA by bringing below one hundred the total number of plaintiffs in this action.[2]

Second, defendants contend that if the Court does dismiss fifty-three plaintiffs without

prejudice, those plaintiffs will file a new action in state court to evade federal

jurisdiction.  Defendants therefore contend that any dismissal should be subject to the

condition that the fifty-three dismissed plaintiffs and their attorneys are barred from filing

or prosecuting an action in any state or federal court "on the basis of any theory of

recovery relating to the operation of the Somerville Plant except as individual lawsuits

with single plaintiffs."  Def. Resp. to Mot. to Dismiss at 13.

Defendants' first concern—that the dismissal of fifty-three plaintiffs from this suit

will allow the remaining plaintiffs to defeat federal jurisdiction under CAFA—is no longer

an issue.  The Seventh Circuit recently affirmed this Court's denial of plaintiffs' motion

to remand.  *Bullard*, 2008 WL 2941359, at *1.   In any case, the subsequent voluntary

dismissal of certain plaintiffs would have no effect on the Court's subject matter

jurisdiction over this case.  *See Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d

675, 681 (7th Cir. 2006) ("While plaintiffs undoubtedly possess some power to seek to

avoid federal jurisdiction by defining a proposed class in particular ways, they lose that

power once a defendant has properly removed a class action to federal court.").

Whether defendants have satisfied the requirements of CAFA, including its 100-person

minimum threshold, is determined at the time of removal.  *See In Re Shell Oil Co.*, 970

F.2d 355, 356 (7th Cir. 1992) ("Because jurisdiction is determined as of the instant of

---

[2]   The mass action provision of CAFA provides that a suit qualifies for removal if the "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11).

removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint.").

The only issue, then, is whether the possibility of facing a new suit from the dismissed plaintiffs in another venue, in addition to the CAFA suit of the remaining plaintiffs, would constitute "plain legal prejudice" to defendants.  Plaintiffs, citing *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471 (7th Cir. 1988), argue that it would not.  The Seventh Circuit in *Kovalic* upheld the trial court's decision to permit the voluntary dismissal of the plaintiff's federal age discrimination suit largely because the trial court had found that the defendant's "calculated decision" not to remove the plaintiff's similar state action to federal court "should prevent it from contesting the plaintiff's decision to proceed with a single action in state court."  *Id.* at 474.  But the defendants in this case have made every effort to defend plaintiffs' claims in federal court, and unlike the defendants in *Kovalic*, these defendants likely would be forced to litigate in multiple forums if plaintiffs' motion were granted and the dismissed plaintiffs refiled their cases elsewhere.

The Seventh Circuit has stated that the principal factors courts should consider in determining whether a defendant would suffer plain legal prejudice are "[t]he defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Kunz v. DeFelice*, — F.3d —, 2008 WL 3483442, at *8 (7th Cir. Aug. 14, 2008) (quoting *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969)).

With regard to the first factor, although this suit has been pending for less than a

year, defendants have already invested substantial time and effort on briefing four

motions before the Court.  There is little question that breaking this suit into pieces by

granting plaintiffs' motion would force defendants to face simultaneous litigation in more

than one venue, thereby incurring substantial additional costs.

The second and fourth factors are relatively neutral.  With regard to the second

one, which examines whether plaintiffs have delayed excessively or shown a lack of

diligence in prosecuting the action, the Court notes that many of these plaintiffs and

their attorneys have filed suits in serial fashion in various venues based on the same

conduct alleged in this case.  On the other hand, plaintiffs have not made any apparent

efforts to delay these proceedings and, in fact, moved for voluntary dismissal shortly

after defendants removed the case to this Court.  Defendants have not filed a motion

for summary judgment in this case, so the fourth factor does not weigh against

plaintiffs.

As for the third factor, however, plaintiffs have provided an insufficient

explanation for their need to take a dismissal.  Their intention in seeking voluntary

dismissal of fifty-three plaintiffs was either to allow the remand of the remaining claims

to state court—an option foreclosed by this Court's denial of their motion to remand—or

to file a new claim on behalf of the fifty-three dismissed plaintiffs in the Circuit Court of

Cook County.  *See* Pl. Reply at 9 (". . . Plaintiffs' desire to litigate their claims in the

forum in which they filed their Complaint is not grounds to deny Plaintiffs' motion for

voluntary dismissal without prejudice or to impose conditions on such dismissal.").  As

defendants point out, many of the plaintiffs in this case have filed—with the assistance

of some of the lawyers in this case—several overlapping lawsuits based on conduct

18

relating to the Somerville plant.  Defendants contend that this case traces back to *Davis v. Koppers Indus., Inc.*, Def. Mot. to Transfer, Ex. A, a 2005 case filed in the Western District of Texas by the same lawyers against the same defendants on behalf of Somerville Residents.  After that case foundered, defendants claim that plaintiffs' attorneys divided it into three pieces, filing them in three different jurisdictions other than the Western District.  One—*Batts v. Koppers, Inc.*, *see id.*, Ex. K—reasserted medical monitoring claims; the second—*Brinston v. Koppers Indus., Inc.*, *see id.*, Ex. H—reasserted property damage claims; and the third—this case—reasserted personal injury claims.

To dismiss fifty-three plaintiffs from this case unconditionally without prejudice would subject defendants to the possibility of litigating suits based on the same claims in both this Court and in state court—a circumstance that would largely defeat the purpose of CAFA[3] and significantly increase the expense and effort required of defendants in preparing for and trying at least two trials.  Plaintiffs had to have understood, when filing a single mass action complaint in state court on behalf of 144 individuals, that they would be subject to federal jurisdiction under CAFA if the defendants chose to remove it, which they did.  Having lost that gamble, they should not now be permitted to file a new, CAFA-proof action in a state court venue they believe would be more favorable to them, forcing defendants to litigate duplicative actions.  In sum, the Court concludes that granting plaintiffs' motion without prejudice

---

[3]  *See, e.g.*, 28 U.S.C. § 1711(b)(2) (stating that one of CAFA's purposes is to "restore the intent of the framers of the United States Constitution by providing for federal court consideration of interstate cases of national importance under diversity jurisdiction").

would constitute plain legal prejudice to the defendants.

Because plaintiffs provide no alternative to dismissal without prejudice, the Court

denies their motion.  The denial will be, however, without prejudice.  Plaintiffs may, if

they wish, renew their motion in the Western District of Texas following transfer.

### Conclusion

For the reasons stated above, the Court denies without prejudice plaintiffs'

motion for voluntary dismissal [docket no. 35] and grants defendants' motion for

transfer of venue [docket no. 25].  Because the Court did not refer to the disputed

materials in making its ruling, it terminates as moot plaintiffs' motion to strike [docket

nos. 54, 57].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 29, 2008